# EXHIBIT J

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

GENESIS GLOBAL CAPITAL
INTERNATIONAL LIMITED,

                                  Plaintiff,

                v.

ROGER VER,

                                  Defendant.

Index No. 650439/2023

**Motion Seq. No. 001**

## **MEMORANDUM OF LAW IN OPPOSITION TO COUNTER-DEFENDANT'S MOTION TO DISMISS COUNTERCLAIMS OF COUNTER-PLAINTIFF**

Daniel J. Kelman
Michael D. Handelsman
1501 Broadway,
12th Floor, #2972
New York, NY 10036
daniel@kelman.law
mike@kelman.law

*Attorneys for Roger Ver*

# TABLE OF CONTENTS

**Page(s)**

PRELIMINARY STATEMENT ..................................................................... 1

FACTUAL BACKGROUND ....................................................................... 1

LEGAL STANDARD ................................................................................. 3

ARGUMENT ............................................................................................ 4

   I. THE BREACH OF CONTRACT CLAIMS ........................................... 4

     A. GGCI Terminated the Contract ..................................................... 4

     B. Ver's Allegations Meet the Contract Pleading Standard ................. 12

   II. THE FRAUD CLAIMS .................................................................. 16

     A. Fraud Claims Are Plead In The Alternative ................................... 16

     B. Ver Plead Fraud With Particularity ............................................... 17

     C. Fraudulent Inducement ................................................................ 18

CONCLUSION ....................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Burlington Loan Mgt. Ltd. v SMBC Nikko Capital Mkts. Ltd.,*
2015 N.Y. Misc. LEXIS 1986 (Sup. Ct. N.Y. Cnty. June 3, 2015)…………………..4, 12

*Cohn v Lionel Corp.,*
21 N.Y.2d 559, 563 (1968)......................................................................................16

*Cortlandt St. Recovery Corp. v. TPG Capital Mgt., L.P.,*
2022 N.Y. Misc. LEXIS 6181…..……………………………………………....13

*Eagle Eye Collection Corp. v Shariff,*
190 A.D.3d 600 (1st Dep't 2021)........................................................................ 14

*EVEMeta, LLC v Siemens Convergence Creators Corp.,*
2018 NY Slip Op 32530[U] (Sup. Ct., N.Y. Cnty. 2018)..........……………………17

*Gelita, LLC v. 133 Second Ave., LLC,*
42 Misc. 3d 1216(A)..........……………………………………………………… 14

*Goldberg v EEI Holdco, Inc.,*
2021 N.Y. Misc. LEXIS 6244…………………………………………………….13, 14

*Goldin v TAG Virgin islands, Inc.,*
149 A.D.3d 467 (1st Dep't 2017)........................................................................ 17, 18

*Harris v Seward Park Hous. Corp.,*
79 A.D.3d 425 (1st Dep't 2010)........................................................................ 13

*Houtenbos v Fordune Assn., Inc.,*
200 A.D.3d 662 (2d Dep't 2021).................................................................3, 4

*In re Lehman Brothers Holdings, Inc., et al.,*
No. 08-13555 (JMP), 2011 Bankr. LEXIS 1899
(S.D.N.Y. Bankr. May 23, 2011)................................................................10, 11

*Jackson v YAM Holding Corp.,*
97 A.D.3d 637 (2d Dep't 2012)........................................................................13

*Karabu v Pension Benefit Guaranty Corp.*,
    1997 U.S. Dist. LEXIS 19582 (S.D.N.Y. Dec. 10, 1997)..................................... 6

*Leon v Martinez*,
    84 N.Y.2d 83 (1994)....................................................................................3, 4, 12

*Matter of Northwest 5th & 45th Realty Corp. v Mitchell, Maxwell & Jackson*,
    164 A.D.3d 1158 (1st Dep't 2018).................................................................. 13

*Point Prods. A.G. v. Sony Music Entm't, Inc.*,
    2000 U.S. Dist. LEXIS 10066………………………………………………...6, 12

*Phillips v Taco Bell Corp.*,
    152 A.D.3d 806 (2d Dep't 2017)......................................................................3

*Riback v Margulis*,
    43 A.D.3d 1023 (2d Dep't 2007) ………………………………………………14

*Sokol v Leader*,
    74 A.D.3d 1180 (2d Dep't 2010)..............................................................…..3

*SSC NY Corp. v. Inveshare, Inc.*,
    No. 655048/2016, 2018 N.Y. Misc. LEXIS 3202
    (Sup. Ct. N.Y. Cnty. July 24, 2018)..............................................................7, 9

*Vandashield Ltd. v. Isaacson*,
    146 A.D.3d 552 (1st Dep't 2017)................................................................... 13

*Volt Systems Development Corp.  v Raytheon Co.*
    155 A.D.2d 309 (1st Dep't 1989)................................................................... 16

*Wolff & Munier, Inc. v. Whiting-Turner Contracting Co.*,
    946 F.2d 1003 (2d Cir. 1991).......................................................................6, 12

*150 Broadway Ny Assocs., L.P. v Bodner*,
    14 A.D.3d 1 (1st Dep't 2004)......................................................................... 4

*511 W 232nd Owners Corp. v Jennifer Realty Co.*,
    98 N.Y.2d 144……………………………………………………………………4

iii

INDEX NO. 650439/2023
Case 1.24-cv-01533-JPC   Document 1-10   Filed 02/28/24   Page 6 of 27
RECEIVED NYSCEF: 07/12/2023

**Other Authorities**

CPLR 3014……………………………………………………………………………… 16

CPLR 3016(b)………………………………………………………………………………17

CPLR 3017……………………………………………………………………………… 16

CPLR 3211(a)(1)……………………………………………………………………………4, 12

CPLR 3211(a)(7)……………………………………………………………………………3, 4, 12

NY CLS Dr & Cr § 273……………………………………………………………………...13, 14

NY CLS Dr & Cr § 274……………………………………………………………………….14

NY CLS Dr & Cr § 275……………………………………………………………………….14

Defendant / Counter-Plaintiff Roger Ver ("Ver"), by and through his attorneys, Kelman PLLC, respectfully submits this memorandum of law in opposition to Plaintiff / Counter-Defendant GGC International Limited's ("GGCI") motion to dismiss Ver's Counterclaims. For the reasons stated herein, Ver respectfully requests that this court deny GGCI's Motion to Dismiss.

## PRELIMINARY STATEMENT

This case exposes the deceptive tactics of an insolvent derivatives trading desk desperate to remain afloat. GGCI's own derivatives contracts mandated continuous solvency. Yet when Ver sought confirmation of their financial status, GGCI deceived him with misleading financial information and induced him to provide tens of millions of dollars in additional collateral, concealing their insolvency until after the agreements at issue had been terminated by GGCI.

## FACTUAL BACKGROUND

In June 2022, GGCI faced insolvency as Three Arrows Capital ("3AC") started to collapse. *See* Ver Counterclaim ("Counterclaim") at ¶ 1 (Dkt. #11). Desperate for assets, they targeted Ver, a significant customer with multiple expiring options that month. *Id*. To collect from him, GGCI let Ver's out-of-the-money options expire; to avoid paying him, GGCI persuaded Ver to roll in-the-money options to a later date. *Id*. Meanwhile, Genesis secretly planned to margin call and liquidate 3AC immediately after the roll, which would drive Ver's expiring positions to new lows. *Id*.

Ver demanded proof of GGCI's solvency before he would provide any further collateral. *See* Counterclaim at ¶ 2 (Dkt. #11). GGCI then provided Ver with a Statement of Financial Condition ("SOFC") dated June 20, 2022, which misleadingly portrayed narrow positive equity. *Id*. In truth, however, GGCI was already insolvent. *Id*. The SOFC hid GGCI's insolvency by overvaluing illiquid digital assets by using undiscounted mark-to-market prices. *Id*. Had GGCI applied appropriate discounts to their digital assets, as they demanded from Ver, their SOFC would have revealed their insolvency and Ver would have terminated the contracts because of GGCI's default. *Id*.

In December 2022, the collapse of the FTX exchange and Alameda Research revealed that GGCI had been insolvent all along. *Id*. Ver was alerted to GGCI's insolvency by an interview wherein FTX and Alameda co-founder Sam Bankman-Fried stated that Alameda had repaid a $2.5 billion dollar loan to "Genesis" in August 2022. *Id*. This appeared to be an obvious preference transfer that would be subject to clawback. *Id*.

As stated in GGCI's own complaint, the "[t]hree options with expiration dates of December 30, 2022 gave rise to this action." *See* Plaintiff's Complaint ("Comp.") at ¶ 7 (Dkt. #9). On January 12, 2023, GGCI sent notice to Ver that an event of default had occurred. *Id*. at ¶ 9. On January 17, 2023, GGCI sent an additional notice to Ver setting January 19, 2023, as the "Early Termination Date." *Id*. at ¶ 10. As a result, as of January 19, 2023, the contract between the parties was terminated. In addition, just 4 days later,

on January 23, 2023, GGCI filed a Summons with Notice with this court initiating this action. *See* Summons with Notice (Dkt. #1).

Despite becoming aware of GGCI's insolvency in late December 2022, GGCI terminated the contract before Ver could send a notice of default. Once GGCI terminated the contract, a notice of default and an opportunity to cure were futile or a useless act. Further, considering the allegations contained in the counterclaim, i.e., that GGCI was insolvent prior to June 2022, if not much earlier, GGCI could not have cured the default months, or even years later, in late 2022 or 2023.

## LEGAL STANDARD

"On a motion to dismiss pursuant to CPLR 3211(a)(7), 'the standard is whether the pleading states a cause of action.'" *Houtenbos v Fordune Assn., Inc.*, 200 A.D.3d 662, 663 (2d Dep't 2021), (quoting *Sokol v Leader*, 74 A.D.3d 1180, 1180-1181 (2d Dep't 2010)). In considering such a motion, "the court must afford the pleading a liberal construction, accept all facts as alleged in the pleading to be true, accord the [non-moving party] the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory." *Phillips v Taco Bell Corp.*, 152 A.D.3d 806, 807 (2d Dep't 2017); *see Leon v Martinez*, 84 N.Y.2d 83, 87-88 (1994); *Houtenbos v Fordune Assn., Inc.*, 200 A.D.3d at 663; *Sokol v Leader*, 74 A.D.3d at 1181).

A motion to dismiss under CPLR § 3211(a)(7), for "failure to state a cause of action, must be denied if the factual allegations contained within 'the pleadings' four

corners . . . manifest any cause of action cognizable at law.'" *Burlington Loan Mgt. Ltd. v SMBC Nikko Capital Mkts. Ltd.*, 2015 N.Y. Misc. LEXIS 1986 (Sup. Ct. N.Y. Cnty. June 3, 2015), *5 (court considering claim of breach of contract under ISDA agreement); quoting *511 W 232nd Owners Corp. v Jennifer Realty Co.*, 98 N.Y.2d 144, 151-52 (2002).

Where the motion to dismiss is based on documentary evidence under CPLR § 3211(a)(1), the claim will be dismissed "if the documentary evidence submitted conclusively establishes a defense to the asserted claims as a matter of law." *Id.*, quoting *Leon*, 84 N.Y.2d at 88; *see 150 Broadway NY Assocs., L.P. v Bodner*, 14 A.D.3d 1, 5 (1st Dep't 2004).

For the reasons set forth herein, GGCI has failed to meet its burden and Ver respectfully requests that GGCI's motion to dismiss be denied.

## ARGUMENT

### I.    THE BREACH OF CONTRACT CLAIMS

#### A. GGCI Terminated the Contract.

According to GGCI, Ver's four contract claims should be dismissed because he "failed to follow the ISDA Master Agreement's conditions precedent to recovery." GGCI's position is that under the agreements between the parties, a notice of default must be given by Ver prior to terminating the contract as a result of that breach if same is not cured by the designated termination date. *See* Memo of Law ISO Motion to

Dismiss at 13 (Dkt. #24). Then, and only then, according to GGCI, can Ver sue for breach of the agreement.

However, one can only come to such a conclusion if they completely ignore the realities of the situation. Namely, GGCI terminated the contract **_before_** Ver could send a notice of default.

This leads to a rather interesting question - how does one terminate an agreement that has already been terminated? Simply put, they cannot.

As stated in GGCI's own complaint, the "[t]hree options with expiration dates of December 30, 2022 gave rise to this action." *See* Comp. at ¶ 7 (Dkt. #9). On January 12, 2023, GGCI sent notice to Ver that an event of default had occurred. *Id*. at ¶ 9. On January 17, 2023, GGCI sent an additional notice to Ver setting January 19, 2023, as the "Early Termination Date." *Id*. at ¶ 10. Therefore, as of January 19, 2023, the contract between the parties was terminated. In addition, just four days later, on January 23, 2023, GGCI filed a Summons with Notice with this court initiating this action. *See* Summons with Notice (Dkt. #1).

GGCI would have this court believe that despite the fact that it already terminated the contract and filed suit in this court, Ver should have served a Notice of Default, which if not timely cured, would lead to the termination of the already terminated agreement.

5

Not only was a Notice of Default entirely futile at that point, considering GGCI had terminated the contract and filed the instant lawsuit, such notice was also moot.

GGCI may be correct that generally, "a party asserting nonperformance must afford a defaulting party any contractually-secured opportunity to cure prior to terminating a contract." *Karabu v. Pension Benefit Guaranty Corp.*, 1997 U.S. Dist. LEXIS 19582, *23 (S.D.N.Y. Dec. 10, 1997).

However, "[p]roviding notice and cure is not required where it would be futile." *Point Prods. A.G. v. Sony Music Entm't, Inc.*, 2000 U.S. Dist. LEXIS 10066, *12, citing *Wolff & Munier, Inc. v. Whiting-Turner Contracting Co.*, 946 F.2d 1003, 1009 (2d Cir. 1991) (strict adherence to cure provision would have been a "useless act" given plaintiff's abandonment of contract and unjustified ultimatums).

Given the fact that GGCI had already terminated the contract, strict adherence to the notice and cure provisions of the agreements at issue certainly would have been a "useless act."

Assuming *arguendo* that GGCI had not previously terminated the contract, providing notice to GGCI of its default as a result of its insolvency still would have been a futile, or "useless act."

As alleged in Ver's counterclaim, GGCI became insolvent by June 2022 at the latest, if not much earlier. *See* Counterclaim at ¶¶ 36, 123, 145, 157-159, 190, and others

6

(Dkt. #11). However, it was not until late 2022, or early 2023, that Ver became aware of GGCI's insolvency.

Providing GGCI with a notice of default in January 2023, or even in November or December 2022, regarding insolvency that had occurred at least 5-7 months prior to that is a "useless act." Without a time machine, GGCI could not go back and cure their insolvency. Further, GGCI was aware of Ver's concerns regarding solvency since at least June 2022 and continued to maintain that they were solvent, going so far as to provide clearly and obviously misleading documents to support that position.

It is clear, given the allegations of the Counterclaim that a Notice of Default, especially one filed after this case was initiated, would have been a futile and "useless act." After all, GGCI continues to maintain that they are solvent.

Further, GGCI's reliance on *SSC NY Corp. v. Inveshare, Inc.*, No. 655048/2016, 2018 N.Y. Misc. LEXIS 3202, at *10-11 (Sup. Ct. N.Y. Cnty. July 24, 2018) is entirely misplaced. As GGCI points out, in that case, the Court denied a "motion for leave to assert counterclaim and explain[ed] that an ***immaterial breach*** did not excuse the non-defaulting party's payment obligations." (emphasis added). However, there is nothing immaterial about GGCI's breach in this matter.

Assuming that Ver's allegations that GGCI is/was insolvent are true, as is the required standard when deciding a motion to dismiss, GGCI essentially set up a "heads I win, tails Ver loses" situation. If Ver's option finished out of the money, he would pay.

If Ver's options finished in the money, an insolvent GGCI would almost certainly be unable to pay given its precarious financial situation. There is nothing immaterial about the counterparty in a series of options transactions being insolvent, and hence, being unable to pay. From the moment GGCI was insolvent, the options contracts were transformed into a lose-lose situation for Ver.

This is likely why GGCI pushed so hard to have Ver roll his in-the-money options in June '22, while encouraging him to let his out-of-the-money options expire. *See* Counterclaim at ¶¶ 158-163 (Dkt. #11). It meant that GGCI could take money in and not have to pay any money out.

GGCI's insolvency, whenever it may have occurred, meant that Ver would not be paid if his options trades were successful, as GGCI simply would not have the assets to meet their obligations and could/would file for bankruptcy protection. GGCI referring to their own insolvency as immaterial, when the contract at issue makes it a fundamental obligation, is beyond the pale.

Section 3 of the ISDA Master Agreement, entitled "Representations," contains a series of representations made by both parties. *See* Section 3 of the ISDA Master Agreement attached as Exhibit 3 to the June 14, 2023 Affirmation of Alex van Voorhees (the "van Voorhees Aff."). Specifically, section 3 states that each party makes the representations contained in 3(a), 3(b), 3(c), 3(d), 3(e) and 3(f), and same are "deemed to be repeated by each party on each date on which a Transaction is entered." *Id*.

8

Case 1:24-cv-01533-JPC   Document 1-10   Filed 02/28/24   Page 15 of 27

Recognizing the significance of an Event of Default, including the insolvency of the parties, in connection with each and every transaction the parties affirmed that "No Event of Default or Potential Event of Default or, to its knowledge, Termination Event with respect to it has occurred and is continuing and no such event or circumstance would occur as a result of its entering into or performing its obligations under this Agreement or any Credit Support Document to which it is a party." *Id*. at 3(b).

As discussed by both parties throughout, insolvency was one such event of default. *Id*. 5(a)(vii). As such, the significance of both sides' remaining solvent cannot be referred to as an immaterial breach. Arguably, the insolvency of either party is the most significant breach that can occur under options transactions such as those at issue.

In addition to solvency being material, Ver is not trying to "excuse [his] payment obligations," as was the case in *SSC NY Corp. v. Inveshare, Inc.*, nor has he tried to avoid duly owed sums at any point during the parties' relationship. On the contrary, "[d]espite GGCI's repeated misrepresentations and false assurances of solvency, Ver maintains his willingness to pay any outstanding sums owed, provided GGCI can finally demonstrate they were solvent at the relevant times." *See* Counterclaim at ¶ 3 (Dkt. #11).

Depending on the date of GGCI's insolvency, Ver may rightfully owe GGCI sums under the contract and is prepared to make the necessary payments. This is evidenced by the fact that since June 2022, Ver has paid GGCI in excess of $60 million, $37 million

Case 1:24-cv-01533-JPC Document 1-10 Filed 02/28/24 Page 16 of 27

of which was paid within a few weeks of GGCI terminating the contract, in reliance on its claims that it was solvent. *Id*. at ¶ 199.

Further, pursuant to Section 6b of the ISDA Master Agreement, "If a Termination Event other than a Force Majeure Event occurs, an Affected Party will, promptly upon becoming aware of it, notify the other party, specifying the nature of that Termination Event and each Affected Transaction, and will also give the other party such other information about that Termination Event as the other party may reasonably require." *Id*. at 6(b).

As discussed, Ver did not become aware of GGCI's insolvency until late 2022. As such, Ver did not have the opportunity to "promptly upon becoming aware of it, notify the other party." GGCI terminated the contracts and filed the instant lawsuit within weeks of Ver becoming aware.

GGCI's reliance on *In re Lehman Brothers Holdings, Inc., et al.*, No. 08-13555 (JMP), 2011 Bankr. LEXIS 1899 (S.D.N.Y. Bankr. May 23, 2011) is also misplaced.[1] *See* Ex. C to Gottlieb Aff. (Dkt. # 14). The transcript provided by GGCI makes clear that the case at issue therein is inapposite to the matter at hand. Most importantly, the contract, in that case, ***had not yet been terminated*** by either party and was still in full force and effect. *Id*. at 106:11-14 ("Metavante has not, however, attempted to terminate the Agreement").

---

[1] Further, it should be noted that GGCI has only included a partial copy of the transcript upon which they rely. A full 94 pages from the middle of the transcript were not included or provided to the Court, further there is no way to know how many additional pages follow page 113 of the Transcript, which is clearly not the last page.

Further, there is no indication anywhere in the transcript that Lehman, the counterparty in that case, made any effort to terminate the contract. In fact, all indications are that Lehman was fighting to keep the contract in force, a far cry from the facts before the court in this matter, where GGCI terminated the contracts at issue, and both parties are alleging breach.

Because the contract had not been terminated by either party, the Court held that "[a]lthough complicated at its core the Agreement is, in fact, a garden variety executory contract, one for which there remains something still to be done on both sides." *Id*. at 109:19-21. The agreement in this case was terminated by GGCI in January 2023. Neither GGCI nor Ver are arguing or have otherwise put forward that the contract is anything other than terminated.

The Court took umbrage with Metavante "riding the market for the period of one year [following the Lehman bankruptcy filing], while taking no action whatsoever." *Id*. at 110: 22-23. However, Ver is not trying to "rid[e] the market," but rather filed his counterclaim after learning of GGCI's insolvency following a review of the documents they provided in late 2022 just as the options were expiring.

Moreover, *In re Lehman Brothers Holdings, Inc., et al.* was a bankruptcy case and discussed the interplay between bankruptcy law and contract law. *Id*. The matter at hand does not involve claims under bankruptcy law. As a result, *In re Lehman Brothers Holdings, Inc.* is simply inapposite and should be disregarded.

11

Here, GGCI terminated the contracts at issue shortly after Ver's knowledge of the insolvency. Further, it is axiomatic that Ver could not have terminated a contract GGCI already terminated. Most importantly, in January 2023, it would have been impossible for GGCI to cure a breach that occurred, at a minimum, 7 months earlier. As such, any notice of default would have been futile and a "useless act" and is thus, excused. *Point Prods. A.G. v Sony Music Entm't, Inc.*, 2000 U.S. Dist. LEXIS 10066, *12, citing *Wolff & Munier, Inc. v Whiting-Turner Contracting Co.*, 946 F.2d 1003, 1009 (2d Cir. 1991).

For these reasons, Ver respectfully requests that this court deny GGCI's motion to dismiss his counterclaim pursuant to CPLR § 3211(a)(7). Further, as stated above, the documentary evidence submitted by Claimant, i.e., the contract at issue, does not "conclusively establish[] a defense to the asserted claims as a matter of law" and Ver's counterclaim should not be dismissed pursuant to CPLR § 3211(a)(1). *Burlington Loan Mgt. Ltd. v SMBC Nikko Capital Mkts. Ltd.*, 2015 N.Y. Misc. LEXIS 1986, *5; quoting *Leon v Martinez*, 84 NY2d 83 at 88.

### B. Ver's Allegations Meet the Contract Pleading Standard

Ver's specific allegations that GGCI's liabilities exceeded their assets at material times in breach of the ISDA meet the standard required to plead a breach of contract claim. GGCI appears to argue that Ver's breach of contract claim is required to meet a heightened pleading standard, but such a standard does not exist in the realm of contract law. Simply put, there is "no requirement of heightened particularity in a

12

contract claim." *Cortlandt St. Recovery Corp. v TPG Capital Mgt., L.P.*, <u>2022 N.Y. Misc. LEXIS 6181</u>, *47; quoting *Vandashield Ltd. v Isaacson*, <u>146 A.D.3d 552</u>, 554 (1st Dep't 2017).

As GGCI correctly states in their motion, the elements of breach of contract are "the existence of a contract, the plaintiff's performance thereunder, the defendant's breach thereof, and resulting damages." *Harris v Seward Park Hous. Corp.*, <u>79 A.D.3d 425</u>, 426 (1st Dep't 2010) (citation omitted). Courts will dismiss claims for breach of contract if the contract unambiguously contradicts the plaintiff's allegations. *Jackson v YAM Holding Corp.*, <u>97 A.D.3d 637</u>, 638-39 (2d Dep't 2012) (dismissing claim for breach of contract and declining to consider extrinsic evidence of parties' intent). Such is not the case here, as the ISDA unambiguously makes continuous solvency a binding term and Ver alleges GGCI was insolvent at material times.

One need look no further than the cases GGCI cites in support of its argument to see the shortcomings of its position. Each case cited by GGCI involves the application of the Debtor and Creditor Law ("DCL") as it applies to fraudulent transfers. Further, GGCI has not cited a single case involving ISDA Master Agreements, or any contract where insolvency was the basis for the breach.

For example, in *Matter of Northwest 5th & 45th Realty Corp. v Mitchell, Maxwell & Jackson*, <u>164 A.D.3d 1158</u>, 1158 (1st Dep't 2018), "[t]he petition invoked <u>Debtor and Creditor Law § 273</u>, *which required insolvency*." (emphasis added) *See* NY DCL § <u>273</u>. Further, in *Goldberg v EEI Holdco, Inc.*, <u>2021 N.Y. Misc. LEXIS 6244</u>, the claims were

based on DCL §§ 273, 274 and 275. As was the case with § 273, § 274 also references insolvency in the statute, and therefore, claims proceeding pursuant to that section have insolvency as a condition precedent.[2]  Finally, in *Eagle Eye Collection Corp. v Shariff*, 190 A.D.3d 600, 601 (1st Dep't 2021), the claims at issue were also based on DCL § 273, and were dismissed as being "conclusory allegations" based on the holding in *Riback v Margulis*, 43 A.D.3d 1023, 1023 (2d Dep't 2007). *Riback*, in turn, makes clear that "the facts pleaded are *presumed to be true* and are accorded every favorable inference, bare legal conclusions as well as factual claims *flatly contradicted by the record* are not entitled to any such consideration". (Emphasis added).  As such, GGCI must show that Ver's allegations of their insolvency are "flatly contradicted by the record", which is simply not the case.

A breach of contract claim is "merely subject to notice pleading standards" and at the motion to dismiss stage, "it is premature and indeed unnecessary to precisely circumscribe the viable scope of plaintiffs' breach of contract claim. Discovery will flesh out the facts, and the court can revisit which itemized breaches are viable at the summary judgment stage." *Gelita, LLC v. 133 Second Ave., LLC*, 42 Misc. 3d 1216(A), 1216A.

---

[2] NY DCL § 275 does not require insolvency but is instead used to determine when a transfer is deemed to have occurred under the DCL and is not instructive in the matter currently before the court. Although there was a contract claim involved in *Goldberg v. EEI Holdco, Inc.*, it was not decided based on the issue of insolvency and that portion of the decision (which denied the motion to dismiss the contract claims) is not cited to, or relied on, by GGCI.

14

Case 1:24-cv-01533-JPC   Document 1-10   Filed 02/28/24   Page 21 of 27

Ver's allegations clearly meet the applicable notice pleading standards. There is nothing conclusory about Ver's allegations of GGCI's insolvency, nor are they "flatly contradicted by the record". As one of many examples,[3] GGCI's sole evidence that they were solvent at the relevant period in June 2022 consists of a pair of *unaudited* statements of financial condition ("SOFCs"). *See* Counterclaim at ¶ 178 & 208 (Dkt. #11).[4] Those SOFCs showed an extremely thin positive equity, which largely consisted of illiquid digital assets valued by GGCI at mark-to-market valuations. Compounding this, GGCI is reporting these valuations at a time when digital asset markets were freezing up and these assets were even less liquid than usual. *See* Counterclaim at ¶ 151 (Dkt. #11) (citing to an arbitration filing by GGCI's affiliate which stated that "[d]ue to recent extreme volatility in the cryptocurrency markets, the value of the collateral already posted by Three Arrows decreased significantly in comparison to the loaned assets under the MLAs."). Here, even a small discount from mark-to-market would result in GGCI's insolvency. In the June 20 SOFC, for example, applying a discount of just seven percent to GGCI's "Investments in Digital Currencies" would be sufficient to cause liabilities to exceed assets. See Counterclaim at ¶ 178 (Dkt. #11) ("The June 20 SOFC claimed total assets of $3.063 billion and liabilities of $2.962 billion, which gave

---

[3] Other examples include (1) GGCI's failure to enforce collateral requirements, *see* Counterclaim at ¶ 95 et seq. (Dkt. #11); (2) GGCI's collateral exposed to a daisy chain of debts, *see* Id. at ¶ 105 (Dkt. #11); (3) GGCI's deviation from ASC 820, *see* Id. at ¶ 111 (Dkt. #11); (4) GGCI's over exposure to FTX and Alameda, *see* Id at ¶ 122 (Dkt. #11); (5) GGCI's over exposure to 3AC, *see* Id at ¶ 137 (Dkt. #11).

[4] The image of the June 20, 2022 SOFC is clearly labeled in its caption as "Unaudited". Likewise, both the June 20, 2022 SOFC and the June 30, 2022 SOFC were watermarked "Unaudited", which was partially cut off when inserted into the complaint as an image.

15

GGCI positive equity of just over $100 million. Given that $1.594 billion of GGCI's assets were digital assets ("Investments in digital currencies"), even a small fluctuation in the market would render them insolvent.") In fact, it is conclusory of GGCI to presume that an auditor would not have applied even a modest discount to the digital assets in the SOFC given their illiquid nature and the then prevailing market conditions.

For these reasons, Ver respectfully requests that GGCI's motion to dismiss be denied.

## II.   THE FRAUD CLAIMS

### A.  Fraud Claims Are Plead In The Alternative

As declared by the New York Court of Appeals decades ago, "[u]ndeniably, a plaintiff is entitled to advance inconsistent theories in alleging a right to recovery." *Cohn v Lionel Corp.*, 21 N.Y.2d 559, 563 (1968). Indeed, it is the "clear mandate of CPLR §§ 3014 and 3017 which permit, and in fact, encourage pleading of claims and remedies in the alternative, as well as New York practice which provides that the election of remedies, if any, 'need not be made until all the proof has been presented.'" *Volt Systems Development Corp. v Raytheon Co.*, 155 A.D.2d 309, 309 (1st Dep't 1989); quoting 3 *Weinstein-Korn-Miller, N.Y. Civ. Prac.*, ¶ 3002.04 at 30-122 (1988).

Pursuant to CPLR § 3014 entitled "Statements," "Causes of action or defenses may be stated alternatively or hypothetically." CPLR § 3014. Further, pursuant to CPLR

16

§ 3017(a), entitled "Demand for Relief," "Relief in the alternative or of several different types may be demanded." CPLR § 3017.

For these reasons, Ver's fraud claims, which are merely alternative causes of action to the breach of contract claims, should not be dismissed, and Ver respectfully requests that GGCI's motion is denied.

### B. Ver Plead Fraud With Particularity

Pursuant to CPLR § 3016(b), "[w]here a cause of action or defense is based upon misrepresentation, fraud, mistake, wilful default, breach of trust or undue influence, the circumstances constituting the wrong shall be stated in detail." CPLR § 3016.

To meet the heightened pleading standard for fraud, the "Plaintiff must merely allege facts sufficient to permit a reasonable inference of the alleged misconduct to each Defendant." *EVEMeta, LLC v Siemens Convergence Creators Corp.*, 2018 NY Slip Op 32530[U], *13-14 (Sup. Ct., N.Y. Cnty. 2018); citing *Goldin v TAG Virgin Islands, Inc.*, 149 A.D.3d 467, 467 (1st Dep't 2017) (holding that under CPLR 3016's heightened pleading requirement the Defendants must be able to reasonably infer what the misconduct was from the pleadings).

Specifically, according to *Goldin*, "even absent details of time and place" a complaint that "allege[s] facts sufficient to permit a reasonable inference of the alleged misconduct" is deemed to have met "the heightened pleading requirement of CPLR 3016(b). *Goldin*, supra at 467.

17

It is clear, based on a cursory review of the counterclaim that Ver has met this burden. The 224 paragraphs making up Ver's counterclaim provide substantial factual allegations regarding the specific misrepresentations or omissions made, the dates that they were made, the motive or intent of GGCI in making those intentional misrepresentations, and the resulting damages suffered as a result of GGCI's actions. *See e.g.*, Counterclaim (Dkt. #11). Simply put, the counterclaim goes above and beyond the requirements that it merely "allege facts sufficient to permit a reasonable inference of the alleged misconduct." *Goldin*, supra at 467.

Therefore, GGCI's motion to dismiss should be denied.

## C. Fraudulent Inducement

In addition to being fraudulently induced to rollover his options, Count Six of the counterclaim also alleges that "following the fraudulently induced rollover, Ver was required to meet various margin calls. From the date of his rollover, until those newly rolled over contracts expired, Ver made in payments in excess of $60,000,000 to GGCI to maintain his positions, and had over $50,000,000 in collateral liquidated, that never would have been paid to Counter-Defendant had they not omitted the material information regarding the 3AC margin call and liquidation." *See* Counterclaim at ¶ 286 (Dkt. #11).

For GGCI to allege that the fraudulent inducement claim is limited to the rollover only, ignores the allegations of the counterclaim. While GGCI may be correct that the

18

Case 1:24-cv-01533-JPC   Document 1-10   Filed 02/28/24   Page 25 of 27

rollover occurred a few days prior to their delivery of the misleading financial documents, Ver is not relying solely on this fact *in and of itself* as the basis of a fraudulent inducement claim — that is not where Ver's allegations end.

Cause 6 of the counterclaim, realleges all previous paragraphs set forth within the counterclaim. It also alleges that Ver made $60,000,000 in fraudulently induced payments occurring after GGCI delivered the inaccurate documents and failed to disclose the issues with 3AC. *See* Counterclaim at ¶ 286 (Dkt. #11).

As a result, even if the intentionally misleading financial statements were provided to Ver after the date of his rollover, had GGCI provided Ver with accurate financial statements at that time, he never would have made additional payments following his receipt of the misleading document totaling $60,000,000. It is those additional payments, as well as the $50,000,000 in liquidations, that were fraudulently induced.

Ver was induced to make those payments as a result of GGCI intentionally delivering misleading financial statements in June of 2022 that it knew did not accurately represent GGCI's true financial situation.

For these reasons, Ver respectfully requests that GGCI's motion to dismiss his fraudulent inducement claim be denied.

19

Case 1:24-cv-01533-JPC   Document 1-10   Filed 02/28/24   Page 26 of 27

## CONCLUSION

For the foregoing reasons, Ver respectfully requests that the Court deny GGCI's

motion to dismiss his contract and fraudulent inducement claims.

**KELMAN PLLC**

Dated: July 12, 2023

By:     s/: Daniel J. Kelman
        Daniel J. Kelman
        Michael D. Handelsman
        1501 Broadway,
        12th Floor, #2972
        New York, NY 10036
        daniel@kelman.law
        mike@kelman.law

20

Case 1:24-cv-01533-JPC   Document 1-10   Filed 02/28/24   Page 27 of 27

**WORD COUNT CERTIFICATION**

Pursuant to Rule 17 of subdivision (g) of section 202.70 of the Uniform Rules for

the Supreme Court and County Court (Rules of Practice for the Commercial Division of

the Supreme Court), I hereby certify that the total number of words in this

memorandum of law, excluding the caption, signature block, and word count

certification is 4664.


Dated: July 12, 2023                    By:    s/: Daniel J. Kelman
                                               Daniel J. Kelman
                                               Michael D. Handelsman
                                               1501 Broadway,
                                               12th Floor, #2972
                                               New York, NY 10036
                                               daniel@kelman.law
                                               mike@kelman.law