# Exhibit 2

Case 1:24-cv-01533-JPC    Document 20-2    Filed 03/20/24    Page 2 of 38

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

GENESIS GLOBAL CAPITAL
INTERNATIONAL LIMITED,

                        Plaintiff,

            v.

ROGER VER,

                    Defendant.

Index No. 650439/2023

**Motion Seq. No. 002**

## MEMORANDUM OF LAW IN OPPOSITION TO COUNTER-DEFENDANT'S MOTION TO DISMISS AMENDED COUNTERCLAIMS OF COUNTER-PLAINTIFF

Daniel J. Kelman
Michael D. Handelsman
1441 Broadway,
6th Floor, #6079
New York, NY 10018
daniel@kelman.law
mike@kelman.law

*Attorneys for Roger Ver*

## TABLE OF CONTENTS

**Page(s)**

PRELIMINARY STATEMENT...................................................................................... 1

FACTUAL BACKGROUND........................................................................................ 3

LEGAL STANDARD................................................................................................ 5

ARGUMENT........................................................................................................ 6

    I. VER'S AMENDED ALLEGATIONS ARE APPROPRIATE............................................. 6

    II. BREACH OF CONTRACT CLAIMS................................................................... 7

        A. GGCI Terminated the Contract.................................................................. 7

        B. Ver's Allegations Meet the Contract Pleading Standard................................. 13

    III. THE FRAUD CLAIM................................................................................. 16

        A. Fraud Claim Is Plead In The Alternative..................................................... 16

        B. Ver Plead Fraud With Particularity........................................................... 17

        C. Ver Is Not Stating a Counterclaim for Fraudulent Omission............................ 19

        D. Ver's Reliance Is Not on Extracontractual Representations Made Prior to
        Entering the Agreement............................................................................ 20

    CONCLUSION.......................................................................................... 22

## TABLE OF AUTHORITIES

**Cases**        **Page(s)**

*150 Broadway Ny Assocs., L.P. v. Bodner*,
     14 A.D.3d 1 (1st Dep't 2004)................................................... 5

*219 Broadway Corp. v. Alexander's, Inc.*,
     46 N.Y.2d 506 (N.Y. Ct. App. 1979).................................... 5

*511 W 232nd Owners Corp. v. Jennifer Realty Co.*,
     98 N.Y.2d 144 (N.Y. Ct. App. 2002).................................... 5

*Alden Global Value Recovery Master Fund, L.P. v. KeyBank N.A.*,
     159 A.D.3d 618 (1st Dep't 2018)........................................... 5

*Bogoni v. Friedlander*,
     197 A.D.2d 281 (1st Dep't 1994)......................................... 6, 7

*Burlington Loan Mgt. Ltd. v. SMBC Nikko Capital Mkts. Ltd.*,
     2015 N.Y. Misc. LEXIS 1986 (Sup. Ct., N.Y. Cnty. 2015)…………………….. 5, 13

*Cohn v. Lionel Corp.*,
     21 N.Y.2d 559 (1968)......................................................... 16

*Cortlandt St. Recovery Corp. v. TPG Capital Mgt., L.P.*,
     2022 N.Y. Misc. LEXIS 6181(N.Y. Ct. App. 2022)...……..………………..... 13

*Cronos Grp. Ltd. v. XComIP, LLC*,
     156 A.D.3d 54 (1st Dep't 2017)........................................... 17

*Eagle Eye Collection Corp. v. Shariff*,
     190 A.D.3d 600 (1st Dep't 2021)......................................... 14, 15

*Eurycleia Partners, LP v. Seward & Kissel, LLP*,
     12 N.Y.3d 553 (2009)......................................................... 19

*EVEMeta, LLC v. Siemens Convergence Creators Corp.*,
   2018 N.Y. Misc. LEXIS 4445 (Sup. Ct., N.Y. Cnty. 2018)............…..………..... 17, 18

*Gelita, LLC v. 133 Second Ave., LLC*,
   2014 N.Y. Misc. LEXIS 239, 14 (Sup. Ct., N.Y. Cnty. 2018)...…….…………. 13

*Goldberg v. EEI Holdco, Inc.*,
   2021 N.Y. Misc. LEXIS 6244…………………………………….….…… 14

*Goldin v. TAG Virgin islands, Inc.*,
   149 A.D.3d 467 (1st Dep't 2017)........................................................... 17, 18

*Gowen v. Helly Nahmad Gallery, Inc.*,
   60 Misc. 3d 963 (Sup. Ct., NY Cnty. 2018)........................................... 6

*HSH Nordbank AG v. UBS AG*,
   941 N.Y.S.2d 59 (N.Y. App. Div. 2012)................................................. 22

*Karabu v. Pension Benefit Guaranty Corp.*,
   1997 U.S. Dist. LEXIS 19582 (S.D.N.Y. 1997)..................................... 7

*Leon v. Martinez*,
   84 N.Y.2d 83 (1994)........................................................................... 5, 13

*Matter of Northwest 5th & 45th Realty Corp. v. Mitchell, Maxwell & Jackson*,
   164 A.D.3d 1158 (1st Dep't 2018)........................................................ 14

*MMCT, LLC v. JTR Coll. Point, LLC*,
   122 A.D.3d 497(1st Dep't 2014)......................................................... 17

*Nimkoff Rosenfeld & Schecther, LLP v. O'Flaherty*,
   71 A.D.3d 533 (1st Dep't 2010).......................................................... 6

*Pappas v. Tzolis*,
   20 N.Y.3d 231 (N.Y. 2012)…………………………………………….... 22

*Point Prods. A.G. v. Sony Music Entm't, Inc.*,
    2000 U.S. Dist. LEXIS 10066……………………………………….……..    7, 8

*Riback v. Margulis*,
    43 A.D.3d 1023 (2d Dep't 2007)……………………………….…………..…    14, 15

*Roam Capital v. Asia Alternatives Mgt. LLC*,
    194 A.D.3d 585 (1st Dep't 2021).........................................................................    6

*SSC NY Corp. v. Inveshare, Inc.*,
    No. 655048/2016, 2018 N.Y. Misc. LEXIS 3202 (Sup. Ct. N.Y. Cnty. 2018)......    9, 10

*Vandashield Ltd. v. Isaacson*,
    146 A.D.3d 552 (1st Dep't 2017)..........................................................................    13

*Volt Systems Development Corp. v. Raytheon Co.*
    155 A.D.2d 309 (1st Dep't 1989)..........................................................................    16

*Wolff & Munier, Inc. v. Whiting-Turner Contracting Co.*,
    946 F.2d 1003 (2d Cir. 1991)................................................................................    7, 8


**Other Authorities**

CPLR 3014……………………………………………………………….……    16

CPLR 3016(b)...............................................................................................................    17, 18

CPLR 3017……………………………………………………………….……    16

CPLR 3025(a) ……………………………………………………….…………    6, 7

CPLR 3025(b) ……………………………………………………….…………    6, 7

CPLR 3211(a)(1)...........................................................................................................    5, 13

CPLR 3211(a)(7)..................................................................................   5, 13

CPLR 3211(f)......................................................................................   6

NY CLS Dr & Cr § 273……………………………………………..   14

Siegel, NY Prac § 237 (2d ed.)..........................................................   6, 7

Defendant / Counter-Plaintiff Roger Ver ("Ver"), by and through his attorneys, Kelman PLLC, submits this memorandum of law in opposition to Plaintiff / Counter-Defendant GGC International Limited's ("GGCI") motion to dismiss Ver's Amended Counterclaims. For the reasons stated herein, Ver respectfully requests that this court deny GGCI's Motion to Dismiss.

## PRELIMINARY STATEMENT

Contracts mean what they say, which is why Ver has counterclaimed against GGCI for its failure to remain solvent and its misrepresentations regarding the same. GGCI's own derivatives contracts mandated continuous solvency. Yet when Ver inquired into GGCI's solvency, GGCI deceived him with misleading financial information that induced him to provide tens of millions of dollars in additional collateral. Months later, after newly discovered evidence caused Ver to suspect GGCI's deceit, Ver raised his concerns to GGCI that it had been and was still insolvent. But rather than answering Ver's questions, GGCI terminated the agreement and filed this action.

GGCI now seeks to dismiss Ver's counterclaim by arguing that it terminated the agreement before Ver was able to uncover its insolvency and issue a notice to cure. However, there was no need for Ver to do so because GGCI had already terminated the agreement. Nor would a cure period have mattered, since GGCI would have been unable to cure both its insolvency and its prior misrepresentations. GGCI now claims it has never been insolvent, an admission that serving a notice to cure would be a futile and useless act.

This is not a case, as GGCI alleges, of Ver declining to terminate the agreement in June 2022, waiting until his options expired, and seeking to escape losses. Ver promptly inquired into GGCI's solvency in June 2022, relied on GGCI's representations of solvency, then proceeded to pay GGCI tens of millions of dollars in additional collateral to maintain his open positions, including $37,000,000 in collateral just one month prior to his options expiring. A party seeking

1

Case 1:24-cv-01533-JPC   Document 20-2   Filed 03/20/24   Page 9 of 38

to welch on a debt would never have made these payments. Ver's good faith is demonstrated by his having paid GGCI tens of millions of dollars in collateral right up until December 2022, when SBF's public statements in the wake of the FTX bankruptcy called GGCI's solvency into question.

It is GGCI — not Ver — playing a game of "heads I win; tails you lose." GGCI lied to Ver about its insolvency in June 2022 and papered over it with accounting tricks, hoping that the market would move in its direction. If it did, GGCI would collect; if it didn't, GGCI would file for bankruptcy. Either way, Ver would lose, which is precisely why ISDA agreements mandate continued solvency.

There is nothing conclusory or speculative about Ver's allegations. GGCI's evidence of solvency is a pair of _unaudited_ statements of financial condition ("SOFC") from late June 2022, which reveal a precarious financial situation and raise more questions than they answer. Those SOFCs value GGCI's digital assets mark-to-market and apply no discount to them. Meanwhile, on June 24, GGCI demanded Ver apply steep discounts — up to 66%[1] — to his own digital assets if used as collateral. GGCI would be insolvent were it to apply this same standard to itself. A mere 6.3% discount to its digital assets on June 20th, or 1% on June 30th, would leave GGCI insolvent. And the 1% is _before_ applying a discount to GGCI's June 30th sham injection of $151,000,000, which stemmed from a promissory note with a ten-year maturity that was — implausibly — valued at par. GGCI was insolvent well before June 30 and their sham capital injection did nothing to fix it.

---

[1] GGCI demanded Ver to over-collateralize his digital asset collateral by 300%, which is effectively a discount of 66%.

In seeking to dismiss Ver's counterclaim, GGCI is in essence asking this Court to reward it for lying about and concealing its insolvency long enough for options to expire. Their motion should be denied.

## FACTUAL BACKGROUND

In June 2022, GGCI faced insolvency as Three Arrows Capital ("3AC") started to collapse. *See* Ver Amended Counterclaim ("Amended Counterclaim") at ¶¶ 146–156 (Dkt. #32). Desperate for assets, GGCI targeted Ver, a significant customer with multiple expiring options that month. *Id.* at ¶ 157. To collect from him, GGCI let Ver's out-of-the-money options expire; to avoid paying him, GGCI persuaded Ver to roll in-the-money options to a later date. *Id.* at 1. Meanwhile, Genesis secretly planned to margin call and liquidate 3AC immediately after the roll, which would drive Ver's expiring positions to new lows. *Id.* at ¶ 163.

On June 24, when Ver sought to post collateral to support his open options, GGCI informed him that he would need to overcollateralize his positions by 300% were he to use digital assets. *See* Amended Counterclaim at ¶ 169 (Dkt. #32). GGCI's demand made Ver suspicious, and he demanded proof of GGCI's solvency before he would provide any further collateral. *Id.* at ¶ 172. GGCI then provided Ver with a Statement of Financial Condition dated June 20, 2022, ("June 20 SOFC") which misleadingly portrayed narrow positive equity. *Id.* at ¶ 176. In truth, GGCI was already insolvent. *Id.* at ¶¶ 179, 180. The SOFC hid GGCI's insolvency by overvaluing illiquid digital assets by using undiscounted mark-to-market prices. *Id.* Had GGCI applied appropriate discounts to its digital assets, as it demanded from Ver, its SOFC would have revealed its insolvency and Ver would have terminated the contracts because of GGCI's default. *Id.*

3

Case 1:24-cv-01533-JPC   Document 20-2   Filed 03/20/24   Page 11 of 38

By June 30, even using the inflated mark-to-market valuations to artificially increase the value of the digital assets on its books, GGCI was insolvent and facing a shortfall of $136,000,000. Amended Counterclaim at ¶¶ 182–192 (Dkt. #32). GGCI entered into a sham transaction to hide this shortfall. That same day, June 30, GGCI's parent, Genesis Global Capital ("GGC"), purportedly received an injection of $1.1 billion from its parent, Digital Currency Group ("DCG"), and in turn injected $151,000,000 into GGCI to correct the shortfall. *Id.* at ¶¶ 182–184. However, this was just another accounting farce. Instead of injecting capital, DCG provided GGC with a $1.1 billion promissory note, and then recorded the transaction as an injection of $1.1 billion onto its books. *Id.* at ¶¶ 184–186. The actual value of the promissory note was far lower than $1.1 billion, owing to the fact that it had a *ten-year* maturity, and bore interest at a below-market one percent. *Id.* at ¶ 186. GGC — which filed for bankruptcy just months later — never actually injected $151,000,000 into GGCI on June 30, 2022. *Id.* at ¶ 190 . Accordingly, GGCI remained insolvent.

In December 2022, the collapse of the FTX exchange and Alameda Research revealed that GGCI had been insolvent all along. Amended Counterclaim at ¶¶ 198–203 (Dkt. #32). Ver was alerted to GGCI's insolvency by an interview wherein FTX and Alameda co-founder Sam Bankman-Fried stated that Alameda had repaid a $2.5 billion dollar loan to "Genesis" in August 2022. *Id.* at ¶¶ 198–201. This appeared to be an obvious preference transfer that would be subject to clawback. *Id.* at ¶ 201.

As stated in GGCI's own complaint, the "[t]hree options with expiration dates of December 30, 2022 gave rise to this action." *See* Plaintiff's Complaint ("Comp.") at ¶ 7 (Dkt. #9). On January 12, 2023, GGCI sent notice to Ver that an event of default had occurred. *Id.* at ¶ 9. On January 17, 2023, GGCI sent an additional notice to Ver setting January 19, 2023, as the

"Early Termination Date." *Id.* at ¶ 10.  As a result, as of January 19, 2023, the contract between the parties was terminated.  Just 4 days later, on January 23, 2023, GGCI filed a Summons with Notice with this court initiating this action.  *See* Summons with Notice ([Dkt. #1](#)).  GGCI had terminated the contract before Ver could send a notice of default.

## LEGAL STANDARD

"On a [CPLR 3211 (a) (7)](#) motion to dismiss for failure to state a cause of action, the complaint must be construed in the light most favorable to the plaintiff and all factual allegations must be accepted as true." *Alden Global Value Recovery Master Fund, L.P. v. KeyBank N.A.*, [159 A.D.3d 618, 621–622](#) (1st Dep't 2018) (quoting *219 Broadway Corp. v. Alexander's, Inc.*, [46 N.Y.2d 506, 509](#) (N.Y. Ct. App. 1979)).  "Further, on such a motion, the complaint is to be construed liberally and all reasonable inferences must be drawn in favor of the plaintiff." *Id.* (citations omitted).

A motion to dismiss under [CPLR § 3211(a)(7)](#), for "failure to state a cause of action, must be denied if the factual allegations contained within 'the pleadings' four corners . . . manifest any cause of action cognizable at law.'" *Burlington Loan Mgt. Ltd. v. SMBC Nikko Capital Mkts. Ltd.*, [2015 N.Y. Misc. LEXIS 1986, 5](#) (Sup. Ct., N.Y. Cnty. 2015) (considering claim of breach of contract under ISDA agreement) (quoting *511 W 232nd Owners Corp. v. Jennifer Realty Co.*, [98 N.Y.2d 144, 151–52](#) (2002)).

Where the motion to dismiss is based on documentary evidence under [CPLR § 3211(a)(1)](#), the claim will be dismissed "if the documentary evidence submitted ***conclusively*** establishes a defense to the asserted claims as a matter of law." *Id.* (quoting *Leon v. Martinez*, [84 N.Y.2d 83, 88](#) (1994) (emphasis added); *see also 150 Broadway NY Assocs., L.P. v. Bodner*, [14 A.D.3d 1](#), 5 (1st Dep't 2004).

Case 1:24-cv-01533-JPC   Document 20-2   Filed 03/20/24   Page 13 of 38

For the reasons set forth herein, GGCI has failed to meet its burden and Ver respectfully requests that GGCI's motion to dismiss be denied.

## ARGUMENT

### I.    VER'S AMENDED ALLEGATIONS ARE APPROPRIATE

CPLR 3025 (a) plainly allows Ver to amend his pleadings once as of right without leave of court at any time prior to the service of GGCI's answer.  In *Roam Capital v. Asia Alternatives Mgt. LLC,* 194 A.D.3d 585, 585–86 (1st Dep't 2021), the First Department upheld a plaintiff's right to amend without leave under near identical circumstances:

> "A party may amend his pleading once without leave of court . . . at any time before the period for responding to it expires" (CPLR 3025[a]). Since a motion to dismiss extends the defendant's time to answer the complaint "until ten days after service of notice of entry of the order" deciding the motion (CPLR 3211[f]), and since the court had not yet even decided defendant's CPLR 3211 motion at the time plaintiff moved to amend its complaint, plaintiff did not need to move pursuant to CPLR 3025(b); instead, it could have amended as of right pursuant to CPLR 3025(a). (*see Nimkoff Rosenfeld & Schechter, LLP v O'Flaherty,* 71 AD3d533 [1st Dept 2010]; *Gowen v Helly Nahmad Gallery, Inc.,* 60 Misc 3d 963, 979 [Sup Ct, NY County 2018], *affd* 169 AD3d 580 [1st Dept 2019]).

Here, the Amended Answer and Counterclaim is Ver's first Amendment of the Pleadings. Because GGCI had yet to answer, and because the court had yet to rule on GGCI's motion to dismiss, Ver was permitted to amend his complaint without leave of court pursuant to CPLR 3025 (a).

GGCI's reliance on *Bogoni v. Friedlander,* 197 A.D.2d 281, 292 (1st Dep't 1994) is both misplaced and misleading.  It is misplaced because *Bogoni* concerns CPLR 3025 *(b)*, which governs amendments requiring leave of court.  It is misleading because GGCI cherry-picked language from *Bogoni* to conceal its clear reference to CPLR 3025 (b).  Below is the full passage, with the emboldened portion representing the language GGCI chose to omit:

> A word is in order regarding the function and scope of an amendment of pleadings pursuant to CPLR 3025. The purpose of this procedural device is to

Case 1:24-cv-01533-JPC   Document 20-2   Filed 03/20/24   Page 14 of 38

permit the plaintiff to amend his theory of recovery to comply with the facts as they unfold, not to permit the plaintiff to alter his representation of material facts to best suit his theory of recovery and thereby overcome defenses raised in opposition. **As stated by one leading commentator, "CPLR 3025 (b) rejects the old practice, applicable in law cases, restricting the action to facts in existence when it was first brought, and instead adopts for all actions the equity practice of allowing the case to take cognizance of facts arising right up to the trial."**

*Bogoni*, 197 A.D.2d at 292 (quoting Siegel, NY Prac § 237, at 353 (2d ed.)).

GGCI argues that Ver is amending his complaint in response to GGCI's arguments in its motion to dismiss. Although the reasoning does not matter, as described above, the truth is that Ver amended his complaint because of new evidence. On July 7, 2023, a complaint alleging fraud was filed against GGCI's ultimate parent and its controlling shareholder, Digital Currency Group ("DCG") and Barry Silbert. *See generally* Complaint, *Gemini Trust Company, LLC v. Digital Currency Group, Inc. et al.*, (S.D.N.Y. 2023) (1:23-cv-06864). The allegations of fraud pertained to the $1.1 billion dollar promissory note that was provided to Genesis Group on June 30, 2022, which lies at the heart of this dispute. Twenty-four days later, having taken the time to look into those allegations, Ver filed his amended complaint under CPLR 3025 (a).

## II.   BREACH OF CONTRACT CLAIMS

### A.  GGCI Terminated the Contract

*First,* GGCI terminated the agreement in January 2023, which made compliance with the notice and cure period a futile and useless act.

According to GGCI, Ver's contract claims should be dismissed because he failed to follow the ISDA Master Agreement's conditions precedent to recovery. However, GGCI only tells half the story when it asserts that "a party asserting nonperformance must afford a defaulting party any contractually-secured opportunity to cure prior to terminating a contract." *Karabu v. Pension Benefit Guaranty Corp.*, 1997 U.S. Dist. LEXIS 19582, *23 (S.D.N.Y. 1997). This is

because "[p]roviding notice and cure is *not required* where it would be futile." *Point Prods. A.G. v. Sony Music Entm't, Inc.*, 2000 U.S. Dist. LEXIS 10066, *12 (emphasis added) (citing *Wolff & Munier, Inc. v. Whiting-Turner Contracting Co.*, 946 F.2d 1003, 1009 (2d Cir. 1991)) (strict adherence to cure provision would have been a "useless act" given plaintiff's abandonment of contract and unjustified ultimatums).

Here, because GGCI had already terminated the contract before Ver could send a notice of default, strict adherence to the notice and cure provisions of the agreements would have been a "useless act."

**Second,** assuming *arguendo* that GGCI had not terminated the contract, providing notice to GGCI of its default due to its insolvency still would have been a futile or useless act.

As alleged in Ver's amended counterclaim, GGCI became insolvent by June 2022, if not earlier. *See* Amended Counterclaim at ¶¶ 36, 123, 145, 157–158, 190, and others (Dkt. #32). Ver raised concerns that GGCI was insolvent in June 2022, and GGCI responded by misrepresenting that it was solvent and providing Ver with misleading documents to support that position. *Id.* at ¶¶ 170–181. GGCI's misrepresentations thus denied Ver the opportunity to terminate the agreement at such time. It was not until late December 2022, just as the options were about to expire, that Ver learned of newly discovered evidence that caused him to inquire further into GGCI's insolvency. *Id.* at ¶¶ 198–208.

However, providing GGCI with a notice of default in late December 2022 would have been a "useless act." GGCI's insolvency and its misrepresentations concerning it had taken place some six to seven months prior, and GGCI could not go back and cure them.

Moreover, GGCI's memorandum of law asserts that it was "never insolvent," which confirms the futility of issuing a notice of default. *See* Memo of Law ISO Motion to Dismiss at

Case 1:24-cv-01533-JPC    Document 20-2    Filed 03/20/24    Page 16 of 38

4 (Dkt. #35).  Were Ver to issue a notice of default, GGCI would simply decline to cure and claim to have never been insolvent.

In fact, in an effort to dispose of this meritless issue and to avoid costs associated with briefing it, Ver did just that.  Out of an "overabundance of caution," on July 25, 2023, Ver issued GGCI a notice of default and provided them an opportunity to cure. See, Exhibit A to Affidavit of Michael D. Handelsman, dated Sep. 6, 2023.  Predictably, GGCI did not cure its default, and instead claimed that it had never been insolvent. *Id.* at Ex. B.  GGCI has again confirmed that issuing a Notice of Default is a futile and useless act.

*Third,* GGCI's breaches of the agreement were material and have caused Ver damages. Accordingly, GGCI's reliance on *SSC NY Corp. v. Inveshare, Inc.*, 2018 N.Y. Misc. LEXIS 3202, *10–11 (Sup. Ct., N.Y. Cnty. 2018) is misplaced.

GGCI points to *Inveshare* to argue that "an *immaterial breach* did not excuse the non-defaulting party's payment obligations."  *See* Memo of Law ISO Motion to Dismiss at 17 (Dkt. #35) (emphasis added).  As the Court in *Inveshare* explained, "Inveshare has not pleaded that the confidentiality breach caused it to sustain any damage nor has it alleged (because it cannot plausibly do so) that the confidentiality breach, which occurred *after* Inveshare's alleged breach, excused its performance under the Agreement."  *Inveshare*, 2018 N.Y. Misc. LEXIS 3202 at *10–11.

Ver is easily distinguished from Inveshare.  Unlike Inveshare, who did not plead any damages, Ver has pleaded that GGCI's breaches have caused him damages in excess of $20,000,000.  *See* Amended Counterclaim at ¶ 248 (Dkt. #32).  Plainly, GGCI's insolvency and intentional misrepresentations regarding it are material.  GGCI's description of its own

Case 1:24-cv-01533-JPC   Document 20-2   Filed 03/20/24   Page 17 of 38

insolvency as "immaterial" when the contract makes it a fundamental obligation and when it caused Ver significant damages is simply beyond the pale.

**Fourth,** Ver is not trying to "excuse [his] payment obligations," as was the case in *Inveshare, Inc.* *See* Memo of Law ISO Motion to Dismiss at 17 (Dkt. #35). Nor has he tried to avoid paying any sums due and owing. Ver's good faith and his willingness to pay any and all sums owed is clearly evidenced by his history of collateral payments to GGCI. Beginning in June 2022, in reliance on GGCI's representations of solvency, Ver has paid GGCI in excess of $60,000,000. Amended Counterclaim at ¶¶ 197–198 (Dkt. #32). This includes a $37,000,000 payment made just a few weeks before the options expired.

GGCI's allegations of Ver's bad faith are a made-for-litigation fantasy. Were Ver simply seeking to avoid paying GGCI, why would he pay them $37,000,000 just one month prior to expiration? This dispute only arose after specific information from the FTX bankruptcy that revealed GGCI to be insolvent reached Ver in late December 2022. Amended Counterclaim ¶¶ 198–210 (Dkt. #32).

As Ver has made clear, "[d]espite GGCI's repeated misrepresentations and false assurances of solvency, [he] maintains his willingness to pay any outstanding sums owed, provided GGCI can finally demonstrate they were solvent at the relevant times." *See* Amended Counterclaim at 4 (Dkt. #32). But instead of taking Ver up on his offer, GGCI wants to dismiss Ver's counterclaim to avoid ever having to do so.

**Fifth,** GGCI's reliance on *In re Lehman Brothers Holdings, Inc., et al.* is also misplaced.[2] *See* Ex. D to Gottlieb Aff. (Dkt. # 36). GGCI cites to *In re Lehman Brothers* to provide an

---

[2] GGCI has only included a partial copy of this transcript. A full 94 pages were provided to the Court. It is unknown how many additional pages follow page 113 of the Transcript, which is clearly not the last page.

Case 1:24-cv-01533-JPC   Document 20-2   Filed 03/20/24   Page 18 of 38

example of a party to an ISDA agreement not being excused from their payment obligations despite a bankruptcy filing.  However, this case is easily distinguished.

Whereas Ver relied on GGCI's representations of solvency, Lehman Brothers had filed for bankruptcy and was clearly insolvent.  The crux of *Lehman* was that Metavante took no steps to terminate the ISDA agreement despite being aware of Lehman Brothers' insolvency.  The *Lehman* Court took umbrage with Metavante "riding the market for the period of one year [following the Lehman bankruptcy filing], while taking no action whatsoever."  *Id*. at 110:22–23; s*ee also id*. at 106:11–14 ("Metavante has not, however, attempted to terminate the Agreement").

Ver's actions are easily distinguished from Metavante's.  Unlike Ver, Metavante was aware of its counterparty's insolvency.  Ver did not sit on his hands for a year like Metavante, Ver was instead deprived of an opportunity to terminate the agreement by GGCI's misrepresentations of solvency.  When Ver finally learned he had been deceived, the options were about to expire. GGCI's reliance on *In re Lehman Brothers* is completely misplaced.

Next, whereas the dispute between Ver and GGCI concerns an agreement that has already been terminated, *In re Lehman Brothers* does not.  According to the *In re Lehman* Court*:* "[a]lthough complicated at its core the Agreement is, in fact, a garden variety *executory contract*, one for which there remains something still to be done on both sides."  *Id*. at 109:19–21 (emphasis added).  Lehman Brothers was fighting to keep the contract in force, unlike GGCI who terminated the agreement.

Finally, *In re Lehman Brothers* was a bankruptcy case that discussed the interplay between bankruptcy law and contract law.  *Id*.  The matter here does not involve claims under bankruptcy law.  *In re Lehman Brothers* is inapposite and should be disregarded.

Case 1:24-cv-01533-JPC    Document 20-2    Filed 03/20/24    Page 19 of 38

**Sixth,** Ver did not delay in seeking to terminate the agreement, GGCI terminated before he was able to do so and while the parties were still negotiating.   Pursuant to Section 6b of the ISDA Master Agreement, "[i]f a Termination Event . . . occurs, an Affected Party will, promptly *upon becoming aware of it,* notify the other party, specifying the nature of that Termination Event . . ." (Emphasis added).   Ver did not "become aware" of GGCI's insolvency until late December 2022. GGCI then terminated the contracts and filed the instant lawsuit before Ver had received answers to his questions from GGCI.   Ver was accordingly unable to serve notice.

**Seventh,** GGCI claims that Ver's allegations of its continuing insolvency post-June 2022 are "nonsensical" because they fail to explain why GGCI's inadequate accounting methods rendered GGCI insolvent on a continuing basis.   (*See* Memo of Law ISO Motion to Dismiss at 17 (Dkt. #35)).   However, Ver's position is clear.   GGCI's claims of solvency hinge on *unaudited* SOFCs, and those SOFCs do not reflect its true financial status since GGCI's accounting methods improperly overvalued assets in an effort to mislead counterparties like Ver into believing it was solvent.

GGCI's unaudited SOFCs failed to apply a discount to its large sums of illiquid and volatile tokens during a time of suppressed market activity.   Meanwhile — within days of those unaudited SOFCs being issued — GGCI was demanding Ver to apply steep discounts (of 66%) to his own digital assets he wished to use as collateral.   Amended Counterclaim ¶ 169 (Dkt. #32). This "nonsensical" double standard is a frank admission by GGCI that its own unaudited SOFCs overvalued digital assets to paint a misleading picture of solvency.   There is absolutely no justification for GGCI to demand Ver discount his digital assets on June 24th by 66% and not demand the same of themselves on June 20th and/or 30th.

Case 1:24-cv-01533-JPC   Document 20-2   Filed 03/20/24   Page 20 of 38

Nearly any discount to the value of GGCI's digital asset investments would devour shareholders' equity and cause liabilities to exceed assets. To illustrate, anything greater than a 1% discount to its digital asset investment would have rendered GGCI insolvent according to its June 30 SOFC. *See* Amended Counterclaim ¶¶ 184, 214 (Dkt. #32).

For these reasons, Ver respectfully requests that this court deny GGCI's motion to dismiss his amended counterclaim pursuant to CPLR § 3211(a)(7). The documentary evidence submitted by Claimant, i.e., the contract at issue, does not "conclusively establish[] a defense to the asserted claims as a matter of law" and Ver's amended counterclaim should not be dismissed pursuant to CPLR § 3211(a)(1). *Burlington Loan Mgt. Ltd.*, 2015 N.Y. Misc. LEXIS 1986, *5 (quoting *Leon v. Martinez*, 84 N.Y.2d 83 at 88).

### B. Ver's Allegations Meet the Contract Pleading Standard

Ver's specific allegations that GGCI's liabilities exceeded its assets at material times in breach of the ISDA meet the standard required to plead a breach of contract claim. GGCI is wrong that Ver's breach of contract claim is required to meet a heightened pleading standard. No such pleading standard exists in the realm of contract law since there is "no requirement of heightened particularity in a contract claim." *Cortlandt St. Recovery Corp. v. TPG Capital Mgt., L.P.*, 2022 N.Y. Misc. LEXIS 6181, *47 (N.Y. Ct. App. 2022) (quoting *Vandashield Ltd. v. Isaacson*, 146 A.D.3d 552, 554 (1st Dep't 2017)).

*First,* a breach of contract claim is "merely subject to notice pleading standards" and at the motion to dismiss stage "it is premature and indeed unnecessary to precisely circumscribe the viable scope of plaintiffs' breach of contract claim. Discovery will flesh out the facts, and the court can revisit which itemized breaches are viable at the summary judgment stage." *Gelita, LLC v. 133 Second Ave., LLC*, 2014 N.Y. Misc. LEXIS 239, 14 (Sup. Ct., N.Y. Cnty. 2018).

13

Unable to cite a single case involving an ISDA Master Agreement and/or a contract where insolvency was the basis for the breach, GGCI attempts to invent a heightened pleading standard by analogizing to various cases brought under the Debtor and Creditor Law ("DCL"). However, none of those cases invoke such a standard and instead rely on the same standard applied to a breach of contract claim.

In *Matter of Northwest 5th & 45th Realty Corp. v. Mitchell, Maxwell & Jackson*, 164 A.D.3d 1158, 1158 (1st Dep't 2018), "[t]he petition invoked Debtor and Creditor Law § 273, which required insolvency . . . Despite this, the petition *made no allegations* about the fair salable value of MMJ's assets; thus, it *failed to make a prima facie case*." (Emphasis added). The petition was dismissed due to the failure to merely allege a prima facie case.

In *Goldberg v. EEI Holdco, Inc.*, 2021 N.Y. Misc. LEXIS 6244, *4 (Sup. Ct., N.Y. Cnty. 2021) the Court dismissed the DCL petition because "plaintiff's *conclusory allegation* of insolvency d[id] not suffice" (citing *Eagle Eye Collection Corp. v. Shariff*, 190 A.D.3d 600 (1st Dep't 2021)).  And in a passage GGCI chose to omit, *Goldberg* applied the same standard as it would to any other motion to dismiss:

> "When determining a motion to dismiss, the Court must accept all factual allegations as true, afford the pleadings a liberal construction, and accord plaintiff the benefit of every possible favorable inference. However, allegations that are "*bare legal conclusions*" or that are "inherently incredible or *flatly contradicted by documentary evidence*," are not sufficient to withstand a motion to dismiss."

*See Goldberg,* 2021 N.Y. Misc. LEXIS 6244 at *2–3. (emphasis added and internal citations omitted).

Nor did *Eagle Eye Collection Corp. v. Shariff* apply a heightened pleading standard. There, the claims at issue were also based on DCL § 273, and were dismissed as being "*conclusory allegations*" based on the holding in *Riback v. Margulis*, 43 A.D.3d 1023, 1023 (2d

Case 1:24-cv-01533-JPC   Document 20-2   Filed 03/20/24   Page 22 of 38

Dep't 2007).  *See Eagle Eye*, 190 A.D.3d at 601 (emphasis added).  According to *Riback*, "the facts pleaded are *presumed to be true* and are accorded every favorable inference, bare legal conclusions as well as factual claims *flatly contradicted by the record* are not entitled to any such consideration."  *See Riback*, 43 A.D.3d at 1023 (emphasis added).

The common thread in all of these cases is that there is no special pleading standard.  But even if there were, this Court should decline to create new precedent here by applying it to contract actions, owing to the obvious disparity in consequences that flow from a breach of contract versus a petition for insolvency.

**Second,** Ver's allegations clearly meet the applicable notice pleading standards.  They are not "flatly contradicted by the record."  They are not "speculative and conclusory."  Ver's allegations contain numerous specific examples alleging GGCI's insolvency.[3]

To provide just a single example, GGCI's sole evidence that it was solvent in June 2022 consists of a pair of *unaudited* SOFCs.  *See* Amended Counterclaim at ¶¶ 176, 184, 211 (Dkt. #32) Those SOFCs showed an extremely thin positive equity, which largely consisted of illiquid digital assets valued by GGCI at mark-to-market valuations.  *See id.* at ¶¶ 111–122.  GGCI reported these valuations at a time when digital asset markets were freezing up and these assets were far less liquid than usual.  *See id.* at ¶ 152 (citing to an arbitration filing by GGCI's affiliate which stated that "[d]ue to recent extreme volatility in the cryptocurrency markets, the value of the collateral already posted by Three Arrows decreased significantly in comparison to the

---

[3] Examples include:
(1) GGCI's failure to enforce collateral requirements, *see* Amended Counterclaim at ¶ 95 et seq. (Dkt. #32);
(2) GGCI's collateral exposed to a daisy chain of debts, *see id.* at ¶ 105;
(3) GGCI's deviation from ASC 820, *see id.* at ¶ 111 et seq.;
(4) GGCI's over exposure to FTX and Alameda, *see id.* at ¶ 123 et seq.;
(5) GGCI's over exposure to 3AC, *see id.* at ¶ 138 et seq.;
(6) GGCI's misrepresentations of solvency, *see id.* at ¶ 157 et seq.;
(7) DCG's $1.1 billion promissory note and further misrepresentations of solvency, *see id.* at ¶ 182 et seq.

15

Case 1:24-cv-01533-JPC   Document 20-2   Filed 03/20/24   Page 23 of 38

loaned assets under the MLAs."). GGCI knew these assets needed to be discounted, since on June 24, 2022 it demanded Ver apply steep discounts to his own digital assets were he to provide them as collateral. *See id.* at ¶¶ 166–169 .

GGCI never applied any discounts to its digital assets listed in its unaudited SOFCs because doing so would leave them insolvent. In the June 20 SOFC, for example, applying a discount of just over 6% to GGCI's "Investments in Digital Currencies" would be sufficient to cause liabilities to exceed assets. *See* Amended Counterclaim at ¶ 177 (Dkt. #32). And in the June 30 SOFC a mere discount of 1% would suffice to render GGCI insolvent. *See id.* at ¶¶ 184, 214.

For these reasons, Ver respectfully requests that GGCI's motion to dismiss his breach of contract claim be denied.

## III.     THE FRAUD CLAIM

### A.   Fraud Claim Is Plead In The Alternative

As declared by the Court of Appeals decades ago, "[u]ndeniably, a plaintiff is entitled to advance inconsistent theories in alleging a right to recovery." *Cohn v. Lionel Corp.*, 21 N.Y.2d 559, 563 (1968). Indeed, it is the "clear mandate of CPLR §§ 3014 and 3017 which permit and encourage pleading of claims and remedies in the alternative; as well as New York practice, which provides that the election of remedies, if any, 'need not be made until all the proof has been presented.'" *Volt Systems Development Corp. v. Raytheon Co.*, 155 A.D.2d 309, 309 (1st Dep't 1989) (quoting 3 *Weinstein-Korn-Miller, N.Y. Civ. Prac.*, ¶ 3002.04 at 30-122 (1988)).

Under CPLR § 3014, "[c]auses of action or defenses may be stated alternatively or hypothetically." CPLR § 3014. And under CPLR § 3017(a), "[r]elief in the alternative or of several different types may be demanded." CPLR § 3017.

16

Case 1:24-cv-01533-JPC   Document 20-2   Filed 03/20/24   Page 24 of 38

Ver's fraud claims are not duplicative.  In the case cited by GGCI, *Cronos Grp. Ltd. v. XComIP, LLC,* 156 A.D.3d 54 (1st Dep't 2017)*,* the court explained that a fraud claim is duplicative when defendants "'misrepresent[]…their intentions with respect to the manner' in which they would perform their contractual duties." *Cronos G* at 63.  In other words, "[a] fraud-based claim is duplicative of a breach of contract claim when the only fraud alleged is that the defendant was not sincere when it promised to perform under the contract." *MMCT, LLC v. JTR Coll. Point, LLC*, 122 A.D.3d 497, 499 (1st Dep't 2014).

Ver is not claiming that GGCI had no intention to perform under the contract *before* it entered into the agreement thereby committing fraud.  Ver is claiming that GGCI was insincere *in its performance* of the contract — specifically, its misrepresentations of solvency intended to induce Ver into sending them tens of millions of dollars to maintain his positions.  This is not the case where, as GGCI claims, the fraud claim arises from the same facts of the contract claim.  The contract claim is that GGCI was insolvent after the contract was entered — whether Ver knew or not.  The fraud claim is that GGCI *misrepresented* its solvency to induce Ver into sending additional collateral.

For these reasons, Ver's fraud claims should not be dismissed, and Ver respectfully requests that GGCI's motion is denied.

### B.  Ver Plead Fraud With Particularity

Under CPLR § 3016(b), "[w]here a cause of action or defense is based upon misrepresentation, fraud, mistake, wilful default, breach of trust or undue influence, the circumstances constituting the wrong shall be stated in detail." CPLR § 3016.

To meet the heightened pleading standard for fraud, the "Plaintiff must merely allege facts sufficient to permit a reasonable inference of the alleged misconduct to each Defendant."

17

*EVEMeta, LLC v. Siemens Convergence Creators Corp.*, 2018 N.Y. Misc. LEXIS 4445, *17 (Sup. Ct., N.Y. Cnty. 2018) (citing *Goldin v. TAG Virgin Islands, Inc.*, 149 A.D.3d 467, 467 (1st Dep't 2017) (holding that under CPLR 3016's heightened pleading requirement, the Defendants must be able to reasonably infer what the misconduct was from the pleadings)).

According to *Goldin*, "even absent details of time and place" a complaint that "allege[s] facts sufficient to permit a reasonable inference of the alleged misconduct" is deemed to have met "the heightened pleading requirement of CPLR 3016(b)." *Goldin*, 149 A.D.3d at 467.

Ver has met this burden. The 285 paragraphs making up Ver's amended counterclaim provide substantial factual allegations regarding the specific misrepresentations made, the dates that they were made, the motive or intent of GGCI in making those intentional misrepresentations, and the resulting damages suffered as a result of GGCI's actions. *See, e.g.*, Amended Counterclaim ¶¶ 273–285 (Dkt. #32) (explaining that GGCI intentionally sent Ver an inaccurate portrayal of its financial position on June 28, 2022, which induced Ver to make over $60,000,000 in payments to GGCI to maintain his option positions). The counterclaim goes above and beyond the requirement that it merely "allege facts sufficient to permit a reasonable inference of the alleged misconduct." *Goldin*, 149 A.D.3d at 467.

GGCI's position is that even if it had to "write down hundreds of millions of dollars in assets" as a result of the 3AC fallout, "the June 2020 SOFC does not contain any misrepresentations" in and of itself. Memo of Law ISO Motion to Dismiss at 22 (Dkt. #35). Assuming *arguendo* that the June 20 SOFC is in fact accurate on its face (it isn't), and the value of its digital currency investments were not overvalued (they were), the intentional misrepresentation lies in GGCI's carefully concocted decision to send Ver an old balance sheet that was conveniently timed the day before GGCI had to "write down hundreds of millions of

18

Case 1:24-cv-01533-JPC   Document 20-2   Filed 03/20/24   Page 26 of 38

dollars in assets."  GGCI knew the June 20 SOFC no longer accurately reflected its financial position by June 28th, yet gave it to Ver anyway.

Before sending tens of millions of dollars to maintain his options positions, and concerned with the recent fallout of 3AC, Ver asked for proof that GGCI was solvent, as GGCI was contractually obligated to be.  But rather than sending a current balance sheet, which would have revealed their insolvency, GGCI sent an old balance sheet that it knew no longer fairly represented its financial situation because it showed a positive — albeit fragile — shareholders' equity.  Amended Counterclaim at ¶¶ 180, 213–214 (Dkt. #32).  In reliance, Ver sent $60M to maintain his positions.  *Id.* at ¶ 178.  Two days later, on June 30, GGCI purportedly added $151,000,000 to their balance sheet, disguised as "Other assets", and claimed to have never been insolvent.  Thus, we have "a material misrepresentation of fact, knowledge of its falsity, an intent to induce reliance, justifiable reliance by the plaintiff and damages" sufficient to sustain Ver's fraud claim. *Eurycleia Partners, LP v. Seward & Kissel, LLP,* 12 N.Y.3d 553, 559 (N.Y. Ct. App. 2009).

Therefore, GGCI's motion to dismiss should be denied.

### C.  Ver Is Not Stating a Counterclaim for Fraudulent Omission

GGCI's argument that the lack of a fiduciary relationship prevents a claim for fraudulent omission is misdirected — the basis of Ver's fraud claim is not that there was fraud by omission, but rather that there was fraud by GGCI's affirmative misrepresentation of its financial condition at the time.  Ver is not claiming that GGCI's failure to disclose the events with 3AC is fraud in the omission.  Rather, Ver is claiming GGCI affirmatively misrepresented its solvency by sending Ver a balance sheet that inaccurately portrayed its financial condition at the time.

19

Firstly, GGCI intentionally overvalued its assets by valuing its digital assets mark-to-market. Amended Counterclaim at 2 (Dkt. #32). When sending Ver the June 20 SOFC, GGCI knew the value of its digital currency investment was nowhere near the roughly $1.6 billion it claimed, as it consisted largely of illiquid coins in time of market turmoil. *Id.* at ¶ 122. This was an intentionally false representation of its financial condition intended to mislead Ver and induce him to send GGCI collateral.

Nor is the timing of the balance sheet a coincidence. On June 28, 2022, GGCI finally sent Ver an unaudited balance sheet dated June 20, 2022. *Id.* Conveniently, the date of the balance sheet was just one day before GGCI was required to write down hundreds of millions of dollars of intercompany loans with GAP. *Id.* at ¶ 180. Hence, instead of showing a current balance sheet, which would have shown hundreds of millions of dollars less in assets and revealed their insolvency, GGCI decided to send an old balance sheet to convince Ver it was solvent.

Even were the June 20 SOFC accurate (and its assets not overvalued), Ver asked for proof that GGCI was then solvent, and GGCI sent an inaccurate representation of its then financial situation to mislead Ver and induce him to maintain his positions and send additional collateral. This is sufficient to support Ver's claim for fraud. Furthermore, this is fraud in the affirmative and, therefore, no fiduciary relationship is necessary to sustain Ver's claim.

### D. Ver's Reliance Is Not on Extracontractual Representations Made Prior to Entering the Agreement

GGCI seeks to deflect Ver's fraud claim by contending that Ver "disclaimed reliance on any extracontractual representations." *See* Memo of Law ISO Motion to Dismiss at 23 (Dkt. #35). Specifically, GGCI claims that "Ver agreed he was not relying on statements made by GGC International, would perform his own investigation, and acknowledged that cryptocurrency

20

Case 1:24-cv-01533-JPC   Document 20-2   Filed 03/20/24   Page 28 of 38

assets were volatile and unpredictable." *Id.* at 24 (citing Master Confirmation Agreement ¶¶ 9.a, 9.h, 9.h.i).

Again, GGCI misses the point. GGCI's representation of solvency via the June 20 SOFC is not an *extra*contractual representation — it is one expressly contemplated by the contract. Even if it were extracontractual, Ver only disclaimed extracontractual representations made *prior* to entering into the contract, not *post*contractual representations made to confirm the accuracy of explicit representations made within the contract itself.

Section 9(a)(iii) of the Master Confirmation Agreement sets forth that neither party is "relying upon any representations *except those expressly set forth in the Agreement or this Confirmation*." *van Voorhees Aff.*, Ex. 3 (Dkt. # 41) (emphasis added). Under the ISDA Master Agreement, incorporated by reference into the Master Confirmation Agreement, each party represents that it is solvent and will remain so throughout the contract. *van Voorhees Aff.*, Ex. 1, Sections 3(b), 5(a)(vii)(2) (Dkt. # 41). Thus, when GGCI sent an inaccurate representation of its financial condition to prove its solvency, Ver was concerned with the representations "expressly set forth in the [ISDA Master] Agreement and th[e Master] Confirmation," not any extracontractual representations as GGCI claims. *van Voorhees Aff.*, Ex. 3 (Dkt. # 41).

Furthermore, even if this court finds the representations to be extracontractual, the disclaimers GGCI references are inapplicable to post-contractual representations. Ver did not disclaim any future misrepresentations — only those representations by GGCI prior to entering the agreement. Thus, Ver is entitled to rely upon the representations made by GGCI after entering the agreement as true and accurate, particularly when they relate to representations "expressly set forth" in the agreement, and GGCI's affirmative misrepresentations of its solvency are sufficient to support Ver's claim for fraud.

Case 1:24-cv-01533-JPC   Document 20-2   Filed 03/20/24   Page 29 of 38

None of the cases cited by GGCI are applicable because none concern representations made *after* entering an agreement containing an extra-contractual representations disclaimer.

In *Pappas v. Tzolis*, 20 N.Y.3d 231, 231–232 (N.Y. 2012) the court's decision to dismiss fraud claims was based on statements made *prior* to an agreement being entered into. Nowhere did the Court consider representations made *after*. The court was quick to dismiss the cause of action for fraud as, prior to the sale of the company, the plaintiffs had disclaimed reliance on any representations made by the defendant. *Id.*

Likewise, *HSH Nordbank AG v. UBS AG*, 941 N.Y.S.2d 59, 70 (N.Y. App. Div. 2012) dismissed a fraud claim because of statements made *prior* to entering an agreement, not *after*. Again, the court's decision did not consider representations made *after* entering the agreement and was instead concerned with a party's inability to independently measure risk properly *prior* to entering an agreement. *Id.*

For these reasons, Ver respectfully requests that GGCI's motion to dismiss his fraud claim be denied.

## CONCLUSION

For the foregoing reasons, Ver respectfully requests that the Court deny GGCI's motion to dismiss his contract and fraud claims.

**KELMAN PLLC**

Dated: September 6, 2023

By: /s/ Daniel J. Kelman
Daniel J. Kelman
Michael D. Handelsman
1441 Broadway,
6th Floor, #26079
New York, NY 10018
daniel@kelman.law
mike@kelman.law

22

Case 1:24-cv-01533-JPC   Document 20-2   Filed 03/20/24   Page 30 of 38

## <u>WORD COUNT CERTIFICATION</u>

Pursuant to Rule 17 of subdivision (g) of section 202.70 of the Uniform Rules for the Supreme Court and County Court (Rules of Practice for the Commercial Division of the Supreme Court), I hereby certify that the total number of words in this memorandum of law, excluding the caption, signature block, and word count certification is 6,957.

Dated: New York, New York
       September 6, 2023

<u>/s/ Michael D. Handelsman</u>
Michael D. Handelsman

Case 1:24-cv-01533-JPC Document 20-2 Filed 03/20/24 Page 31 of 38

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

GENESIS GLOBAL CAPITAL
INTERNATIONAL LIMITED,

Plaintiff,

v.

ROGER VER,

Defendant.

Index No. 650439/2023

**Motion Seq. No. 002**

**AFFIRMATION OF MICHAEL D.
HANDELSMAN**

MICHAEL D. HANDELSMAN, an attorney duly sworn to practice before the Courts of the State of New York, affirms the following to be true under penalties of perjury and pursuant to CPLR 2106:

1. I am a Partner with the law firm of Kelman PLLC.

2. Our firm represents Roger Ver in the above-referenced matter.

3. I am fully familiar with the facts set forth herein based on my own personal knowledge.

4. I submit this Affirmation in Opposition to the Plaintiff's Motion to Dismiss Mr. Ver's Amended Counterclaims.

5. On July 25, 2023, Ver issued GGCI a notice of default and provided them an opportunity to cure. A true and correct copy of that correspondence is attached hereto as Exhibit A.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

1

Case 1:24-cv-01533-JPC   Document 20-2   Filed 03/20/24   Page 32 of 38

6.      On August 3, 2023, predictably, GGCI did not cure its default, and instead claimed that it had never been insolvent. A true and correct copy of that correspondence is attached hereto as Exhibit B.


Dated: New York, New York
       September 6, 2023


                                                    */s/ Michael D. Handelsman*
                                                    Michael D. Handelsman

Case 1:24-cv-01533-JPC   Document 20-2   Filed 03/20/24   Page 33 of 38

Exhibit A

to

Affirmation of Michael D. Handelsman



**Michael D. Handelsman, Esq.***
Partner

**New York Office**
1501 Broadway
12th Floor, Ste. 2972
New York, New York 10036

**Taipei Office**
No. 6 Songde Rd, 3/F
Xinyi, Taipei, Taiwan

*Admitted in NY and NJ

<u>**VIA OVERNIGHT FEDERAL EXPRESS**</u>

Peter Weidler
GGC International, LTD
250 Park Ave S, 5th Fl.
New York, New York 10013

July 25, 2023

Re:    <u>**NOTICE OF EVENT OF DEFAULT AND DESIGNATION OF EARLY
TERMINATION DATE**</u>

Dear Sir:

This firm represents Mr. Roger Ver and has been authorized to prepare this correspondence on his behalf. Reference is hereby made to:

1.  the Amended and Restated Master Confirmation Agreement for Virtual Currency Put and Call Option Transactions, dated as of June 22, 2020 ("**Master Confirmation Agreement**"), and the deemed 2002 ISDA Master Agreement and 1994 ISDA Credit Support Annex provided for therein between GGC International Limited and Roger Ver (collectively, the "**Master Agreement**"); and

2.  the Digital Currency Options Transactions which are subject to and form a part of the Master Agreement.

This letter will serve as Notice of GGC International's default pursuant to Section 6(a) of the 2002 ISDA Master Agreement. GGC International was/has been insolvent, an Event of Default pursuant to Section 5(a)(vii) of the 2002 ISDA Master

Case 1:24-cv-01533-JPC   Document 20-2   Filed 03/20/24   Page 35 of 38

July 25, 2023

Agreement, since no later than July 1, 2022.

Pursuant to Section 6(a) of the Master Agreement, Mr. Ver has designated July 28, 2023 as an Early Termination Date of the agreements referenced herein and any transactions entered pursuant thereto. Mr. Ver will provide GGC International with a calculation statement as soon as same is practicable. Although the agreements referenced herein were terminated by GGC International on January 19, 2023, Mr. Ver is sending this Notice of Default out of an overabundance of caution.

Nothing herein shall be deemed to be a waiver of Mr. Ver's rights, powers, privileges, and/or remedies under the agreements referenced herein.

The undersigned can be reached at mike@kelman.law or (201) 572-0400 should you have any questions or concerns.

Respectfully,

_____

Michael D. Handelsman
Partner

cc:    Derar Islim, dislim@genesistrading.com (by Email)
       Gordon Grant, GGrant@genesistrading.com (by Email)
       Alex van Voorhees, AVoorhees@genesistrading.com (by Email)

Exhibit B

to

Affirmation of Michael D. Handelsman

# MorrisonCohen LLP

Jason P. Gottlieb
Partner
(212) 735-8837
jgottlieb@morrisoncohen.com

August 3, 2023

**VIA EMAIL AND FEDEX**

Michael D. Handelsman, Esq.
Kelman Law
1501 Broadway
12th Floor, Suite 2972
New York, NY 10036
mike@kelman.law

Re:     Roger Ver's Notice of Default and Designation of Early Termination Date

Dear Michael:

As you know, this firm represents GGC International Limited ("GGC International"), and I write in response to the Notice of Event of Default and Designation of Early Termination Date dated July 25, 2023 (the "Notice") sent by you to GGC International on behalf of Roger Ver.[1]

Despite Mr. Ver's additional allegations in his Amended Answer and Counterclaims filed in the Action, the Notice is defective in multiple respects, and GGC International is treating it as a nullity.

First, you state in the Notice that you are designating July 28, 2023 as an Early Termination Date – even though GGC International already designated an Early Termination Date, which has passed.  As you know, the purpose of designating such a date is, in part, to crystalize the amount that is owed by the parties, which is determined as of that date and would otherwise fluctuate with market prices.  As with any market instrument, you cannot simply elect a historical date on which to determine your purported damages, or have multiple dates.  The contracts between the parties require determining the amount payable in respect to a designated Early Termination Date, by valuing the Terminated Transactions as of that date and providing notice of the amount owed.

You state in the Notice that you will send GGC International such a calculation statement, valuing the outstanding obligations.  As you know, GGC International already sent Mr. Ver such a statement.  This calculation statement provides that Mr. Ver owes $20,869,788 to GGC

---

[1]     I note that you improperly sent the Notice directly to GGC International without copying me or my colleague Michael Mix, even though you know that we are counsel of record for GGC International in the pending litigation between GGC International and Mr. Ver (the "Action").  Please avoid sending any future correspondence to GGC International regarding this dispute without including us.

Michael D. Handelsman
August 3, 2023
Page 2

International, plus interest that continues to accrue through payment.  Indeed, GGC International recently informed Mr. Ver that the interest amount through June 2023 was $1,796,938.84.

Second, GGC International was never "insolvent."  It has never been the subject of any insolvency proceeding, has never failed to pay debts, and its assets were and are greater than its liabilities.  Your assertions to the contrary are a made-for-litigation fantasy.  To the extent that Mr. Ver's failure to pay the outstanding amounts contributes to GGC International becoming insolvent in the future, Mr. Ver will be liable for that failure, and all consequential damages, which we will pursue to the fullest extent of the law.

For these reasons, you are not contractually permitted to designate an Early Termination Date.  It is contrary to the fundamental nature of the contracts, which requires advance notice of a termination, followed by valuation of the outstanding transactions and calculation of the amount owed.  In any event, because Mr. Ver owed significant sums to GGC International throughout 2022, electing a historical date would result in Mr. Ver owing even more to GGC International than he does now.

Your Notice is a transparent attempt to avoid your failure to follow the contracts, as we have argued in the Action.  The Action is the place to litigate these issues, not your post-hoc, made-for-litigation Notice.

GGC International reserves all rights in law and in equity.

Sincerely,

*Jason Gottlieb*

Jason P. Gottlieb

cc: Daniel Kelman (via email)