# Exhibit 3

Case 1:24-cv-01533-JPC   Document 20-3   Filed 03/20/24   Page 1 of 17

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

GGC INTERNATIONAL LIMITED,

                        Plaintiff

    v.

ROGER VER,

                        Defendant.

Index No.

650439/2023 Motion

Seq. No. 002

# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFF / COUNTERCLAIM-DEFENDANT GGC INTERNATIONAL LIMITED'S MOTION TO DISMISS DEFENDANT / COUNTERCLAIM-PLAINTIFF ROGER VER'S AMENDED COUNTERCLAIMS

MORRISON COHEN LLP
Jason Gottlieb
Michael Mix
Vani Upadhyaya
909 Third Avenue
New York, New York 10022
(212) 735-8600

*Counsel for Plaintiff / Counterclaim-Defendant GGC International Limited*

# TABLE OF CONTENTS

Page(s)

PRELIMINARY STATEMENT ................................................................................................... 1

ARGUMENT .................................................................................................................................. 3

    I.    THE BREACH OF CONTRACT COUNTERCLAIMS SHOULD BE DISMISSED ........................................................................................................ 3

        A.    Ver Failed to Comply with the ISDA Master Agreement's Conditions Precedent to Suit ................................................................................. 3

        B.    The Counterclaims Do Not Contain Sufficient Allegations of Insolvency ... 6

    II.    THE FRAUD COUNTERCLAIM SHOULD BE DISMISSED ............................. 8

        A.    The Fraud Counterclaim Is Duplicative of the Breach of Contract Counterclaims .................................................................................................. 8

        B.    Ver Has Failed to Allege Fraud With Particularity ...................................... 9

        C.    Ver Disclaimed Reliance on Extracontractual Representations ............... 10

CONCLUSION .............................................................................................................................. 11

WORD COUNT CERTIFICATION ............................................................................................ 12

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashwood Capital, Inc. v. OTG Mgmt., Inc.*,
  99 A.D.3d 1 (1st Dep't 2012) ................................................................................................4

*Carlyle, LLC v. Quik Park 1633 Garage LLC*,
  160 A.D.3d 476 (1st Dep't 2018) ..........................................................................................7

*Cohn v. Lionel Corp.*,
  21 N.Y.2d 559 (1968) ............................................................................................................8

*Eagle Eye Collection Corp. v. Shariff*,
  190 A.D.3d 600 (1st Dep't 2021) ..........................................................................................7

*EVEMeta, LLC v. Siemens Convergence Creators Corp.*,
  No. 651484/2016, 2018 N.Y. Misc. LEXIS 4445
  (Sup. Ct. N.Y. Cnty. Oct. 4, 2018).................................................................................8, 10

*In re: Genesis Global Holdco, LLC, et al.*,
  No. 23-10063 (SHL) (Bankr. S.D.N.Y.) ................................................................................6

*Genger v. Genger*,
  No. 651089/2010, 2015 N.Y. Misc. LEXIS 29
  (Sup. Ct. N.Y. Cnty. Jan. 7, 2015) ........................................................................................9

*Goldin v. TAG Virgin Is., Inc.*,
  149 A.D.3d 467 (1st Dep't 2017) ..........................................................................................9

*Goldin v. Tag Virgin Is. Inc.*,
  No. 651021/2013, 2014 N.Y. Misc. LEXIS 2300
  (Sup. Ct. N.Y. Cnty. May 20, 2014)....................................................................................10

*Heth v. Van Riet*,
  No. 651437/2011, 2011 N.Y. Misc. LEXIS 6973
  (Sup. Ct., N.Y. Cnty. Nov. 29, 2011) ...................................................................................9

*Karabu Corp. v. Pension Benefit Guar. Corp.*,
  No. 96 Civ. 4960 (BSJ), 1997 U.S. Dist. LEXIS 19582
  (S.D.N.Y. Dec. 9, 1997).........................................................................................................5

*Point Prods. A.G. v. Sony Music Entm't, Inc.*,
    No. 93 Civ. 4001 (NRB), 2000 U.S. Dist. LEXIS 10066
    (S.D.N.Y. July 19, 2000) ............................................................................................5

*RGH Liquidating Trust v. Deloitte & Touche LLP*,
    47 A.D.3d 516 (1st Dep't 2008) .................................................................................9

*Riback v. Margulis*,
    43 A.D.3d 1023 (2d Dep't 2007) ................................................................................7

*Steadman v. Zappin*,
    No. 150591/2017, 2018 N.Y. Misc. LEXIS 854
    (Sup. Ct. N.Y. Cnty. Mar. 13, 2018) ..........................................................................6

*Volt Sys Dev. Corp. v. Raytheon Co.*,
    155 A.D.2d 309 (1st Dep't 1989) ...............................................................................8

*Wolff & Munier, Inc. v. Whiting-Turner Contracting Co.*,
    946 F.2d 1003 (2d Cir. 1991) .....................................................................................5

*XL Diamonds LLC v. Rosen*,
    No. 656102/2019, 2020 N.Y. Misc. LEXIS 3368
    (Sup. Ct. N.Y. Cnty. July 15, 2020) ............................................................................6

**Statutes**

New York Debtor and Creditor Law § 273 ....................................................................2, 7

CPLR 3016 ..........................................................................................................................9

CPLR 3211 ........................................................................................................................11

iii

Plaintiff / Counterclaim-Defendant GGC International Limited ("GGC International") respectfully submits this reply memorandum of law in further support of its motion to dismiss (the "Motion") the Amended Counterclaims, dated July 31, 2023 (the "Counterclaims" or the "CC") filed by Defendant / Counterclaim-Plaintiff Roger Ver.

## PRELIMINARY STATEMENT

As described in GGC International's Complaint against Ver for breach of contract, Ver failed to settle certain cryptocurrency options with GGC International that expired on December 30, 2022. As a result of Ver's breach of contract, Ver owes GGC International at least $20,689,788, plus interest that continues to accrue.

Ver attempted to circumvent his payment obligations to GGC International by filing Counterclaims, alleging that at some point in 2022, GGC International became insolvent for some unspecified amount of time (notwithstanding that GGCI International has never filed for any insolvency), and such insolvency was a breach of the ISDA Master Agreement[1] to which the Parties entered through the Master Confirmation Agreement. Even if GGC International had been insolvent, which it was not, Ver would still be obligated to pay GGC International these amounts. Further, at no point during 2022 was there a time when Ver would not have owed GGC International.

GGC International moved to dismiss those Counterclaims. As demonstrated in the Moving Brief, Ver's claim that he should not have to pay GGC International because it was purportedly insolvent is both nonsensical and not supported by the relevant contracts. The ISDA Master Agreement provides a detailed contractual process for what happens if an "Event of Default"

---

[1] Defined terms are used as in GGC International's initial Memorandum of Law (NYSCEF No. 35, the "Moving Brief" or the "Moving Br.")

occurs. Following that process is a condition precedent to suit. The Opposition effectively concedes that Ver did not follow those procedures. Despite Ver's implications that he suspected GGCI International was insolvent in 2022, the first time that Ver ever notified GGC International that he believed that an "Event of Default" occurred was in this litigation.

The Opposition argues that Ver should be excused from following the contracts because he allegedly did not learn about a supposed insolvency until late 2022 or early 2023. But the unambiguous language of the contracts – including the industry-standard ISDA Master Agreement – does not allow Ver, after his own breach of contract, to retroactively declare an Event of Default for something that allegedly happened many months earlier.

Ver's breach of contract claims fail for the additional reason that he has not sufficiently pleaded that GGC International was ever insolvent. It is uncontested that GGC International has never been the debtor in any bankruptcy or insolvency proceeding, either in mid-2022 or now. It is uncontested that GGC International has never failed to pay any debts. The Counterclaims affirmatively plead that GGC International provided information to Ver showing significant positive equity, which Ver concedes in his Opposition. Simply put, Ver's own pleadings confirm that GGC International had never been insolvent.

Nevertheless, Ver speculates that, in light of volatile market conditions and the illiquid nature of some of the assets, a hypothetical auditor might mark down the value of those assets, so if he squints hard enough, he can make out insolvency. That is insufficient. Ver provides no information as to what he thinks the value of those assets actually are. Under analogous cases under New York Debtor and Creditor Law § 273, one cannot state a claim for insolvency without sufficient allegations of the value of the assets and liabilities. Even under a notice pleading standard, Ver's allegations do not suffice. If Ver's view of the law on this point were correct, any

2

defendant who owes money under the ISDA Master Agreement could allege that the counterparty was insolvent at some earlier point, thus excusing payment. Neither the ISDA Master Agreement, nor New York law, work that way.

Finally, Ver's fraud Counterclaim should be dismissed. It is duplicative of his breach of contract Counterclaims, and because it seeks the exact same quantum of damages. Ver also fails to allege fraud with particularity, relying solely on rampant speculation. And the disclaimers he agreed to in the Master Confirmation Agreement negate his fraud claims.

## ARGUMENT

### I.  THE BREACH OF CONTRACT COUNTERCLAIMS SHOULD BE DISMISSED

#### A.  Ver Failed to Comply with the ISDA Master Agreement's Conditions Precedent to Suit

The Moving Brief explains in detail how Ver failed to follow the ISDA Master Agreement's conditions precedent to suit. Moving Br. at 15-18. Ver alleges that at some undetermined point in time around June 2022, GGC International became insolvent, an "Event of Default" under the ISDA Master Agreement.[2] Section 6(a) of the ISDA Master Agreement provides that "[i]f at any time an Event of Default . . . has occurred and is then continuing, the other party may, by not more than 20 days notice to the Defaulting Party specifying the relevant Event of Default, designate" an "Early Termination Date in respect to all outstanding Transactions," which will "occur on the date so designated." ISDA Master Agreement §§ 6(a), (c). The ISDA Master Agreement then contains a detailed process for the Parties to calculate the amount owed, which would vary with market conditions, and provide a "statement" showing how much is owed. ISDA Master Agreement §§ 6(d)-(f).

---

[2] Ver also alleges that it was an "Event of Default" for GGC International to make a misrepresentation to Ver about its solvency, and all of GGC International's arguments apply equally to this contention.

3

Even if Ver did suspect insolvency in 2022, Ver failed to follow the proper procedure prior to his own breach of contract leading to this suit. Ver does not allege that he ever provided notice to GGC International "specifying the relevant Event of Default" until July 25, 2023, *after* he breached the contract, GGC International commenced this suit, and moved to dismiss Ver's original counterclaims. Opp. at 9. Ver argues that it would have been "futile" to do so, because he only found out about GGC International's alleged insolvency in late 2022 or early 2023, after GGC International designated an Early Termination Date due to Ver's failure to settle the trades at issue. Opp. at 7-9. But, if Ver really did learn about the alleged insolvency in late 2022 or early 2023, and such insolvency was continuing, Ver could have followed the requirements of the contracts, declared an Early Termination Date, and paid what he owed GGC International "in respect of the outstanding Transactions." Ver, upon his own allegations, did not do so. It is easy to understand why: if he had, he would have owed as much, or more, as is stated in the Complaint.

Instead, Ver is attempting to circumvent his payment obligations altogether by asserting that an Event of Default occurred at some point in the past. The ISDA Master Agreement does not allow such gamesmanship. As noted in the Moving Brief, "courts should be extremely reluctant to interpret an agreement as impliedly stating something which the parties have neglected to specifically include." *Ashwood Capital, Inc. v. OTG Mgmt., Inc.*, 99 A.D.3d 1, 7 (1st Dep't 2012) (citation omitted). *See also* Moving Br. at 13-14 (citing cases). Ver is effectively asking the court to ignore the plain language of the parties' agreements to create a new remedy for him, which is not permitted under New York law. *See Ashwood Capital Inc.*, 99 A.D.3d at 7 (courts "may not by construction add or excise terms, nor distort the meaning of those used and thereby make a new contract for the parties under the guise of interpreting the writing").

4

The timing set forth in the ISDA Master Agreement – entered before the alleged insolvency – is critical. Because the assets being traded have a constantly changing market price, it is not possible to pick a historical date several months in the past to which to unwind the relationship. Moreover, as explained in the Moving Brief, because the market price of cryptocurrency assets is constantly changing, the non-defaulting party cannot designate an Early Termination Date more than twenty days into the future under Section 6(a) of the ISDA Master Agreement. Moving Br. at 16. Simply put, Ver is advancing an interpretation of the ISDA Master Agreement that is contradicted by the plain, unambiguous language of the contract.

Ver argues that a non-defaulting party does not need to provide notice and a cure period where "it would be futile." Opp. at 7-8. But GGC International is not arguing that Ver did not provide sufficient time to cure; GGC International is arguing that Ver failed to follow the contract's conditions precedent to suit. Even the cases cited by Ver make clear that only in "limited circumstances" can the "terminating party . . . terminate immediately, without affording the non-performing party notice and an opportunity to cure." *Point Prods. A.G. v. Sony Music Entm't, Inc.*, No. 93 Civ. 4001 (NRB), 2000 U.S. Dist. LEXIS 10066, at *12 (S.D.N.Y. July 19, 2000). Those "limited circumstances" include where the non-performing party "(1) expressly repudiates the parties' contract, or (2) abandons performance thereunder." *Id*. at *15 (internal citations omitted). There are no allegations that GGC International repudiated the contract or abandoned it. Indeed, in *Point Prods.* and *Karabu Corp. v. Pension Benefit Guar. Corp.*, No. 96 Civ. 4960 (BSJ), 1997 U.S. Dist. LEXIS 19582, at *33 (S.D.N.Y. Dec. 9, 1997), both cited in the Opposition, the court found that the non-terminating party did not abandon or repudiate the contract, and thus did not excuse the terminating party's failure to give notice or a cure period. Ver also cites *Wolff & Munier, Inc. v. Whiting-Turner Contracting Co.*, 946 F.2d 1003, 1009 (2d Cir. 1991), but there,

5

providing a cure period would have been a "useless act" because the non-terminating party abandoned performance. There are no similar allegations here.

Even if Ver's unsupported theory is true that the Parties can be put back to June 2022, Ver owed GGC International significant sums of money – even more than GGC International is seeking in the litigation – at all times from the date of the alleged insolvency to the date of Ver's default. Thus, Ver's statement contradicts his Counterclaims allegations that his damages are over $20,000,000, CC ¶¶ 248, 256, 264, 272, and illustrates his failure to plead damages, a separate basis to dismiss his contract claims. *See XL Diamonds LLC v. Rosen*, No. 656102/2019, 2020 N.Y. Misc. LEXIS 3368, at *8 (Sup. Ct. N.Y. Cnty. July 15, 2020) ("where a plaintiff fails to allege any 'damages flowing from the breach allege[s] and relies, instead, on wholly speculative theories of damages, dismissal of the breach of contract claim is in order'"); *Steadman v. Zappin*, No. 150591/2017, 2018 N.Y. Misc. LEXIS 854, at *7 (Sup. Ct. N.Y. Cnty. Mar. 13, 2018) ("Without a clear demonstration of damages, there can be no claim for breach of contract").

B.   **The Counterclaims Do Not Contain Sufficient Allegations of Insolvency**

Ver's Opposition underscores that he has not pleaded sufficient allegations that GGC International was <u>ever</u> insolvent.[3] Ver does not contest that GGC International has never filed for bankruptcy,[4] has never been involuntarily put into an insolvency proceeding, has never been unable to pay its debts, and has never admitted such inability in writing. Moving Br. at 18-20.

---

[3]   The Opposition incorrectly states that GGC International argued that there is a heightened pleading standard in breach of contract cases. Opp. at 13-15. GGC International has made no such claim.

[4]   Some other Genesis entities (Genesis Global Holdco, LLC, Genesis Global Capital, LLC, and Genesis Asia Pacific Pte. Ltd.) are debtors in a bankruptcy proceeding. *See* CC ¶ 67; *In re: Genesis Global Holdco, LLC, et al.*, No. 23-10063 (SHL) (Bankr. S.D.N.Y.). But several other Genesis entities, including GGC International, are not now and have never been debtors in any proceeding.

6

In support of his theory that GGC International was insolvent, the Opposition points to two unaudited statements of financial condition (each, an "SOFC") that GGC International voluntarily provided to Ver. Yet, the Opposition admits that both SOFCs showed "<u>positive</u> equity" (emphasis added). Opp. at 15. Indeed, while the Opposition dismisses that positive equity as "thin," the Counterclaims allege that one SOFC showed positive equity of over $100 million and the other showed positive equity of $14 million. CC ¶¶ 177, 214. In other words, the Counterclaims affirmatively allege that GGC International was solvent; its assets were greater than its liabilities. The Opposition's abject speculation that due to the illiquid nature of the assets and the lack of liquidity in the market in general, some hypothetical auditor might have applied a discount to GGC International's assets, marking their value down to some undetermined value, cannot be countenanced, even on a notice pleading standard.

The Moving Brief cites several cases dismissing causes of action under DCL § 273 for failure to sufficiently plead insolvency. Moving Br. at 20 (citing cases). Contrary to Ver's argument that these cases are inapplicable, Opp. at 14-15, these cases are analogous because like here, in order to state a claim, the plaintiff must sufficiently plead that the defendant was insolvent. Indeed, neither Ver's breach of contract Counterclaims nor claims under DCL § 273 contain a heightened pleading requirement, underscoring the appropriateness of the analogy. *See Carlyle, LLC v. Quik Park 1633 Garage LLC*, 160 A.D.3d 476, 477 (1st Dep't 2018) (no heightened pleading standard for DCL § 273 claims). These cases uniformly show that conclusory allegations of insolvency do not suffice, particularly where the plaintiff does not make adequate allegations regarding the actual value of the assets in question. *See* Moving Br. at 20 (citing cases). *See Eagle Eye Collection Corp. v. Shariff*, 190 A.D.3d 600, 602 (1st Dep't 2021); *Riback v. Margulis*, 43

7

A.D.3d 1023 (2d Dep't 2007). Ver's conclusory and speculative allegations of insolvency should be similarly dismissed.

## II. THE FRAUD COUNTERCLAIM SHOULD BE DISMISSED

### A. The Fraud Counterclaim Is Duplicative of the Breach of Contract Counterclaims

Longstanding New York law provides that a fraud claim will be dismissed if it duplicates a claim for breach of contract with respect to facts alleged and damages sought. The Moving Brief cites numerous cases, including very recent cases from the First Department, dismissing fraud claims as duplicative of contract claims. Moving Br. at 20-21. Indeed, even a case relied upon by Ver in the Opposition – cited for a different proposition – dismissed fraud claims as duplicative of breach of contract claims. *See EVEMeta, LLC v. Siemens Convergence Creators Corp.*, No. 651484/2016, 2018 N.Y. Misc. LEXIS 4445, at *19-20 (Sup. Ct. N.Y. Cnty. Oct. 4, 2018).

Ver does not contest this long line of case law. Instead, Ver makes the uncontroversial statement that a plaintiff is allowed to allege "inconsistent theories" and to plead in the alternative. Opp. at 17. But Ver's Counterclaims fail for the exact opposite reason – Ver pleads the exact same legal theories, set of facts, and quantum of damages as in his four breach of contract claims. Moving Br. at 21. Thus, Ver's argument that his fraud claims are plead in the alternative to his breach of contract claims should be rejected.[5]

Ver attempts to distinguish his breach of contract claims, which concern GGC International's alleged insolvency, from his fraud claim, which concerns GGCI International's alleged misrepresentation of its insolvency. Opp. at 17. This supposed distinction does not save

---

[5] Neither case cited by Ver involves a situation where the plaintiff pleaded a duplicative fraud and breach of contract claim, as Ver did here. *Cohn v. Lionel Corp.*, 21 N.Y.2d 559, 563 (1968); *Volt Sys Dev. Corp. v. Raytheon Co.*, 155 A.D.2d 309, 309 (1st Dep't 1989).

8

Ver's fraud counterclaim. *See RGH Liquidating Trust v. Deloitte & Touche LLP*, 47 A.D.3d 516, 517 (1st Dep't 2008) ("plaintiff's fraud claims were properly dismissed as duplicative of its breach of contract claim, since they are based on alleged fraudulent misrepresentations related to defendants' obligation under their agreements").

Ver fails to address GGC International's independent argument that the fraud counterclaim must be dismissed as duplicative because it seeks the exact same damages as his breach of contract counterclaims. Moving Brief at 21-22. He is thus deemed to have conceded it, and accordingly, the Court should dismiss the fraud counterclaim. *See Genger v. Genger*, No. 651089/2010, 2015 N.Y. Misc. LEXIS 29, at *29 (Sup. Ct. N.Y. Cnty. Jan. 7, 2015) ("In their opposition brief, [cross-claim plaintiffs] do not address or contest the argument, and thus are deemed to have conceded it"); *Heth v. Van Riet*, No. 651437/2011, 2011 N.Y. Misc. LEXIS 6973, at *7 (Sup. Ct., N.Y. Cnty. Nov. 29, 2011) ("Van Riet has not responded to this argument. The claim shall be deemed abandoned.").

**B.     Ver Has Failed to Allege Fraud With Particularity**

Ver does not dispute that claims for fraud must be pleaded with particularity under CPLR 3016(b). Moving Br. at 22. The Moving Brief explains how the Counterclaims do not contain any affirmative misrepresentations, let alone any affirmative misrepresentations pleaded with particularity. Despite the SOFCs depicting GGC International's positive equity, the Counterclaims allege that a hypothetical auditor might have come to a different conclusion as to GGC International's solvency.

*Goldin v. TAG Virgin Is., Inc.*, 149 A.D.3d 467 (1st Dep't 2017), cited by Ver, Opp. at 18, is inapposite. Although the First Department decision does not list the allegations of fraud that it found sufficient under CPLR 3016(b), the Supreme Court decision states that the complaint

9

alleged, *inter alia*, that the defendants, "while acting as investment advisors . . . supplied fraudulent and inadequate information to the Plaintiffs with respect to the holds in their accounts." *Goldin v. Tag Virgin Is. Inc.*, No. 651021/2013, 2014 N.Y. Misc. LEXIS 2300, at *31 (Sup. Ct. N.Y. Cnty. May 20, 2014) (ellipses in original). There are no non-conclusory allegations in the Counterclaims that GGC International provided incorrect information to Ver.

Ver fares no better with his citation to *EVEMeta* (where, as noted above, the court ultimately dismissed the fraud claims as duplicative). There, unlike here, during negotiations with the plaintiff, the defendants allegedly made misrepresentations of fact that they were working towards a particular agreement, when in fact the defendants were allegedly working to cut the defendant out of the deal. *EVEMeta, LLC*, 2018 N.Y. Misc. LEXIS 4445, at *16-18.

C.  **Ver Disclaimed Reliance on Extracontractual Representations**

In the Master Confirmation Agreement, Ver specifically agreed, among other things, that he was "not relying upon any representations except those expressly set forth in the Agreement or this Confirmation"; "entering into each Transaction with a full understanding of the terms, conditions and risks thereof and it is capable of and willing to assume those risks," and acknowledging that cryptocurrency assets were volatile and unpredictable. Master Confirmation Agreement ¶¶ 9.a, 9.h, 9.h.i. The Master Confirmation Agreement applied "to each Virtual Currency Transaction (each, a "Transaction") entered into" between the parties on or after the effective date. *Id.* ¶ 1(a).

Ver's fraud claim, in his own words, "is that GGCI misrepresented its solvency to induce Ver into sending additional collateral." Opp. at 17. But, the disclaimers to which Ver agreed expressly apply to <u>each</u> transaction between the parties. Thus, the disclaimers negate Ver's claims for fraud. *See* Moving Br. at 23-24 (citing cases).

10

## CONCLUSION

For the reasons cited herein, and the reasons set forth in the Moving Brief, the Court should issue an Order pursuant to CPLR 3211(a)(1) and 3211(a)(7) the Counterclaims in their entirety.

Dated: New York, New York
September 12, 2023

                                  MORRISON COHEN LLP

                                  By:   */s/ Jason Gottlieb*
                                           Jason Gottlieb
                                           Michael Mix
                                           Vani Upadhyaya
                                           909 Third Avenue
                                           New York, New York 10022
                                           (212) 735-8600

                                           *Counsel for Plaintiff / Counterclaim-Defendant GGC International Limited*

11

## WORD COUNT CERTIFICATION

Pursuant to Rule 17 of subdivision (g) of section 202.70 of the Uniform Rules for the Supreme Court and County Court (Rules of Practice for the Commercial Division of the Supreme Court), I hereby certify that the total number of words in this memorandum of law, excluding the caption, signature block, and word count certification is 3,212.

Dated: New York, New York
       September 12, 2023

                                                */s/ Jason Gottlieb*
                                                Jason Gottlieb