# Exhibit 6

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| GENESIS GLOBAL CAPITAL INTERNATIONAL LIMITED,<br><br>    Plaintiff/Counter-Defendant,<br><br>       v.<br><br>ROGER VER,<br><br>    Defendant/Counter-Plaintiff. | Index No. 650439/2023<br><br>Motion Seq. No. 003<br><br>Justice Borrok |

# REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR LEAVE TO AMEND AND SUPPLEMENT HIS ANSWER AND COUNTERCLAIM

**KELMAN PLLC**
Michael D. Handelsman, Esq.
Daniel J. Kelman, Esq.
1441 Broadway
6th Floor, #6079
New York, New York 10018
Tel: (212) 380-3818
mike@kelman.law
daniel@kelman.law

*Attorneys for Roger Ver*

## **TABLE OF CONTENTS**

| | | |
|---|---|---|
| | PRELIMINARY STATEMENT………………………………………………… | 1 |
| | ARGUMENT……………………………………………………………………. | 3 |
| I. | Legal Standards………………………………………………………………. | 3 |
| II. | Ver's New Cause of Action Is Not Palpably Insufficient, Nor Patently Devoid of Merit…………………………………………………... | 4 |
| III. | Plaintiff's Other Arguments Lack Merit…………………………………….. | 6 |
| | A. GGC International's CEO Is Personally Named In The NYAG's Complaint……………………………………………….. | 6 |
| | B. Ver Is Not Imputing Other Entities' Actions to GGC International……………………………………………………………… | 7 |
| | C. Ver's Breach Of Contract Claims Are Not Palpably Insufficient, Nor Devoid Of Any Merit………………………………….. | 8 |
| | D. Ver's Fraud Claim Is Not Palpably Insufficient, Nor Devoid Of Any Merit………………………………………………….. | 9 |
| | E. Plaintiff Has Not, And Will Not, Suffer Any Prejudice If The Instant Motion Is Granted………………………………………… | 11 |
| | CONCLUSION……………………………………………………...…………….. | 12 |

## TABLE OF AUTHORITIES

**Cases**

*Arora v. Arlee Home Fashions, Inc.*,
    98 A.D.2d 655 (1st Dep't 1983)............................................................... 12

*Bell v. Alden Owners*,
    299 A.D.2d 207 (1st Dep't 2002)............................................................... 5

*Cohn v. Lionel Corp.*,
    21 N.Y.2d 559 (N.Y. 1968)...................................................................... 9

*Edenwald Contr. Co., Inc. v. City of New York*,
    60 N.Y.2d 957 (1983)............................................................................... 3

*EVEMeta, LLC v. Siemens Convergence Creators Corp.*,
    173 A.D.3d 551 (1st Dep't 2019)............................................................. 4, 10

*Gelita, LLC v. 133 Second Ave., LLC*,
    2014 N.Y. Misc. LEXIS 239 (Sup. Ct. N.Y. Cnty. 2018)........................ 9

*Goldin v. TAG Virgin Islands, Inc.*,
    149 A.D.3d 467 (1st Dep't 2017)............................................................. 10

*Goldstein v. Brogan Cadillac Oldsmobile Corp.*,
    90 A.D.2d 512 (2nd Dep't 1982)............................................................. 3

*Greene v. Esplanade Venture Partnership*,
    36 N.Y.3d 513 (N.Y. 2021)...................................................................... 3

*Greene v. Esplanade Venture Partnership*,
    172 A.D.3d 1013 (2d Dep't 2019)............................................................ 3

*Hawkins v. Genesee Place Corp.*,
    139 A.D.2d 433 (1st Dep't 1988)............................................................. 3

*Kocourek v. Booz Allen Hamilton Inc.*,
　　85 A.D.3d 502 (1st Dep't 2011)............................................................... 11, 12

*Loomis v. Civetta Corinno Constr. Corp.*,
　　54 N.Y.2d 18 (N.Y. 1981).............................................................................. 12

*Mamoon v. Dot Net Inc.*,
　　135 A.D.3d 656 (1st Dep't 2016)..................................................................... 5

*McGhee v. Odell*,
　　96 A.D.3d 449 (1st Dep't 2012)....................................................................... 3

*O'Halloran v. Metro. Transp. Auth.*,
　　154 A.D.3d 83 (1st Dep't 2017)....................................................................... 3

*Otis El. Co. v. 1166 Ave. of Ams. Condominium*,
　　166 A.D.2d 307 (1990).................................................................................... 3

*Point Prods. A.G. v. Sony Music Entm't, Inc.*,
　　2000 U.S. Dist. LEXIS 10066 (S.D.N.Y. 2000)............................................... 8

*Shared Commc'ns Servs. of ESR, Inc. v. Goldman Sachs & Co.*,
　　23 A.D.3d 162 (1st Dep't 2005)....................................................................... 5

*Sheppard v. Blitman/Atlas Bldg. Corp.*,
　　288 A.D.2d 33 (1st Dep't 2001)..................................................................... 12

*Solomon Holding Corp. v. Golia*,
　　55 A.D.3d 507 (2008)................................................................................... 12

**Rules**

C.P.L.R. § 3025.................................................................................................. *Passim*

# PRELIMINARY STATEMENT[1]

The proposed amendments and supplements are neither palpably insufficient nor devoid of merit. Nor will Plaintiff suffer any prejudice if the same is granted. Mr. Ver respectfully requests that this court grant the instant motion in its entirety.

Plaintiff's Opposition to Ver's Motion to Amend rests on a number of baseless assumptions.

*First*, Mr. Ver stands ready, willing, and able to pay all sums owed, but only if they are actually owed. To this end, Mr. Ver has simply asked Plaintiff to first provide proof that it was solvent during the relevant time period, which Plaintiff persists in refusing to do. This has been Mr. Ver's position since the beginning of this dispute, and was communicated to Plaintiff months prior to their filing the instant action.

*Second,* Mr. Ver has no desire to unnecessarily delay these proceedings and has not done so. Plaintiff forgets that Mr. Ver has filed a number of counterclaims and is owed more than $20,000,000 because of Plaintiff's (and Third-Party Defendants') nefarious actions. Mr. Ver wants his day in Court, but must first make sure all the facts are before it.

In particular, following the filing of Ver's First Amended Answer and Counterclaim, the New York Attorney General ("NYAG") filed its own civil action against the Genesis Entities and the individuals in charge. (*See* NYAG's Complaint, attached as Ex. O to the Affirmation of Jason Gottlieb (NYSCEF Doc. No. 77)). We can certainly understand why Plaintiff would prefer to not address facts raised by the NYAG's investigation in these proceedings. However, the

---

[1] Plaintiff is clearly attempting to circumvent the word limit applicable to its opposition. Plaintiff has taken it upon itself to incorporate its 6,984 word Motion to Dismiss, in its entirety, in its 5,286 word opposition to the instant motion. Such an incorporation is improper and should not be permitted and Mr. Ver respectfully requests that this Court disregard such an incorporation and determine the merits of Plaintiff's opposition based on the contents of that document alone. In the alternative, should Plaintiff be allowed to incorporate its Motion to Dismiss in its entirety, Mr. Ver requests that his opposition to that motion be incorporated herein as well.

1

NYAG's filing brought new facts to light that were directly relevant to Ver's causes of action, as well as a new cause of action for conspiracy. Accordingly, Mr. Ver promptly sought leave to amend to include them.

*Third,* Plaintiff ignores that the NYAG named as a defendant GGC International's CEO, Michael Moro, who signed all of the agreements at issue in the instant case. While it may be true that the NYAG's complaint does not name Plaintiff as a defendant, and does not mention it by name, its allegations against the related persons involved — in particular GGC International's CEO — are nonetheless relevant. (*Id.*).

The NYAG's complaint makes several allegations related to the coordination between Michael Moro and Barry Silbert, the CEO of DCG, the ultimate parent of Plaintiff. (*See id.* at ¶ 9). Specifically, those allegations relate to the crafting and dissemination of intentional misrepresentations to the public regarding the financial health of the Genesis entities. (*Id.*) Those allegations are directly relevant to both Mr. Ver's fraud claim, and the new conspiracy claim. The above is merely one example, as the NYAG's complaint and Ver's proposed Second Amended Answer and Counterclaim ("SAAC") contain numerous allegations relating to both the conspiracy and the fraud it spawned.

*Lastly,* as stated in Ver's moving papers, "because there was neither prejudice nor surprise resulting directly from any delay in seeking leave, and the proposed pleading is neither palpably insufficient nor patently devoid of merit, the leave to amend should be freely granted." (*See* Ver's Memorandum of Law in Support of Motion to Amend at 11 (NYSCEF Doc. No. 55)).

For the reasons stated herein and in the initial moving papers, Mr. Ver respectfully requests that his Motion for Leave to Amend be granted in its entirety.

2

# ARGUMENT

## I. Legal Standard

As the New York Court of Appeals has held, "[p]ermission to amend pleadings should be 'freely given (CPLR 3025(b).'" (*Greene v. Esplanade Venture Partnership*, 36 N.Y.3d 513, 526 (N.Y. 2021), quoting *Edenwald Contr. Co. v. City of New York*, 60 N.Y.2d 957, 959 (N.Y. 1983)). To the extent that the proposed amendment is "not 'patently devoid of merit' there is no reason to deny [the] application." (*Id*., quoting *Edenwald* and *Greene v. Esplanade Venture Partnership*, 172 A.D.3d 1013 (2d Dep't 2019)).

While the validity of a proposed amended pleading "should be examined upon a motion to amend, its legal sufficiency and merit must be sustained unless the alleged insufficiency or lack of merit is clear and free from doubt." (*Hawkins v. Genesee Place Corp.*, 139 A.D.2d 433, 434 (1st Dep't 1988), citing *Goldstein v. Brogan Cadillac Oldsmobile Corp.*, 90 A.D.2d 512, 514 (2nd Dep't 1982)). However, it is important to note that such review "is not meant to supplant the motion to dismiss or for summary judgment." (*Id.*).

Specifically, the Court in *Hawkins* appeared to be concerned with the dissent's focus on a factual analysis of the proposed amendment, as such a review would "change the character of a motion under CPLR 3025(b), where leave 'shall be freely given', into one for summary judgment or dismissal of a pleading pursuant to CPLR 3212 or 3211." (*Id.*)

Finally, "[a] party opposing leave to amend 'must overcome a heavy presumption of validity in favor of [permitting amendment].'" (*O'Halloran v. Metro. Transp. Auth.*, 154 A.D.3d 83, 86 (1st Dep't 2017); citing *McGhee v. Odell*, 96 A.D.3d 449, 450 (1st Dep't 2012), quoting *Otis El. Co. v. 1166 Ave. of Ams. Condominium*, 166 A.D.2d 307 (1990)).

3

Plaintiff has utterly failed to meet this burden and Ver's Motion to Amend should be granted in its entirety.

## II. Ver's New Cause of Action Is Not Palpably Insufficient, Nor Patently Devoid of Merit.

Ver has sufficiently pleaded a new cause of action for conspiracy. The proposed SAAC contains allegations that Moro, the CEO of both Plaintiff and Genesis Global Capital, LLC (a named defendant in the NYAG's complaint), met with Barry Silbert and other individuals at DCG to craft a plan that resulted in the dissemination of intentional misrepresentations regarding the financial status of the Genesis entities, to both the public at large and certain customers/clients, such as Ver.

Clearly, a meeting between the two CEOs to develop a plan to make misleading statements to hide or otherwise conceal the Genesis entities' grave financial situation to the public constitutes a conspiracy. Further, the proposed SAAC alleges that Michael Moro, GGC International's CEO did take overt acts in furtherance of that conspiracy.

While Plaintiff may be correct that a conspiracy claim, standing alone, is not an actionable tort under New York law, that is not the situation currently before this Court. When coupled with another tort, such as fraud, parties can make a conspiracy claim. Plaintiff's case law supports this conclusion.

First, in *EVEMeta, LLC v. Siemens Convergence Creators Corp.*, 173 A.D.3d 551, 553 (1st Dep't 2019), the Court did not rule that all torts for conspiracy must be dismissed automatically. Rather, the Court held that because the conspiracy was related to a fraud, and that fraud claim had been rightly dismissed, the conspiracy claim could not stand on its own. (*Id.*) While we agree that Ver's conspiracy claim should be dismissed if his fraud claims are dismissed, until that occurs, the conspiracy cause of action is proper.

4

This was also the case in *Mamoon v. Dot Net Inc.*, 135 A.D.3d 656, 658 (1st Dep't 2016) where the underlying causes of action supporting the conspiracy claim had already been dismissed, necessitating the dismissal of the conspiracy claim.

In *Shared Commc'ns Servs. of ESR, Inc. v. Goldman Sachs & Co.*, 23 A.D.3d 162, 163 (1st Dep't 2005), the underlying claim for Tortious Interference with Business Relations was dismissed. It is unclear from the scant opinion why the Conspiracy claim was dismissed if the tortious interference with contract claim survived. However, based on the case law cited above, and the case upon which *ESR* relies, *Bell v. Alden Owners*, 299 A.D.2d 207, 209 (1st Dep't 2002), the Civil Conspiracy claim in ESR was likely pleaded in connection with the Business Relations claim only, and was not connected to the tortious interference with contract claim. This would comport with the case cited in *ESR*, where dismissal was granted as to all underlying claims supporting the conspiracy claim. (*Bell v. Alden Owners*, 299 A.D.2d 207, 209 (1st Dep't 2002)). Plaintiff provides no case law to support the conclusion that a conspiracy to defraud claim is not actionable when coupled with an active fraud claim. We posit there is no such case and the law does not support that conclusion.

Plaintiff attempts to make a timing argument regarding the filing order of the Third-Party Complaint and the proposed SAAC. However, the Third-Party Complaint has already been filed and docketed at this point. On the other hand, Ver's proposed SAAC is just that, a "proposed" complaint that has not been filed or docketed at this time.

As a result, assuming arguendo that the instant Motion is granted, the proposed SAAC cannot be filed before the Third-Party Complaint. The weakness of Plaintiff's argument is further illuminated by the docket. Again, assuming arguendo that the instant motion is granted, the Third-Party Complaint will have a lower docket number than the SAAC.

5

For these reasons, Ver's newly proposed conspiracy claim is not palpably insufficient, nor is it devoid of merit. Therefore, Ver respectfully requests that his Motion to Amend be granted in its entirety.

### III. Plaintiff's Other Arguments Lack Merit.

#### A. GGC International's CEO Is Personally Named In The NYAG's Complaint.

While it is technically true that Plaintiff is not a defendant or named in the NYAG's complaint, such a statement is misleading at best. *First,* DCG is the ultimate parent of Plaintiff. *Second,* Barry Silbert controls DCG and all other Genesis Entities. *Third,* many of the employees, officers, and directors of Plaintiff were/are also employees, officers, and directors of the other Genesis Entities named in the NYAG's Complaint. *Fourth,* GGC International operated out of the same office as the Genesis Entities named in the NYAG's Complaint.

*Last* but **_most importantly_**, Michael Moro, who is alleged to have engaged in significant improper and illegal activity in the NYAG's complaint, and made numerous intentional misrepresentations to the public and others, was the CEO of Plaintiff and the signatory of the contracts at issue here.

While it is correct to state that "GGC International is not a defendant and was not even mentioned in the Attorney General complaint," the fact remains that GGC International employees, officers, directors, and ultimate owners are named in the NYAG's complaint.

Amazingly, despite numerous allegations in the NYAG's complaint regarding the knowledge and actions of Michael Moro, its CEO, Plaintiff claims that "[t]here are no allegations whatsoever in the Attorney General Complaint about what GGC International knew or did not know, or did or did not do. Ver is simply misrepresenting documents." (Plaintiff's Opposition

Brief at 10 (NYSCEF Doc. No 61)). Only one party is attempting to misrepresent the contents of the NYAG's complaint, and given those contents, it is not surprising who has taken that tact.

While Plaintiff may attempt to argue that the actions taken by Moro referenced in the NYAG's complaint were taken while wearing a different hat, for a different entity, that argument is threadbare. Mr. Moro's actions, knowledge, and statements cannot be bifurcated in such a manner; what he did, knew, and said during the relevant period was also done, known, and said while acting as Plaintiff's CEO.

Given the connections between the entities named in the NYAG's complaint and Plaintiff's personnel, officers, and directors, and the allegations made against Michael Moro, the new allegations gleaned from the NYAG's complaint and included in the proposed SAAC are relevant to both Ver's original fraud claim and his new conspiracy claim. As such, those proposed amendments are neither palpably insufficient, nor devoid of merit.

### B. Ver Is Not Imputing Other Entities' Actions to GGC International.

Yet again, GGC International mistakenly, or intentionally, misrepresents Ver's position. Ver is not attempting to impute the actions of others to Plaintiff. As evidenced by Ver's proposed SAAC and his Third-Party Complaint, Ver is trying to hold these entities and individuals liable for their ***own*** actions.

As evidenced by the pleadings, Ver is alleging that DCG and Barry Silbert, on one side, and GGC International and Michael Moro, on the other, conspired to make a series of misrepresentations to defraud Ver into maintaining his positions with GGC International, which he did, to his detriment. Despite the claims of Plaintiff, Ver is simply attempting to hold Plaintiff and the Third-Party Defendants liable for their ***own*** actions, not the actions of others

As such, allegations relating to the interconnectedness of GGC International and the other Genesis entities directly relate to allegations regarding Ver's original fraud claim and new conspiracy claim. Therefore, Ver respectfully requests that his motion to amend be granted.

### C. Ver's Breach Of Contract Claims Are Not Palpably Insufficient, Nor Devoid Of Any Merit.

In its opposition, Plaintiff propounds some of the same arguments contained in its motion to dismiss. The passage of time has done nothing to add merit to those arguments.

As to Plaintiff's arguments regarding notice, Plaintiff terminated the contract in January 2023, making compliance with the notice and cure period futile. Further, Plaintiff's position regarding insolvency, i.e., that it was never insolvent, is further evidence that notice and cure would have been futile. "Providing notice and cure is ***not required*** where it would be futile." (*Point Prods. A.G. v. Sony Music Entm't, Inc.*, 2000 U.S. Dist. LEXIS 10066, *12 (S.D.N.Y. 2000)) (emphasis added).

Despite being aware of the applicable case law cited above, Plaintiff does not even attempt to address this issue in its instant opposition, simply burying its head in the sand as to the applicable case law. The fact remains, demand would have been futile and is thus, not required.

Further, taken at face value, Plaintiff appears to be arguing that (assuming arguendo they were insolvent in 2022, which they certainly were) Ver should still be foreclosed from enforcing his contractual demands whether he knew of the insolvency at the time or not. However, this is directly contradicted by the terms of the ISDA Master Agreement, which unambiguously states "[i]f a Termination Event . . . occurs, an Affected Party will, promptly ***upon becoming aware*** of it, notify the other party, specifying the nature of that Termination Event . . ." (ISDA Master Agreement at ¶ 6(b)) (Emphasis added).

8

Ver did not "become aware" of GGCI's insolvency until late December 2022. Ver was accordingly unable to serve notice. It would be a cruel irony if Plaintiff was able to prevent Ver from enforcing his contractual rights because it did a good job at misrepresenting its true financial condition until it could win the race to terminate.

Ver has met his pleading standard in connection with the breach of contract claims. Breach of contract claims are "merely subject to notice pleading standards" and at the motion to dismiss stage, "it is premature and indeed unnecessary to precisely circumscribe the viable scope of Plaintiff's breach of contract claim. Discovery will flesh out the facts, and the court can revisit which itemized breaches are viable at the summary judgment stage." (*Gelita, LLC v. 133 Second Ave., LLC*, 2014 N.Y. Misc. LEXIS 239, ***14 (Sup. Ct. N.Y. Cnty. 2018)).

Finally, as discussed in Ver's Opposition to Plaintiff's Motion to dismiss, Plaintiff attempts to invent a heightened pleading standard by analogizing to various cases brought under the Debtor and Creditor Law ("DCL"). However, none of those cases invoke such a standard and instead rely on the same standard applied to a breach of contract claim.

Plaintiff has not overcome its burden in the context of a motion to amend, nor a motion to dismiss, and therefore, Ver respectfully requests that his motion to amend be granted in its entirety.

### D. Ver's Fraud Claim Is Not Palpably Insufficient, Nor Devoid Of Any Merit.

Plaintiff regurgitates a number of the meritless arguments from its motion to dismiss. *First,* Ver's fraud claim is not duplicative but rather is being pleaded in the alternative to the contract claims, as allowed under the CPLR. As declared by the Court of Appeals decades ago, "[u]ndeniably, a plaintiff is entitled to advance inconsistent theories in alleging a right to recovery." (*Cohn v. Lionel Corp.*, 21 N.Y.2d 559, 563 (N.Y. 1968)).

*Second,* Ver has more than met his obligation to plead fraud with particularity. To meet the heightened pleading standard for fraud, the "Plaintiff must merely allege facts sufficient to permit a reasonable inference of the alleged misconduct to each Defendant." (*EVEMeta, LLC*, 2018 N.Y. Misc. LEXIS 4445, *17 (citing *Goldin v. TAG Virgin Islands, Inc.*, 149 A.D.3d 467, 467 (1st Dep't 2017) (holding that under CPLR 3016's heightened pleading requirement, the Defendants must be able to reasonably infer what the misconduct was from the pleadings)).

According to *Goldin*, "even absent details of time and place" a complaint that "allege[s] facts sufficient to permit a reasonable inference of the alleged misconduct" is deemed to have met "the heightened pleading requirement of CPLR 3016(b)." (*Goldin*, 149 A.D.3d at 467.) However, both the First Amended Answer and Counterclaim and the proposed SAAC go well above that requirement, providing specific allegations regarding the who, what, where, when, why, and how of the alleged misrepresentations and other elements of the fraud claim.

The new allegations include references to coordination between Plaintiff's executives and employees, and executives and employees of DCG to craft misleading statements to lull their clients/customers into a false sense of security and, in the case of Ver, keep him invested in the options contracts.

Further, there are allegations regarding specific misrepresentations made by Plaintiff's personnel to Ver directly. While Plaintiff may argue these statements were "opinions or puffery," one need only review the allegations to see the threadbare nature of such a position. (*See* Ver's Proposed SAAC at ¶ 200 (NYSCEF Doc. No. 58)). Affirmative statements regarding directional risk are not opinions or puffery. (*Id.*). Neither was Plaintiff's direct misrepresentation that the overall financial picture "remained the same" in the days between the June 20th financial statement and the end of the month, despite a reduction of 86% in Plaintiff's working capital.

10

(*Id.*). To be clear, these statements were not gleaned from the NYAG's complaint, but rather, are the result of Ver's continued investigation into this matter.

While it would take a herculean effort to highlight all of the inaccuracies in Plaintiff's opposition, we would be remiss if we did not address their claim that "neither the proposed [SAAC], nor the equivalent paragraph in the [NYAG's] complaint alleges that the talking points were drafted or utilized by GGC International." To the contrary, the SAAC plainly alleges that Michael Moro, the CEO of Plaintiff, was a recipient of the talking points and that same were to be used by Genesis Global "personnel in conversations with counterparties, including Mr. Ver" - personnel that also worked for Plaintiff. (*See* Ver's Proposed SAAC at ¶¶ 225 and 208 respectively (NYSCEF Doc. No. 58)).

As discussed in Ver's Opposition to Plaintiff's Motion to Dismiss, Ver is not making a fraud in the omission claim, which was removed in the First Amended Complaint.

*Finally*, the extracontractual waiver argument falls on deaf ears. Ver only disclaimed extracontractual representations made *prior* to entering into the contract, not representations made *after* the contract was signed. The fraud complained of by Ver is based on intentional misrepresentations made by Plaintiff after the contracts at issue were signed.

For these reasons, Ver's fraud claim is neither palpably insufficient, nor devoid of merit. Further, and as will be discussed below, Plaintiff will not suffer any prejudice if the motion is granted. As such, the instant motion should be granted in its entirety.

E. **Plaintiff Has Not, And Will Not, Suffer Any Prejudice If The Instant Motion Is Granted.**

It is fundamental that leave to amend a pleading should be freely granted, so long as there is no surprise or prejudice to the opposing party (*Kocourek v. Booz Allen Hamilton Inc.*, 85

11

A.D.3d 502, 504 (1st Dep't 2011)), citing CPLR 3025(b); *Solomon Holding Corp. v. Golia*, 55 A.D.3d 507 (2008)).

"Prejudice requires 'some indication that the defendant has been hindered in the preparation of his case or has been prevented from taking some measure in support of his position.'" (*Id.*, quoting *Loomis v. Civetta Corinno Constr. Corp.*, 54 N.Y.2d 18, 23 (N.Y. 1981)). Mere delay is insufficient to defeat a motion for leave to amend. (*Id.*, citing *Sheppard v. Blitman/Atlas Bldg. Corp.*, 288 A.D.2d 33, 34 (1st Dep't 2001)).

Further, the First Department has also held that where a party seeks to supplement a pleading, there can be no surprise when the supplement is based upon the opposing party's own conduct, as they obviously have notice of such conduct as soon as it occurs. (*Arora v. Arlee Home Fashions, Inc.*, 98 A.D.2d 655, 656 (1st Dep't 1983)). Here, the proposed supplements and newly added conspiracy claim are based, in part, on the conduct of Michael Moro, the CEO of Plaintiff. As such, Plaintiff cannot allege prejudice based on the supplemental allegations and causes of actions relating to the activities of their own CEO.

Despite arguing that it will suffer prejudice if the instant motion is granted, absent from Plaintiff's opposition is any "indication that [it has] been hindered in the preparation of [its] case or has been prevented from taking some measure in support of [its] position." (*Kocourek v. Booz Allen Hamilton Inc.*, 85 A.D.3d 502, 504 (1st Dep't 2011)). Plaintiff's only argument is delay, and as stated above, a mere delay is insufficient to defeat a motion for leave to amend. (*Id.*)

As a result, it is clear that Plaintiff has not suffered, and will not suffer, any prejudice should Ver's Motion to Amend be granted. Therefore, Ver respectfully requests that his motion to amend be granted in its entirety.

## CONCLUSION

In light of the foregoing, Counter-Plaintiff Ver respectfully requests this Court grant him leave to amend and supplement his Counterclaim; deem Counter-Plaintiff's proposed Amended and Supplemental Answer and Counterclaim as the new, operative pleading; deem the new pleading as filed and served upon Counter-Defendants as of the date of the Court's decision on this motion; direct Counter-Defendants to file a responsive pleading within twenty days of said order, and order any other and further relief as the Court deems just and proper.

Dated: January 11, 2024
New York, New York

KELMAN PLLC

Michael D. Handelsman, Esq.
Daniel J. Kelman, Esq.
1441 Broadway
6th Floor, #6079
New York, New York 10018
Tel: (212) 380-3818
mike@kelman.law

*Attorneys for Roger Ver*

13

## CERTIFICATION OF COMPLIANCE WITH WORD LIMITS

Pursuant to the Uniform Civil Rules for The Supreme Court & The County Court, § 202.8b, the undersigned hereby certifies that the word count for this memorandum, excluding the caption and tables of contents and authorities and signature block, is 3,827 words, which complies with the word limit of 4,200 words as set forth in the rule. This word count is based upon the word processing program utilized to create this document.

Dated:  January 11, 2024
        New York, New York

_____
Michael D. Handelsman, Esq.
1441 Broadway
6th Floor, #6079
New York, New York 10018
Tel: (212) 380-3818
mike@kelman.law

*Attorneys for Roger Ver*