

**Michael D. Handelsman, Esq.\***
Partner

**New York Office**
11 Broadway, Ste. 615
New York, New York 10004

**Taipei Office**
No. 6 Songde Rd, 3/F
Xinyi, Taipei, Taiwan

**\*Admitted in NY and NJ**

<u>VIA ECF AND EMAIL</u>

The Honorable John P. Cronan
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

April 3, 2024

Re:    <u>GGC International Limited v. Ver, et al. 1:24-cv-01533-JPC</u>

Dear Judge Cronan:

We represent Roger Ver in the above-referenced matter. Pursuant to Rule 6.A of the Court's Individual Rules and Practices in Civil Cases, we respectfully submit this in response to Third-Party Defendants' Digital Currency Group, Inc. ("DCG") and Barry Silbert (collectively, the "DCG Defendants") letter seeking permission to file a motion to dismiss all causes of action against the DCG Defendants in the Third-Party Complaint (ECF No. 24).

### I.    Overview of Facts and Procedural Posture

Between March 22 and June 10, 2022, GGCI and Ver entered into three cryptocurrency options agreements pursuant to the Master Confirmation Agreement (MCA). *See* GGCI Compl. ¶ 1, 7, 36 (ECF No. 1-7). When Ver demanded proof of GGCI's solvency before settling the transactions, GGCI chose to file suit against Ver in January 2023. In December 2023, following various motions and accompanying amendments, Ver filed third-party claims against the DCG Defendants and Michael Moro, alleging (i) common law fraud; (ii) civil conspiracy to commit fraud; and (iii) aiding and abetting fraud. The DCG Defendants then removed the case to federal court with Moro's permission.

### II.    Ver Adequately and Particularly Alleges Fraud

Ver adequately and particularly alleges a material misrepresentation of a fact, knowledge of its falsity, an intent to induce reliance, justifiable reliance, and damages. *Ross v. Louise Wise*

April 3, 2024

*Servs., Inc.*, 8 N.Y.3d 478, 488 (2007).

The DCG Defendants allege that Ver "offers nothing more than conclusory assertions that the balance sheet was 'not strong, solvent, or capable of absorbing losses' or that unspecified Genesis entities suffered losses." DCG Pre-Motion Letter (ECF No. 24). The DCG Defendants turn a blind eye to the explanations as to how the 10-year, $1.1 billion promissory note affects GGCI's solvency, and how the overvaluation of their $1.596 billion in illiquid FTT tokens makes them per se insolvent.

The DCG Defendants further claim the June 15, 2022 tweet that the DCG Defendants retweeted was "nothing more than puffery" and, therefore, cannot be the basis of a material misrepresentation. *Id*. The tweet in question stated, in relevant part, that "the Genesis balance sheet is strong and our business is operating normally." Third-Party Complaint ¶ 131 (ECF No. 1-17).

Stating that Genesis was "operating normally" cannot be easily dismissed as mere puffery. Genesis had a normal mode of operation that is "capable of objective verification," and which was completely abandoned after the 3AC fallout. *In re Xinhua Fin. Media, Ltd. Sec. Litig.*, 2009 U.S. Dist. LEXIS 14838, at *23 (S.D.N.Y. 2009) (citing *Grossman v. Novell, Inc.*, 120 F.3d 1112, 1119 (10th Cir. 1997)). Nothing was "normal" about the $2.3 billion the Genesis Entities lost at 3AC, nor the $1.1 billion promissory note they shotgun spread amongst their organization to all the entities that were affected. Clearly, the purpose of the tweet was to assuage customer fears and induce them into maintaining their positions.

The DCG Defendants then argue that "Ver's effort to plead motive and opportunity fail," because he did not offer "any 'concrete benefits that could be realized by one or more of the false statements and wrongful nondisclosures alleged.'" DCG Pre-Motion Letter (ECF No. 24). Again, the DCG Defendants ignore Ver's contention that such statements were offered to induce customers, such as Ver, to maintain their positions and prevent a bank-run on their limited assets on hand.

The DCG Defendants next maintain that "Ver does not allege that he 'saw, read, or otherwise noticed'" the DCG Defendants' June 15 retweet or relied on the tweet when making decisions about his investments with GGCI." DCG Pre-Motion Letter (ECF No. 24). Ver's Third-Party Summons and Complaint makes clear that he "relied, in part, on the public statements of Moro and Silbert when deciding to continue to maintain his option positions at GGCI." Obviously, Ver's reliance on these statements necessarily implies he "saw, read, or otherwise noticed" such statements.

Finally, the DCG Defendants argue that Ver's Complaint fails to "demonstrate that Ver's purported damages were 'the natural and probable consequence' of statements made by the DCG Defendants, or in fact, even indicate that any of the statements concerned GGCI's supposed insolvency." DCG Pre-Motion Letter (ECF No. 24). Again, Ver's statement that he relied to his detriment on these statements when deciding whether to maintain his positions demonstrates that his damages were the natural and probable consequence of statements made by the DCG Defendants.

April 3, 2024

As explained in Ver's response to Moro's Pre-Motion Letter, these statements concerned GGCI's insolvency because of the concatenated intercompany loans that existed amongst the Genesis entities. GGCI would loan digital assets to Genesis Asia Pacific ("GAP"), who would in turn lend those assets to 3AC. When 3AC defaulted on its loan, multiple Genesis entities, including GGCI, felt the blow. Thus, DCG issued a promissory note to Genesis Global that trickled its way through the Genesis Entities, and $151 million of which ended up on GGCI's balance sheet.

### III. Ver Alleges the DCG Defendants Aided and Abetted GGCI's Fraud

Ver's Third-Party Summons and Complaint is clear that Silbert explained to DCG personnel that they "just can't allow people inside or outside [to] question Genesis' solvency," and was key in the company's discussions on how to calm fears and prevent a bank run. Third-Party Complaint ¶ 234(b) (ECF No. 1-17). The DCG Defendants acknowledge that Ver offered the promissory note and the "communications campaign between DCG and GGC that was 'designed to conceal' Genesis' financial health" as support for his allegations, but fail to recognize the implications. Offering a $1.1 billion dollar promissory note is an offer for help, and without the organization of the communications campaign, Genesis would have certainly faced unrest and a potential bankrun. The DCG Defendants also perpetuated the fraud by retweeting the misleading Genesis tweet detailed above. By orchestrating the scheme to defraud Genesis customers, and perpetuating the misinformation via their twitter accounts, the DCG Defendants had knowledge of the fraud and provided substantial assistance to advance the fraud's commission.

### IV. Ver's Civil Conspiracy Claim Is Not Duplicative

The DCG Defendants seek to have this Court dismiss Ver's conspiracy claim as "entirely duplicative" of his aiding and abetting claim. DCG Pre-Motion Letter (ECF No. 24). This fails to recognize the additional elements plead by Ver that are not part of the fraud claim—namely, that this was part of a larger scheme *agreed to* by the Counterdefendants and Third-Party Defendants to defraud clients and counterparties, and that the DCG Defendants acted in furtherance of that scheme by issuing a 10-year promissory note and orchestrating the communications campaign. The agreement to act in coordination with one another and in furtherance of their scheme to defraud makes this distinct from the aiding and abetting claim.

### V. Ver Proposes an Alternative Briefing Schedule

Defendant Ver submitted a proposed briefing schedule in his response to Defendant Moro's Pre-Motion Letter and incorporates same by reference herein.

Respectfully,

_____
Michael D. Handelsman, Esq.