

**Michael D. Handelsman, Esq.***
**Partner**

**New York Office**
11 Broadway, Ste. 615
New York, New York 10004

**Taipei Office**
No. 6 Songde Rd, 3/F
Xinyi, Taipei, Taiwan

*****Admitted in NY and NJ**

<u>**VIA ECF AND EMAIL**</u>

The Honorable John P. Cronan
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

April 3, 2024

      Re:    <u>GGC International Limited v. Ver v. Moro, et al. 1:24-cv-01533-JPC</u>

Dear Judge Cronan:

      We represent Roger Ver in the above-referenced matter. Pursuant to Rule 6.A of the Court's Individual Rules and Practices in Civil Cases, we respectfully submit this response to Third-Party Defendant Michael Moro's letter seeking permission to file a motion to dismiss all causes of action against Mr. Moro in the Third-Party Complaint (ECF No. 25).

**I.   Overview of Facts and Procedural Posture**

      Between March 22 and June 10, 2022, GGCI and Ver entered into three cryptocurrency options agreements pursuant to the Master Confirmation Agreement (MCA). *See* GGCI Compl. ¶ 1, 7, 36 (ECF No. 1-7). When Ver demanded proof of GGCI's solvency before settling the transactions, GGCI instead chose to file suit against Ver in January 2023. In December 2023, following various motions and accompanying amendments, Ver filed third-party claims against Moro and the other third-party defendants, Digital Currency Group, Inc. ("DCG") and Barry Silbert (collectively, the "DCG Defendants"), alleging (i) common law fraud; (ii) civil conspiracy to commit fraud; and (iii) aiding and abetting fraud. The DCG Defendants then removed the case to federal court with Moro's permission.

April 3, 2024

## II. Ver States Multiple Causes of Action Against Mr. Moro

### A. Ver Plead Facts to Establish Common Law Fraud

At the pleading stage, Ver is not required to "establish" his fraud claim. To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), Ver must plead a material misrepresentation of a fact, knowledge of its falsity, an intent to induce reliance, justifiable reliance, and damages. *Ross v. Louise Wise Servs., Inc.*, 8 N.Y.3d 478, 488 (2007).

Accepting as true Ver's factual contentions that Moro intentionally misrepresented the solvency of the Genesis organization and its ability to repay customers to induce clients to keep their positions open, and that Ver did, and was ultimately damaged, it is clear Ver's fraud claim is, at the very least, plausible on its face.

Moro contends that his tweets only concern Genesis Global, and because Ver only dealt with GGCI, any purported misrepresentations concerning Genesis Global are immaterial to his position with GGCI. What Moro fails to recognize, however, is that it is clear from Moro's tweets that Genesis Trading is not the only entity being spoken of, as Moro refers to Genesis' "ability to service lenders, borrowers and traders"—activities that GGCI engaged in and Genesis Trading did not.

Moro maintains that because Ver was not a counterparty to Genesis Global, Moro's June 17, 2022 tweets claiming client funds were not impacted and Genesis Global has "shed the risk" associated with the Three Arrows Capital ("3AC") default "and moved on" does not concern Ver. That ignores the intercompany loans used to bolster the Genesis entities' balance sheets.

Moro next attempts to convince this Court that Ver did not rely on the accuracy of his tweets. This too is unfounded. Had Moro been truthful concerning Genesis's financial condition, and the fact that its ability to repay counterparties was in jeopardy, Ver would have closed his positions with GGCI and provided them a Notice of Default. This is evidenced by Ver's repeated requests for assurances as to GGCI's solvency, and refusal to pay on his contract until such assurances are provided. See Third-Party Summons and Compl. ¶ 11 (ECF No. 1-17).

As CEO of Genesis Global and GGCI, Moro had full knowledge of Genesis Global's financial condition and that it had not truly "shed the risk and moved on," but, rather, remained exposed to the risks created by the 3AC default by relying on an illusory promissory note to pad its balance sheet and appear solvent. And with a due date on the promissory note that was 10 years in the future, Genesis Global could not have "moved on" until that promissory note became due and payable, and payment was actually received.

Moro also seeks to have this court believe he had no intention of inducing Ver to rely on his statement. The only plausible explanation for such a tweet, however, is that Moro was seeking to mitigate customer and counterparty concerns regarding the Genesis entities' financial condition.

April 3, 2024

Moro then turns to argue that Ver expressly disclaimed reliance on any extracontractual representations in the MCA. However, the MCA itself represents that GGCI is, and will continue to be, solvent. It also provides that any misrepresentations made by a party constitute an Event of Default, and does not limit the misrepresentations to those in the agreement.

### B. The Remaining Claims Need Not be Dismissed

Ver's claim against Third-Party Defendant Moro for aiding and abetting fraud is not, as Moro contends, "entirely duplicative of the underlying fraud claim." Moro Pre-Motion Letter (ECF No. 25). Moro fails to acknowledge Ver's allegations that by releasing a series of tweets to calm customer fears, it is clear Moro provided "substantial assistance" to the Genesis entities—including GGCI—in their scheme to defraud customers and induce customers into maintaining positions with an insolvent company.

Moro finally seeks to have this Court dismiss the conspiracy claim because New York law "does not allow a plaintiff to reallege a tort asserted elsewhere in the complaint in the guise of a separate conspiracy claim." *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 591 (2d Cir. 2005) (affirming dismissal of duplicative conspiracy claim). Moro again fails to recognize the additional elements plead by Ver that are not part of the fraud claim—namely, that this was part of a larger scheme agreed to by the Counterdefendants and Third-Party Defendants to defraud clients and counterparties, and that Moro acted in furtherance of that scheme by releasing a series of inaccurate tweets, which helped induce Ver to maintain his positions.

### III. Ver Proposes an Alternative Briefing Schedule

As you are aware, both Third-Party Defendants have submitted identical proposed briefing schedules. Should Moro be granted leave to file the motion, we propose an alternate, staggered schedule, whereby Moro's proposed schedule is accepted for Moro's motion to dismiss, and the DCG Defendants' schedule begins 14 days after that.

Thus, Ver's proposed schedule is as follows: (1) Moro's motion is due 14 days after the pre-motion conference or the Court's endorsement of the schedule; (2) Ver's opposition to Moro's motion due 28 days thereafter; (3) Moro's replies due 21 days thereafter; (4) DCG Defendants' motion due 28 days after the pre-motion conference or the Court's endorsement of the schedule; (5) Ver's opposition to DCG Defendants' motion due 28 days thereafter; and (6) DCG Defendants' replies due 21 days thereafter.

The Court has reviewed the parties' submissions and sets the following briefing schedules on Moro and DCG's motions to dismiss: (1) Moro shall file his motion by April 18, 2024, Ver shall file his opposition to Moro's motion by May 16, 2024, and Moro shall file any reply by June 6, 2024; (2) DCG shall file its motion by May 2, 2024, Ver shall file his opposition to DCG's motion by May 30, 2024, and DCG shall file any reply by June 20, 2024.  The Clerk of Court is respectfully directed to close Docket Numbers 24 and 25.

Respectfully,

Michael D. Handelsman, Esq.

SO ORDERED.
Date: April 4, 2024
New York, New York

JOHN P. CRONAN
United States District Judge