**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| GGC INTERNATIONAL LIMITED, | Civil Action No. 1:24-cv-01533 (JPC) |
| *Plaintiff,* | Hon. Judge John P. Cronan |
| v. | |
| ROGER VER, | |
| *Defendant.* | |
| ROGER VER, | |
| *Third-Party Plaintiff,* | |
| v. | |
| BARRY SILBERT, MICHAEL MORO, and DIGITAL CURRENCY GROUP, | |
| *Third-Party Defendants.* | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**<u>DEFENDANT MICHAEL MORO'S MOTION TO DISMISS</u>**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................. 1

STATEMENT OF FACTS ....................................................................................................... 2

I.   The Master Confirmation Agreement ........................................................................... 3

II.  GGCI and Ver Enter Into Options Transactions ........................................................... 3

III. 3AC Default and Genesis Global Response ................................................................... 4

IV.  The FTX and Alameda Collapse .................................................................................... 7

LEGAL STANDARD ............................................................................................................. 7

ARGUMENT ......................................................................................................................... 9

I.   COUNT I FAILS BECAUSE VER FAILED TO STATE A CAUSE OF
     ACTION FOR FRAUD ................................................................................................. 9

     A.   Ver Cannot Rely on Improper "Group Pleading" ................................................ 9

     B.   Ver Fails to Sufficiently Allege Mr. Moro Made Any Misrepresentation ................. 10

     C.   Ver Fails to Allege Any Purported Misstatements Were Material ............................ 13

     D.   Ver Does Not Allege Mr. Moro Acted with the Requisite Knowledge or Intent ......... 15

     E.   Ver Does Not Sufficiently Plead Reliance And Cannot Claim Justifiable Reliance .... 16

     F.   Ver Does Not Sufficiently Allege Damages ........................................................ 17

II.  COUNT III FAILS BECAUSE VER FAILED TO STATE A CAUSE OF
     ACTION FOR AIDING AND ABETTING FRAUD ........................................................ 18

     A.   The Aiding and Abetting Fraud Claim Is Duplicative of the Primary Fraud
          Claim and Must Be Dismissed .......................................................................... 18

     B.   Ver Failed to Plead the Elements of an Aiding and Abetting Claim ....................... 19

III. COUNT II FAILS BECAUSE VER CANNOT STATE A CAUSE OF
     ACTION FOR CIVIL CONSPIRACY TO COMMIT FRAUD .......................................... 21

     A.   There Is No Cause of Action for Civil Conspiracy in New York ............................ 21

     B.   Ver's Duplicative Civil Conspiracy Claim Must be Dismissed .............................. 21

     C.   Ver Fails to Establish the Elements of Civil Conspiracy to Commit Fraud ............. 22

CONCLUSION ..................................................................................................................... 23

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*380544 Canada, Inc. v. Aspen Technology, Inc.*,
    633 F. Supp.2d 15 (S.D.N.Y. 2009)....................................................19

*Abacus Fed. Sav. Bank v. Lim*,
    75 A.D.3d 472, 905 N.Y.S.2d 585 (2010) ............................................22

*Abu Dhabi Commercial Bank v. Morgan Stanley & Co.*,
    651 F. Supp. 2d 155 (S.D.N.Y. 2009)..................................................19

*Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*,
    404 F.3d 566 (2d Cir. 2005)..............................................................22

*Alexander & Alexander of N.Y. v. Fritzen*,
    68 N.Y.2d 968, 510 N.Y.S.2d 546, 503 N.E.2d 102 (1986)...................21

*AmBase Corp. v. City Investing Co. Liquidating Tr.*,
    326 F.3d 63 (2d Cir. 2003)..................................................................8

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...........................................................................8

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...........................................................................8

*Chase Manhattan Bank v. N.H. Ins. Co.*,
    304 A.D.2d 423 (1st Dep't 2003) ......................................................17

*Dragon State Int'l Ltd. v. Keyuan Petroch., Inc.*,
    2016 WL 439022 (S.D.N.Y.)............................................................19

*Dreamco Development Corporation v. Empire State Development Corporation, et al.*,
    197 A.D.3d 847 (NY App. 2021) ......................................................10

*Ellison v. Am. Image Motor Co., Inc.*,
    36 F. Supp. 2d 628 (S.D.N.Y. 1999).........................................9, 16, 20

*Eurycleia Partners, LP v. Seward & Kissel, LLP*,
    12 N.Y.3d 553 (2009) ..........................................................9, 13, 15, 16

*Faulkner v. City of Yonkers*,
    105 A.D.3d 899, 963 N.Y.S.2d 340 (2013) ........................................23

*Fox Paine & Co., LLC v. Houston Cas. Co.*,
 153 A.D.3d 678, 59 N.Y.S.3d 759 (2017) ...................................................22

*Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt., LLC*,
 479 F. Supp. 2d 349 (S.D.N.Y. 2007)........................................................20

*Godfrey v. Spano*,
 13 N.Y. 3d 358 (2009) ...............................................................................23

*Goldstein v. Siegel*,
 19 A.D.2d 489, 244 N.Y.S.2d 378 (1963) ................................................23

*Golub v. Tanenbaum-Harber Co., Inc.*,
 88 A.D.3d 622 (NY App. Div. 2011) .........................................................13

*HSH Nordbank AG v. UBS AG*,
 95 A.D.3d 185 (1st Dep't 2012) ................................................................17

*IKB Int'l S.A. v. Bank of Am. Corp.*,
 584 F. App'x 26 (2d Cir. 2014) ...................................................... *passim*

*Johnson v. Law Office of Schwartz*,
 145 A.D.3d 608 (1st Dep't 2016) ..............................................................21

*Kalnit v. Eichler*,
 264 F.3d 131 (2d Cir. 2001)......................................................................16

*Krys v. Pigott*,
 749 F.3d 117 (2d Cir. 2014)........................................................................8

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
 797 F.3d 160 (2d Cir. 2015)........................................................................9

*Mandala v. NTT Data, Inc.*,
 975 F.3d 202 (2d Cir. 2020)........................................................................8

*MP Cool Investments Ltd. v. Forkosh*,
 142 A.D.3d 286 (NY App. Div. 2016) .......................................................13

*Pappas v. Tzolis*,
 20 N.Y.3d 233 (2012) ................................................................................17

*Pension Comm. Of the Univ. of Montreal v. Banc of Am. Sec., LLC*,
 652 F. Supp. 2d 495 (S.D.N.Y. 2009)..................................................19, 20

*Rombach v. Chang*,
 355 F.3d 164 (2d Cir. 2004)........................................................................8

*Rosner v. Bank of China*,
  No. 06-cv-13562, 2008 WL 5416380 (S.D.N.Y. 2008) .......................................................20

*Sachs v. Adeli*,
  2006 WL 6849591, 2006 N.Y. Slip. Op. 30648(U) (NY Sup. Ct. 2006) ...............................19

*Sebastian Holdings, Inc. v. Deutsche Bank AG*,
  78 A.D.3d 446 (App. Div. 2010) ..........................................................................................14

*Segal v. Gordon*,
  467 F.2d 602 (2d Cir. 1972)..................................................................................................15

*Silva Run Worldwide Ltd. v. Gaming Lottery Corp.*,
  1998 WL 167330 (S.D.N.Y. April 8, 1998) .........................................................................10

*Spencer Trask Software and Inf. Services LLC v. Rpost Intern. Ltd.*,
  383 F. Supp.2d 428 (S.D.N.Y. 2003).....................................................................................18

*The People of the State of New York v. Gemini Trust Co., LLC, et al.*,
  No. 452784/2023, Doc. No. 2 (NY Sup. Ct. Sep. 19, 2023)............................................14, 15

**Other Authorities**

Federal Rule of Civil Procedure 9(b)..................................................................................1, 8, 9, 10

Federal Rule of Civil Procedure 12(b)(6) ...................................................................................1, 8

Soichiro ("Michael") Moro, the former Chief Executive Officer ("CEO") of Genesis Global Capital, LLC ("Genesis Global") and GGC International Limited ("GGCI"), by and through his attorneys, hereby respectfully submits this memorandum in support of his motion to dismiss (the "Motion") the allegations against him in the Third-Party Complaint filed by Roger Ver (the "Ver Complaint" or "Ver Compl.") [ECF 1-17] pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure.

## <u>PRELIMINARY STATEMENT</u>

Roger Ver is throwing the kitchen sink into the legal system to avoid the inevitable – his obligation to pay GGCI more than $20 million relating to nearly three dozen cryptocurrency option agreements that collectively settled unfavorably for him in December 2022.  In December 2023, eleven months after GGCI sued Ver to recover what he still owed GGCI, and after a failed attempt to remove the case to federal court and further attempts to stall this litigation through multiple rounds of amended answers and counterclaims that still remain in flux,[1] Ver filed third-party claims against Mr. Moro and the other third-party defendants alleging (i) common law fraud; (ii) civil conspiracy to commit fraud; and (iii) aiding and abetting fraud.

While Ver's third-party complaint is replete with conclusory allegations against GGCI and unidentified "employees" or "representatives" of GGCI,[2] specific allegations relating to Mr. Moro are sparse.  Critically, Ver bases his entire case against Mr. Moro on two public-facing tweets that have nothing to do with Ver or GGCI, the only Genesis entity with which Ver was involved.

---

[1] GGCI sets forth Ver's efforts to forestall facing liability in its January 5, 2024 opposition to Ver's second attempt to amend his counterclaims, all of which conveniently take place after GCCI completed briefing on motions to dismiss his counterclaims.  ECF. 20-5 at 11-12 ("GGCI Opp.").

[2] Ver's allegations concerning GGCI in his third-party complaint are virtually identical to those asserted against GGCI in either his Amended Answer and Counterclaims or his proposed second Amended Answer and Counterclaims. Accordingly, Mr. Moro incorporates by reference GGCI's arguments in the briefing on its motion to dismiss Ver's amended counterclaims, ECF 1-13 ("GGCI Motion"); ECF 1-15 ("GGCI Reply"), and its opposition to Ver's motion to file a second Amended Answer and Counterclaims.  ECF 20-5 ("GGCI Opp.").

Indeed, Ver bases his entire case against Mr. Moro on two tweets that discuss actions taken by *Genesis Global* (not GGCI) to address *Genesis Global's* (not GGCI's) financial condition following the default of one of *Genesis Global's* (not GGCI's) lending partners.  Ver's third-party complaint offers no factual allegations to show that Mr. Moro's tweets were anything but true, nor does he present any facts to demonstrate how these tweets were in any way material to Ver, which is consistent with his failure to mention either tweet in his earlier attempts to assert fraud counterclaims against GGCI.   Ver otherwise seeks to smear Mr. Moro and the third-party defendants using a handful of non-public, out-of-context communications that nevertheless make no reference to and have no bearing on either GGCI or Ver – none of which Ver knew about until he copied them (along with his tweet allegations) from an October 2023 New York Attorney General complaint that tellingly lacked any allegations relating to GGCI.   Beyond these devastating pleading deficiencies, Ver fails to allege any facts that even suggest Mr. Moro sent his tweets with any intent to defraud Ver (or anyone else), nor facts demonstrating that (or how) Mr. Moro's tweets in any way damaged Ver.   Moreover, as GGCI has already argued, Ver is contractually precluded from alleging justifiable reliance on Mr. Moro's supposed misrepresentations.

For these reasons, and those that follow, the Ver Complaint should be dismissed as to Mr. Moro in its entirety.

## **STATEMENT OF FACTS**

It would be a herculean task for Mr. Moro to attempt to summarize all of the disjointed, irrelevant, and often incoherent allegations that Ver has copied-and-pasted from various sources into his third-party complaint.  As a result, Mr. Moro focuses this motion only on those allegations that are relevant to the claims against him and the period he is alleged to have served as the CEO

or its functional equivalent of various Genesis entities, including GGCI, which is alleged to be February 2, 2021 through August 17, 2022.  Ver Compl. ¶ 18.

**I.      The Master Confirmation Agreement**

As alleged in his third-party complaint, Ver and GGCI executed a Master Confirmation Agreement for Virtual Currency Put and Call Options Transactions on June 22, 2020, which was later amended on July 13, 2020.  *Id.* at ¶ 44; *see also* ECF No. 1-19 at 129-143 (the "MCA").  Mr. Moro signed the MCA on behalf of GGCI.  Ver Compl. ¶ 44.  The MCA set forth the terms under which GGCI and Ver could enter into individual cryptocurrency put and call option transactions.  *Id.*; *see also* GGCI Compl. ¶¶ 3, 19.  Section 9.a of the MCA states that each party is "not relying on any representations except those expressly set forth in the Agreement or this Confirmation," each party "has made its own investment, hedging, and trading decisions based upon its own judgment and upon any view expressed by the other party or any of its agents," and each party "is entering into each Transaction with a full understanding of the terms, conditions, and risks thereof and it is capable of and willing to assume those risks."  MCA § 9.a(iii)-(iv).

The MCA also included a disclaimer, in capitalized lettering, stating Ver: "ACKNOWLEDGED THAT THE RISK OF LOSS IN TRADING VIRTUAL CURRENCIES SUCH AS BTC OR ETH CAN BE SUBSTANTIAL AND, THEREFORE [VER] HAS CAREFULLY CONSIDERED WHETHER SUCH TRADING IS APPROPRIATE FOR [HIM] IN LIGHT OF [HIS] CIRCUMSTANCES AND FINANCIAL RESOURCES."  MCA § 9.h.  Ver further acknowledged that the "volatility and unpredictability of the price of Virtual Currency relative to fiat currency may result in significant loss over a short period of time."  MCA § 9.h.i.

**II.     GGCI and Ver Enter Into Options Transactions**

These proceedings were first initiated by GGCI after Ver failed to settle three cryptocurrency options agreements he entered into with GGCI pursuant to the MCA, all of which

expired on or before December 30, 2022.  *See* GGCI Compl. ¶¶ 1, 7. Specifically, GGCI and Ver entered into the following three transactions:

1.  Pursuant to a trade confirmation dated March 22, 2022, GGCI agreed to purchase from Ver a put option of 70,000 units of Bitcoin Cash ("BCH");

2.  Pursuant to a trade confirmation dated On June 10, 2022, GGCI agreed to purchase from Ver a put option for 10,000 Ether ("ETH"); and

3.  Pursuant to a trade confirmation dated June 11, 2022, GGCI agreed to purchase from Ver a put option for 500 Bitcoin ("BTC").

GGCI Compl. ¶ 36.  While Ver fails to identify in his third-party complaint *any* specific transactions that purportedly form the basis of his claims against Mr. Moro, a failure to plead with sufficient specificity that on its own warrants dismissal,[3] Mr. Moro assumes *arguendo* that the above transactions – identified in GGCI's complaint – are the relevant transactions for Ver's third-party allegations.

## III.    3AC Default and Genesis Global Response

In his third-party complaint, Ver alleges that Genesis Asia Pacific – a separate entity from GGCI that is an affiliate of Genesis Global[4] – made loans to Three Arrows Capital Limited ("3AC"), which were defaulted on by 3AC on June 13, 2022, *after* Ver had entered into all of the GGCI transactions noted above.  Ver Compl. ¶¶ 113-115, 234(b).  Ver does not allege that Genesis Asia Pacific did anything unlawful or inappropriate as to 3AC, nor does he allege that the 3AC default was related in any way to GGCI or Ver.  Instead, the crux of his "fraud" claims against Mr. Moro stem from Mr. Moro's involvement in *Genesis Global's* – not *GGCI's* – response in the weeks following the 3AC default.

---

[3] *See infra* at Section V.A.

[4] *See* GGCI's Opposition to Ver's Motion to Amend and Supplement, ECF No. 1-18, at 9-12.

Ver alleges that on June 14, 2022 – *after* he had entered into the three transactions with GGCI identified above – third-party defendant Silbert "instructed Moro and Genesis [Global] 'to continue aggressively shrinking the loan book and, until such time as we have the right controls, risk monitoring, etc. in place – and we're through the winter –. . . to limit the extension of any new loans [by Genesis Global] to counterparties." *Id.* ¶ 129.  On June 17, 2022, Mr. Moro sent the first of only two public-facing statements, both tweets on X (formerly known as Twitter), on which Ver bases his entire fraud case against Mr. Moro.  The tweet stated:

> Genesis [Global] can confirm that we carefully and thoughtfully mitigated our losses with a large counterparty who failed to meet a margin call to us earlier this week.  No client funds are impacted.  We sold and/or hedged all of the liquid collateral on hand to minimize any downside. . . . We will actively pursue recovery on any potential residual loss through all means available, however our potential loss is finite and can be netted against our own balance sheet as an organization.  We have shed the risk and moved on.

*Id.* ¶ 134.

On June 27, 2022, Ver alleges that Mr. Moro sent an internal email to DCG and Genesis Global executives "explaining the need to show a 'well-capitalized' balance sheet to [Genesis Global] Counterparties like Gemini." *Id.* ¶ 149.  In the email, Mr. Moro stated:

> Once the equity problem is solved, the liquidity problem is much easier to solve.  I think we'll find people to lend us additional [cryptocurrency] with a well-capitalized 6/30 balance sheet.
>
> And yes, at some point, our losses in [Three Arrows] and potentially Babel will become public.  But if we're able to show our balance sheet after all of that happened and it still looks strong, I think that 1) people will care less about the losses and 2) we'll be better able to operate from a place of strength going forward.
>
> But as I told Barry this evening, we have a lot of work to do before we can get back to full-steam-ahead on lending.  Better to think of it in wind-down mode for the time being, and just manage liquidity as loans roll off.  Then we can look to rebuild.

(*Id.* ¶ 149) (bracketed text added by Ver). The following day, Mr. Moro allegedly wrote to Silbert proposing an "'overall plan' of injecting certain assets to 'plug the equity hole' and then 'work on consistent messaging to speak to the loss to counterparties when we put out [a] new balance sheet' in an effort to '[r]estore confidence in the market and keep looking to borrow with term.'" *Id.* ¶ 150.  Mr. Moro noted that, "with a strengthened balance sheet, we would be able to source additional unsecured funding to be able to continue to manage our liquidity and withdrawal obligations." *Id.*

On June 30, 2022, DCG assumed the liability arising from 3AC's default by executing a $1.1 billion promissory note (the "Promissory Note") due in 10 years at an annual interest rate of 1%, which was signed by Mr. Moro and Mr. Silbert in their respective capacities as CEOs of Genesis Global and DCG.  *Id.* ¶¶ 164-67.  On July 6, 2022, following execution of the Promissory Note, Mr. Moro sent the second tweet on which Ver's case against him is based, stating:

> The loans to [Three Arrows] had a weighted average margin requirement of over 80%.  Once they were unable to meet the margin call requirements, we immediately sold collateral and hedged our downside.  Since then, we worked with [DCG] to find the optimal strategy to further isolate the risk.  DCG has assumed certain liabilities of Genesis [Global] related to [3AC] to ensure we have capital to operate and scale our business for the long-term.

*Id.* ¶ 174.

The remainder of Ver's allegations against Mr. Moro are pled without any specificity, and include nothing more than general allegations that: (i) on June 28, 2022, GGCI provided Ver with an unaudited point-in-time financial statement dated as of June 20, 2022 (the "June 20 SOFC"), which Ver alleges in a conclusory fashion was provided because Mr. Moro had mentioned the need to "restore confidence in the market" in an unrelated internal email the day before, *id.* ¶ 152; (ii) on June 30, 2022, "an [unidentified] employee of both GGCI and Genesis Global made a number of representations to Ver "at the [supposed] direction of Moro, Silbert and the Genesis

Entities" following Ver's inquiries into GGCI's financial condition; *id.* ¶ 155; and (iii) on July 6, 2022, Mr. Moro was copied on a non-public email sent by an unnamed Genesis employee to Genesis Global and DCG employees attaching a document titled "Talking Points to [Three Arrows] Questions," *Id.* ¶ 180. Ver alleges no conduct involving Mr. Moro after July 6, 2022, despite claiming he served as GGCI's CEO through August 17, 2022 – nearly 1.5 months later.

## IV.     The FTX and Alameda Collapse

That Ver is unable to offer any allegations of wrongdoing against Mr. Moro is easy to understand when viewed in critically-important historical context – the November 2022 collapse of Alameda, a cryptocurrency trading firm, and FTX, the second largest cryptocurrency exchange. Even a cursory skim of the Ver Complaint makes clear that Ver himself recognizes that any losses he may have incurred as a result of his transactions with GGCI were the result of the FTX collapse in November and *not* the 3AC default that occurred months before. *See, e.g.,* Ver Compl. ¶¶ 87-101 ("Over Exposure to Alameda & FTX"), ¶¶ 189-208 (section "Ver Discovers GGCI's Insolvency" entirely discussing FTX and Alameda bankruptcy); ¶¶ 215-222 (complaining of accounting practices with regarding to Alameda's FTT tokens in "GGCI's 2021 Audited Financials"); ¶¶ 223-232 (discussing "GGCI's Shifting Explanations" in December 2022 regarding loan obligation to Alameda). Indeed, it was only "in the wake of the FTX and Alameda bankruptcies," at some point on or around December 23, 2022, that Ver supposedly sent additional inquires to GGCI regarding its financial condition – inquiries made *over four months after Mr. Moro left Genesis. Id.* ¶¶ 194, 201.

## **LEGAL STANDARD**

On a Rule 12(b)(6) motion to dismiss, the Court reviews the complaint and accepts as true "only its factual allegations, and the reasonable inferences that can be drawn therefrom." *Krys v. Pigott*, 749 F.3d 117, 128 (2d Cir. 2014). The Court's function "is merely to assess the legal

feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *AmBase Corp. v. City Investing Co. Liquidating Tr.*, 326 F.3d 63, 72 (2d Cir. 2003). The Court should dismiss the complaint if the plaintiff has not stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "But while this plausibility pleading standard is forgiving, it is not toothless." *Mandala v. NTT Data, Inc.*, 975 F.3d 202, 207 (2d Cir. 2020). Thus, it "does not require [the Court] to credit legal conclusions couched as . . . factual allegations or naked assertions devoid of further factual enhancement." *Id.*

A claim based in fraud is subject to the particularity pleading requirements of Federal Rule of Civil Procedure 9(b), "which requires that the plaintiff (1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *IKB Int'l S.A. v. Bank of Am. Corp.*, 584 F. App'x 26, 27 (2d Cir. 2014) (citing *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir. 2004)). "The particularity requirement of Rule 9(b) serves to provide a defendant with fair notice of a plaintiff's claim, to safeguard a defendant's reputation from improvident charges of wrongdoing." *Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004) (citing *O'Brien v. Nat'l Property Analysts Partners,* 936 F.2d 674, 676 (2d Cir.1991)). Thus, allegations of fraud must "inform each defendant of the nature of [his or her] alleged participation in" each fraud alleged. *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 172 (2d Cir. 2015).

Furthermore, the Second Circuit has "repeatedly required plaintiffs to plead the factual basis which gives rise to a strong inference of fraudulent intent." IKB Int'l S.A., 584 F. App'x at

27. A strong inference of fraudulent intent "may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." Id. at 27-28 (citing Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290-91 (2d Cir. 2006)).

## ARGUMENT

## I.   COUNT I FAILS BECAUSE VER FAILED TO STATE A CAUSE OF ACTION FOR FRAUD

Under New York law, "[t]he elements of a cause of action for fraud require a material misrepresentation of a fact, knowledge of its falsity, an intent to induce reliance, justifiable reliance by the plaintiff and damages." *Eurycleia Partners, LP v. Seward & Kissel, LLP*, 12 N.Y.3d 553, 559 (2009).

### A.   Ver Cannot Rely on Improper "Group Pleading"

As an initial matter, despite not being a party to this "third-party" complaint, the vast majority of the allegation included in the Ver Complaint simply allege that GGCI or unidentified representatives of GGCI – not Mr. Moro or any other third-party defendant – took certain actions that Ver alleges to have been fraudulent. *See, e.g.*, Ver Compl. ¶¶ 179, 181-85 (allegations regarding Genesis Global's Chief Risk Officer, Head of Communications and Public Relations, and CFO). To the extent Ver seeks to impose liability for fraud on Mr. Moro through factually unsupported claims that Mr. Moro (or other third-party defendants) "caused" GGCI, or employees of GGCI, to engage in conduct Ver alleges was fraudulent, this kind of group pleading fails to satisfy the particularity pleading requirement of Rule 9(b). *See Ellison v. Am. Image Motor Co., Inc.*, 36 F. Supp. 2d 628, 640 (S.D.N.Y. 1999) ("[w]hen fraud is alleged against multiple defendants, a plaintiff must plead with particularity by setting forth separately the acts complained of by each defendant"). Rule 9(b) is "not satisfied by a complaint in which 'defendants are clumped together in vague allegations.'" *Silva Run Worldwide Ltd. v. Gaming Lottery Corp.*, 1998

WL 167330, at *11 (S.D.N.Y. April 8, 1998) (quoting *Three Crown Ltd. Partnershipi v. Caxton Corp.*, 817 F. Supp. 1033, 1040 (S.D.N.Y. 1993)).    Accordingly, Ver's "group pleading" allegations should be rejected as a basis for pleading Mr. Moro's potential fraud liability.

###    B.    Ver Fails to Sufficiently Allege Mr. Moro Made Any Misrepresentation

Of the limited remaining allegations that *are* specific to Mr. Moro, all but two relate to *internal* communications with Genesis Global and DCG employees discussing Genesis Global's – not GGCI's – financial condition.[5]  Putting aside that Ver fails to allege there was anything improper about these non-public communications, even if there had been, communications that were not directed to Ver cannot form the basis of a fraud claim.  *See, e.g., Dreamco Development Corporation v. Empire State Development Corporation, et al.*, 197 A.D.3d 847, 848 (NY App. 2021) (holding complaint failed to state a claim where it "does not set forth any material misrepresentations that defendant allegedly made *to plaintiffs*" (emphasis added)) (citing caselaw). As a result, there are only *two* allegations in the entirety of Ver's fifty-page, 254-paragraph complaint that Mr. Moro made *any* public statements at all – the first being a tweet on June 17, 2022 and the second a tweet on July 6, 2022.  For both of these tweets, Ver fails to allege any facts to suggest they were anything but truthful updates on the status of Genesis Global – not GGCI – following the 3AC default.

Beginning with the June 17 tweet, Ver first challenges Mr. Moro's statement that "[n]o client funds are impacted," arguing "client funds had been impacted – the [3AC] losses severely impaired Genesis Global's ability to repay its counterparties, including Earn investors."  Ver Compl. ¶¶ 136(a), 234(a).  Ver's *argument* notwithstanding, he alleges no facts to suggest that

---

[5] *See, e.g.*, Ver Compl. ¶¶ 149, 150 (June 27 and 28 emails discussing Genesis Global's equity and liquidity problems following 3AC's default); 164 (Moro signed Promissory Note on behalf of Genesis Global); ¶ 163 (Moro attended Genesis Global meetings with DCG); ¶ 180 (Moro and others received an email from an unidentified Genesis Global employee regarding "Talking Points to [3AC] Questions").

Genesis Global's "client *funds*" were in fact impacted by its 3AC losses.  Indeed, there is not a single allegation in the Ver Complaint that Genesis Global in any way used or manipulated any client funds to mitigate any 3AC losses, much less that any funds Ver may have provided *to GGCI* were impacted by Genesis Global's 3AC losses.  While Ver points to alleged *liquidity* issues to attempt to discredit the tweet, *e.g.* Ver Compl. ¶ 177, the context of the tweet made clear that Mr. Moro was discussing steps Genesis Global (not GGCI) took, and would take, to "carefully and thoughtfully mitigate [its] losses with a large counterparty who failed to meet a margin call." Compl. ¶ 134.  To that end, Genesis Asia Pacific (and not GGCI) "sold and or hedged all of the liquid *collateral* on hand to minimize any downside," as Mr. Moro explained in the tweet and, later, DCG assumed liabilities from Genesis Global (not GGCI) that resulted from 3AC's default.

Ver also argues Mr. Moro's June 17 tweet was false and misleading because it, "conceal[ed] that hundreds of millions of dollars' worth of the [3AC] loans were secured by illiquid collateral that could not be sold and was not hedged," and that Genesis Global (not GGCI) "had not 'shed the risk and moved on'—as of June 17, 2022, it still held a more than \$1 billion receivable relating to [3AC] as an uncollectible asset on its balance sheet."  Ver Compl. ¶¶ 136(d) and (e), 234(d) and (e).  Putting aside these *arguments*, the tweet expressly stated that Genesis Global (not GGCI) sold *liquid* collateral to "mitigate" and "minimize," not "eliminate," any downside or losses, and that Genesis Global (not GGCI) "will actively pursue recovery on any potential residual loss through all means available."  *Id.* ¶ 134.  As a result, anyone who read Mr. Moro's June 17 tweet – especially someone who identifies themselves as "experienced in digital asset investment" [*Id.* ¶ 39] – was on notice both that Genesis Global (not GGCI) was actively addressing the issues arising out of 3AC's default and that there remained potential for Genesis Global (not GGCI) to experience additional losses.  *Id.* ¶ 134.  As a result, Mr. Moro's statement in the June 17 tweet did not include any "misrepresentations."

Turning next to Mr. Moro's July 6 tweet, Ver challenges the portion of the tweet where Moro states that, "DCG has assumed certain liabilities of Genesis [Global] related to [3AC]," but fails to allege that this truthful statement was deceptive (much less how). Ver Compl. ¶ 134. While Ver may take issue with the *means* by which DCG accomplished the assumption of the 3AC debt from Genesis Global, namely attacking the terms of the Promissory Note and calling it an "accounting farce," the Ver Complaint is unequivocal that Genesis Global did, in fact, exchange an uncollectable $1.1 billion receivable from 3AC for a collectable $1.1 billion receivable from DCG. *See, e.g.*, Ver Compl. ¶ 164 ("DCG executed an unsecured promissory note payable to Genesis Global in the amount of $1.1 billion.").

Ver's concerns about the July 6 tweet appear to result from his conflating equity and capital with liquidity. Properly distinguishing between the two – as any "well-known" and "experienced" digital investor surely could – the statement in Mr. Moro's tweet that DCG had assumed Genesis Global's 3AC liabilities "to ensure [Genesis Global has] the *capital* to operate and scale our business for the long-term" was objectively true. Since Mr. Moro's tweet said nothing about the effect of the Promissory Note on Genesis Global's "liquidity," Ver's claim that it was a "misrepresentation" is without merit.

In fact, Ver's attempts to conflate capital and liquidity are directly countered by his own allegations that Mr. Moro took the distinction seriously at the time and understood that Genesis Global would have to work to address both. As noted above, *supra* at Section III, Mr. Moro made this exact distinction in his non-public June 27, 2022 email, saying "once the *equity* problem is solved, the *liquidity* problem is much easier to solve." Ver Compl. ¶ 149 (emphasis added). Again on June 28, 2022, Mr. Moro wrote that "[w]hile *liquidity* [was] still [Genesis Global's] number one focus, [they] only ha[d] a couple of days until quarter-end" and, as a result, proposed a plan "of injecting certain assets to 'plug the *equity* hole.'" *Id.* ¶ 150 (emphasis added). As Mr. Moro

explained, addressing equity and capital in the near-term would strengthen the balance sheet, allowing Genesis Global to "be able to source additional unsecured funding to be able to continue to manage [its] liquidity withdrawal obligations." *Id.*

Accordingly, Ver's first cause of action for fraud must be dismissed for failing to plead that Mr. Moro made any misrepresentations.

### C.    Ver Fails to Allege Any Purported Misstatements Were Material

Notwithstanding the foregoing, even if Ver *had* sufficiently alleged that any portion of Mr. Moro's two tweets were "misrepresentations," Ver has failed to plead that any statement by Mr. Moro in either of those tweets was "material" to Ver. *See MP Cool Investments Ltd. v. Forkosh*, 142 A.D.3d 286, 291 (NY App. Div. 2016) ("the complaint must allege misrepresentation or concealment of *a material fact*" (emphasis added)). While Ver includes conclusory allegations that the June 17 and July 6 tweets were "false and misleading in an number of ways," or that they were "misrepresentations" or "inaccurate," he fails to alleges, even in a conclusory way, that any statement was "material" to him. Ver Compl. ¶¶ 136, 234. At best, Ver includes *one* conclusory allegation that that the tweets "*omitted* material facts." Ver Compl. ¶ 177. However, Ver cannot rely on fraudulent *omissions* to support his third-party claim against Mr. Moro when New York law provides that "an omission does not constitute fraud unless there is a fiduciary relationship between the parties," and Ver does not allege (nor could he) that any such relationship existed between Ver and Mr. Moro. *Eurycleia Partners, LP*, 46 A.D. 3d at 402; *see also Golub v. Tanenbaum-Harber Co., Inc.*, 88 A.D.3d 622, 622 (NY App. Div. 2011) (same); *Sebastian Holdings, Inc. v. Deutsche Bank AG*, 78 A.D.3d 446, 447 (App. Div. 2010) ("[T]he lack of a fiduciary relationship between the parties is fatal to plaintiff's claim for . . . fraudulent concealment.").

As alleged by Ver, Mr. Moro's tweets were "misrepresentations" in part because "the Three Arrows losses severely impaired *Genesis Global's* ability to repay *its counterparties*, including *Earn Investors*." Ver Compl. ¶ 136, 234 (emphasis added). Even accepting Ver's claim as true – which it is not – Ver was neither a counterparty to Genesis Global nor was he an "Earn Investor," and therefore such an alleged "misrepresentation" could not be material to him as a counterparty *to GGCI*. Ver Compl. ¶¶ 43-44 (Ver entered into agreements with GGCI). In fact, Ver's allegations demonstrate that Mr. Moro's June 17 tweet related only to *Genesis Global* – not *GGCI* – effectively precluding Ver from arguing that any alleged "misrepresentation" was material to him. Ver Compl. ¶¶ 136(a) and (d); 234(a) and (d).

To be clear, the inclusion of allegations regarding *Genesis Global's* counterparties and "Earn investors" in the *only* portion of the Ver Complaint that even touches on public statements by Mr. Moro reveals how unserious Ver's allegations against Mr. Moro truly are. Indeed, nearly every allegation regarding Mr. Moro in the Ver Complaint was copied-and-pasted verbatim from allegations that were included in a complaint filed by the New York Attorney General on October 19, 2023, an action that in no way involves GGCI.[6] That Ver suddenly remembered in December 2023 that he "relied" on Mr. Moro's June 17, 2022 tweet only *after* it appeared in the NYAG complaint lays bare the fallacy of Ver's fraud claims, especially when there was no mention of the tweet in Ver's initial *or* amended counterclaims against GGCI, filed May 9, 2023 and July 31, 2023, respectively.[7] This is further clear when Ver couldn't be bothered to rewrite an allegation he copied from the NYAG complaint so that the alleged "misrepresentation" might appear material

---

[6] *See* Complaint, *The People of the State of New York v. Gemini Trust Co., LLC, et al.*, No. 452784/2023, Doc. No. 2 (NY Sup. Ct. Sep. 19, 2023) (the "NYAG Complaint").

[7] It wasn't until Ver sought to amend his counterclaims for a second time, on December 11, 2023, that he seems to have "remembered" that he saw and relied on this tweet. *Compare* ECF Nos. 1-8 (Answer and Counterclaim) and 1-12 (Amended Answer and Counterclaims), *with* ECF No. 1-16 (Motion for Leave to Amend and Supplement).

to him as a counterparty *to GGCI*. Accordingly, Ver's first cause of action must also be dismissed for failing to plead Mr. Moro made any "material" misrepresentations.

### D.   Ver Does Not Allege Mr. Moro Acted with the Requisite Knowledge or Intent

Given Ver has failed to plead that Mr. Moro made any false statements of fact in either of his tweets, he cannot plead that Mr. Moro had the requisite knowledge of the falsity of such statements or the requisite intent to induce Ver to rely on such supposedly false information. *Eurycleia Partners, LP*, 12 N.Y.3d at 559. That said, even if the Court were to find Ver had sufficiently plead that either (or both) of Mr. Moro's tweets contained false statements of fact, Ver fails to allege any facts demonstrating knowledge on the part of Mr. Moro as to their falsity. Indeed, Ver includes only three conclusory allegations that Mr. Moro acted "with knowledge of the falsity" or "with full knowledge of [the] inaccuracies" of the tweets. Ver. Compl. ¶¶ 9, 234, 249. "Mere general allegations that there was fraud . . . or characterizations of acts or conduct in these terms are not enough no matter how frequently repeated." *Segal v. Gordon*, 467 F.2d 602, 607 (2d Cir. 1972) (quoting *Chicago Title & Trust Co. v. Fox Theatres Corp.*, 182 F. Supp. 18, 31 (S.D.N.Y. 1960)).

Ver also fails to allege any facts to show Mr. Moro "had both motive and opportunity to commit fraud, or [] alleg[e] facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *IKB Intern. S.A.*, 584 F. App'x. at 27-28. Ver does not assert that Mr. Moro had any ownership stake in Genesis Global (or GGCI), and does not otherwise say anything about Mr. Moro's compensation, and thus fails to "assert a concrete and personal benefit [to Mr. Moro] . . . resulting from the [alleged] fraud." *Kalnit v. Eichler*, 264 F.3d 131, 139 (2d Cir. 2001). In fact, the Ver Complaint includes no facts alleging any benefit to Mr. Moro whatsoever resulting from his purported "fraud," nor does it allege any facts from which there might be "strong

circumstantial evidence of conscious misbehavior or recklessness" by Mr. Moro regarding the two (factually true) tweets on which Ver bases his entire case.

Indeed, far from alleging facts showing a "strong inference of fraudulent intent," as required, Ver fails to include *any* allegation suggesting Mr. Moro acted with the requisite "intent to induce reliance" in connection with the alleged fraud. *Eurycleia Partners, LP*, 12 N.Y.3d at 559. The only allegations of "intent" in the Ver Complaint are alleged against GGCI or "Counter-Defendants," which does not include Mr. Moro, *id.* ¶¶ 1, 241, 249, or as impermissible conclusory group allegations against "Third-Party Defendants" in support of the civil conspiracy claims, *id.* ¶¶ 242, 245. *Ellison*, 36 F. Supp. 2d at 640 ("[w]hen fraud is alleged against multiple defendants, a plaintiff must plead with particularity by setting forth separately the acts complained of by each defendant"); *IKB Intern. S.A.*, 584 F. App'x. 26 at 27 ("threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice) (quoting *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009)). Because Ver fails to allege detailed facts to support the strong inference of scienter necessary to maintain a fraud claim against Mr. Moro, Ver's first cause of action must be dismissed.

### E.    Ver Does Not Sufficiently Plead Reliance And Cannot Claim Justifiable Reliance

Ver offers no facts to demonstrate that he relied on either or both of Mr. Moro's tweets regarding his investments with GGCI. In fact, Ver's only claim of reliance in the entirety of his complaint is a statement in the first cause of action that he "relied, in part, on the public statements of Moro and Silbert when deciding to continue to maintain his options positions at GGCI." Compl. ¶ 236. Such conclusory assertions are insufficient to plead an element of fraud with sufficient particularity. *See IKB Int'l S.A. v. Bank of Am. Corp.*, 584 F. App'x 26, 27 (2d Cir. 2014) (citing *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir. 2004)).

While it is clear that Ver's allegations are little more than baseless attacks on Mr. Moro's character couched in legalese in an attempt to create fraud where none exists, Ver's claims against Mr. Moro must also be dismissed for a very simple reason: Ver specifically disclaimed reliance on extracontractual representations in his MCA with GGCI. *See supra* Section I. Under New York law, disclaimers that parties are "not relying on any representations as to the very matter as to which they now claim they were defrauded," renders a fraud claim deficient. *Pappas v. Tzolis*, 20 N.Y.3d 233 (2012) (disclaimers in a pre-litigation agreement governing the sale of LLC membership interests precluded fraud claims). Indeed, as a result of agreements that Ver personally entered into with GGCI, he agreed that he would *not* rely on the very types of extra-contractual statements he now attempts to claim he *did* rely on. *See* MCA ¶¶ 9.a, 9.h, 9.h.i. *see also HSH Nordbank AG v. UBS AG*, 95 A.D.3d 185, 201 (1st Dep't 2012) ("To permit [plaintiff] to sue [defendant] for fraud based on extracontractual representations concerning the risk level of the notes would 'in effect condone [plaintiff's] own fraud in deliberately misrepresenting its true intention' when it disclaimed reliance on any such representations at the time of contracting."); *Chase Manhattan Bank v. N.H. Ins. Co.*, 304 A.D.2d 423, 424 (1st Dep't 2003) (same).[8]

### F.    Ver Does Not Sufficiently Allege Damages

Finally, Ver does not allege any damages arising out of Mr. Moro's two tweets. Despite his hard to follow insinuations and theorizing as to when GGCI may or may not have been "solvent," all of which have been addressed in the GGCI Motion, Ver's failure to allege damages as to Mr. Moro are simple to see. First, the alleged "fraudulent" statements by Mr. Moro are the June 17 and July 6, 2022 tweets. However, the *only* investments identified with any particularity in any pleading are those identified by GGCI in its Complaint against Ver. GGCI Compl. ¶ 36.

---

[8] Ver's acknowledgement that Mr. Moro executed the MCA on behalf of GGCI necessarily means that Mr. Moro understood Ver would not be relying on his tweets in making investment decisions pursuant to the MCA – evidence that Mr. Moro *could not* act with the request fraudulent intent even if his tweets *had* been false, which they were not.

As noted above, the only connection between Mr. Moro's tweets and Ver's supposed injury is his conclusory assertion that he "relied, in part, on the public statements of Moro and Silber when deciding to continue to maintain his options positions at GGCI." Ver Compl. ¶ 236. Ver's failure to plead with particularity how Mr. Moro's two tweets connect to any specific investments and/or resulting damages – much less how that would obligate Mr. Moro to pay Ver the $20,000,000 that he owes to GGCI – is itself a pleading deficiency that merits dismissal of all claims against Mr. Moro. *See Spencer Trask Software and Inf. Services LLC v. Rpost Intern. Ltd.*, 383 F. Supp.2d 428, 454 (S.D.N.Y. 2003) (holding plaintiff must show that he was "damaged, injured, or harmed as a result of the asserted fraud")(internal quotations omitted)). Even granting Ver the three transactions identified in GGCI's complaint, Ver entered into all of those transactions *before Mr. Moro sent either of his tweets. See supra* Section II (identifying three investments entered into March 22, June 10, and June 11, 2022). Ver did not (and cannot) allege that *Mr. Moro's* tweets are in any way responsible for any "damages" arising out of these investments, nor has he plead the existence of any other investments which could potentially form the basis of his claims against Mr. Moro.

For all of these reasons, Ver's fraud claim must be dismissed.

## II.    COUNT III FAILS BECAUSE VER FAILED TO STATE A CAUSE OF ACTION FOR AIDING AND ABETTING FRAUD

### A.    The Aiding and Abetting Fraud Claim Is Duplicative of the Primary Fraud Claim and Must Be Dismissed

As an initial matter, Ver's third cause of action for aiding and abetting fraud is entirely duplicative of his fraud claim and must be dismissed. "The purpose of an aiding and abetting claim is to draw in defendants who would not be liable on the main fraud claim, but who are alleged to have actual knowledge of the fraud and substantially assisted in it." *380544 Canada, Inc. v. Aspen Technology, Inc.*, 633 F. Supp.2d 15, 36 (S.D.N.Y. 2009). Here, however, Ver's

cause of action for aiding and abetting fraud is based on precisely the same acts as alleged with respect to his purported claims of fraud – Mr. Moro's two tweets. *Compare* Ver Compl. ¶ 234 (alleging Moro committed fraud by "craft[ing] and issu[ing] a number of misrepresentations through a series of tweets"), *with* ¶ 251 (alleging Moro "provided substantial assistance . . .by making intentionally misleading and inaccurate representations to Ver, and the public"). Thus, the aiding and abetting fraud claim must be dismissed. *See Dragon State Int'l Ltd. v. Keyuan Petroch., Inc.*, 2016 WL 439022 (S.D.N.Y.); *Sachs v. Adeli*, 2006 WL 6849591, 2006 N.Y. Slip. Op. 30648(U) (NY Sup. Ct. 2006) (explaining that "the aiding and abetting claim is duplicative and unnecessary, because [defendant] is one of the two principal actors alleged in the fraudulent scheme").

**B.     Ver Failed to Plead the Elements of an Aiding and Abetting Claim**

Even if the Court were to consider Ver's aiding and abetting claim, it must still be dismissed. To adequately state a claim for aiding and abetting under New York law, "a plaintiff must show '(1) the existence of a . . . violation by the primary (as opposed to the aiding and abetting) party; (2) knowledge of this violation on the part of the aider and abettor; and (3) substantial assistance by the aider and abettor in the achievement of the primary violation." *Abu Dhabi Commercial Bank v. Morgan Stanley & Co.*, 651 F. Supp. 2d 155, 173-174 (S.D.N.Y. 2009). A plaintiff asserting aiding and abetting common law fraud must allege sufficient facts to give rise to a "strong inference . . . of actual knowledge of the underlying fraud," *id.* at 293, and that show "a defendant affirmatively assist[ed], help[ed] conceal or fail[ed] to act when required to do so, thereby enabling the breach or fraud to occur." *Pension Comm. Of the Univ. of Montreal v. Banc of Am. Sec., LLC*, 652 F. Supp. 2d 495, 503 (S.D.N.Y. 2009). Further, a plaintiff must demonstrate that the substantial assistance was the proximate cause of "the harm on which the primary liability is predicated." *Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt., LLC*, 479 F. Supp. 2d 349, 370-

71 (S.D.N.Y. 2007).  "[A]n alleged aider and abettor will be liable only where the plaintiff's injury is a direct or reasonably foreseeable result of the defendant's conduct."  *Rosner v. Bank of China*, No. 06-cv-13562, 2008 WL 5416380, at *5 (S.D.N.Y. 2008).

Assuming *arguendo* that Ver set forth a viable claim for fraud against GGCI or any other Counter-Defendant or Third-Party Defendant, Ver fails to otherwise sufficiently plead an aiding and abetting claim against Mr. Moro.  *First*, Ver fails to allege any facts demonstrating or giving rise to a strong inference that Mr. Moro, specifically, had actual knowledge of any fraud being perpetrated against Ver.  Instead, Ver simply makes the improper conclusory "group pleading" allegation that "[d]uring all relevant times to this matter, Third-Party Defendants coordinated with and were aware of the intentional misrepresentations made to Ver."  Ver Compl. ¶ 250.  *See, e.g.*, *Ellison*, 36 F. Supp. 2d at 640 ("[w]hen fraud is alleged against multiple defendants, a plaintiff must plead with particularity by setting forth separately the acts complained of by each defendant"); *IKB Intern. S.A.*, 584 F. App'x. 26 at 27 ("threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" (quoting *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009)).  *Second*, Ver makes another conclusory "group pleading" allegation that "Third-Party Defendants provided substantial assistance…by making intentionally misleading and inaccurate representations to Ver, and the public…." Ver Compl. ¶ 251.  Doing so, Ver effectively concedes he has not alleged any facts demonstrating Mr. Moro did anything to "affirmatively assist[], help[] conceal or fail[] to act when required to do so," such that Mr. Moro enabled someone else's primary  fraud on Ver to occur.  *Pension Comm. Of the Univ. of Montreal*, 652 F. Supp. 2d at 503.

For these reasons, Ver's claim for aiding and abetting must be dismissed.

III.    **COUNT II FAILS BECAUSE VER CANNOT STATE A CAUSE OF ACTION FOR CIVIL CONSPIRACY TO COMMIT FRAUD**

A.    **There Is No Cause of Action for Civil Conspiracy in New York**

It is well established under New York law that one cannot bring a standalone claim for civil conspiracy. *See Alexander & Alexander of N.Y. v. Fritzen*, 68 N.Y.2d 968, 510 N.Y.S.2d 546, 503 N.E.2d 102 (1986) (Finding that New York does not recognize an independent cause of action for civil conspiracy); *Johnson v. Law Office of Schwartz*, 145 A.D.3d 608, 611 (1st Dep't 2016) ("To the extent the fourth cause of action can be read as alleging civil conspiracy, it must be dismissed as well, since conspiracy to commit a tort is not a cause of action."); *Nerey v. Greenpoint mortg. Funding, Inc.*, 144 A.D.3d 646, 648 (2d Dep't 2016) ("Although a plaintiff may plead the existence of a conspiracy in order to connect the actions of the individual defendant with an actionable, underlying tort and establish that those actions were part of a common scheme, New York does not recognize an independent tort of conspiracy.").

B.    **Ver's Duplicative Civil Conspiracy Claim Must be Dismissed**

Ver's claim for civil conspiracy must also be dismissed for the separate reason that it is duplicative of the aiding and abetting claim, discussed *supra* Section VI. A.  In bringing these claims, Ver does not allege that the aiding and abetting and conspiracy claims are based on separate and distinct actions by Mr. Moro, rather in each claim he alleges the same actions – Mr. Moro's public tweets and internal emails – are the alleged overt action in furtherance of the alleged conspiracy *and* the action that constitutes Mr. Moro's alleged substantial assistance to aid GGCI in this alleged fraud.  *Id.* ¶¶ 242-44, 249-251.

The duplicative nature of these claims warrants the dismissal of Ver's civil conspiracy. New York federal and state courts agree that civil conspiracy claims that are duplicative of other claims, including aiding and abetting claims, must be dismissed, because New York law "does not allow a plaintiff to reallege a tort asserted elsewhere in the complaint in the guise of a separate

conspiracy claim." *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 591 (2d Cir. 2005) (affirming dismissal of duplicative conspiracy claim *sua sponte* as impermissible); *Fox Paine & Co., LLC v. Houston Cas. Co.*, 153 A.D.3d 678, 680, 59 N.Y.S.3d 759, 761 (2017) (finding that "the Supreme Court properly denied that branch of the motion which was to add a cause of action alleging conspiracy to commit fraud, since that proposed cause of action was duplicative of the proposed cause of action alleging aiding and abetting fraud."). Thus, given that Ver is relying on the same alleged actions for both claims, they are entirely duplicative and the civil conspiracy claim must be dismissed on these grounds as well.

### C.    Ver Fails to Establish the Elements of Civil Conspiracy to Commit Fraud

All this being said, even if the Court were to consider Ver's civil conspiracy claim, it still fails because Ver fails to plead any of the required elements of civil conspiracy to commit fraud. Under New York law, "to establish a claim of civil conspiracy, [Ver] must demonstrate the primary tort [fraud], plus the following four elements: (1) an agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) parties' intentional participation in the furtherance of a plan or purposes; and (4) resulting damage or injury. *See Abacus Fed. Sav. Bank v. Lim,* 75 A.D.3d 472, 474, 905 N.Y.S.2d 585, 588 (2010).

To begin, the Ver Complaint is completely devoid of any factual allegation showing that Mr. Moro entered into any "agreement," much less what that agreement was, who it was with, or when it was entered into. In fact, Ver has entirely failed to plead facts demonstrating that *anyone* entered into any agreement. Ver only makes conclusory allegations including that, "[i]n July 2022, GGCI continued to conceal its insolvency by misrepresenting that its parent company, Digital Currency Group ("DCG"), had assumed more than $1.1 billion in losses that Genesis [Asia Pacific] had suffered. However, unbeknownst to Ver and the public at large, DCG never injected $1.1 billion into Genesis [Global]. Instead, DCG had merely provided Genesis [Global] with a

promissory note that promised to pay it $1.1 billion over a *ten year* period[,]" Ver Compl. ¶ 7; that on June 28, 2022, and unidentified representative from GGCI provided Ver the June 20 SOFC allegedly because Mr. Moro had mentioned the need to "restore confidence in the market" in an unrelated internal email the day before, Ver. Compl. ¶ 152; and that Mr. Moro corresponding with the public concerning *Genesis Global's* financial condition ¶¶ 9, 134-35, 174, were among the "overt act(s)" in furtherance of a conspiracy. Ver. Compl. ¶ 243. However, "conclusory allegations … are insufficient to survive a motion to dismiss." *See Godfrey v. Spano*, 13 N.Y. 3d 358, 373 (2009); *See e.g., Goldstein v. Siegel*, 19 A.D.2d 489, 492, 244 N.Y.S.2d 378, 382 (1963) ("[A] general allegation that defendants entered into a conspiracy for a certain purpose and have committed acts in furtherance thereof, without setting out the facts constituting the conspiracy, ordinarily is not sufficient, although there are some decisions to the contrary."); *Faulkner v. City of Yonkers*, 105 A.D.3d 899, 901, 963 N.Y.S.2d 340, 341 (2013) (("A bare conclusory allegation of conspiracy is usually held insufficient").

There are no specific allegations that *Mr. Moro* was involved in any of the remaining examples provided by Ver – including GGCI's decision to provide Ver the unaudited June 20 SOFC or GGCI's later decision in December 2022, *four months after Mr. Moro stopped working for Genesis Global and GGCI*, to provide Ver with its 2021 audited financials. Ver. Compl. ¶ 207. For these reasons, coupled with the arguments made above regarding Mr. Moro's lack of requisite intent and the lack of injury to Ver, Ver's civil conspiracy claim must be dismissed.

## **CONCLUSION**

For all of the foregoing reasons,  Mr. Moro respectfully requests that the Court dismiss Ver's  Third-party Complaint against him in its entirety for failure to state claims upon which relief can be granted.

Dated:    New York, New York
          April 18, 2024

                               ARNOLD & PORTER KAYE SCHOLER LLP

                    By:   */s/ Marcus Asner*
                            Marcus Asner
                            Tyler Fink
                            Kodjo Kumi
                            250 West 55th Street
                            New York, NY 10019-9710
                            Telephone: +1 212.836.8000
                            Fax: +1 212.836.8689

                            Christian Schultz (*pro hac vice* to be filed)
                            601 Massachusetts Ave, NW
                            Washington, DC 20001-3743
                            Telephone: +1 202.942.5000

                            Attorneys for Defendant Michael Moro